**BONNETT FAIRBOURN FRIEDMAN**
**& BALINT, P.C.**
Kathryn Honecker (020849)
2325 E. Camelback Rd., Suite 300
Phoenix, Arizona 85016
Telephone:  (602) 274-1100
Facsimile:  (602) 274-1199
*khonecker@bffb.com*

*Attorneys for Plaintiffs*

[See Additional Counsel on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alonzo Valenzuela; Maria Valenzuela; Scott Hurst; Socorro Munoz; Brenda Peters; and Betty Hanson, | CASE NO. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| Union Pacific Railroad Company, successor to Southern Pacific Transportation Company; SFPP, L.P., previously known as Santa Fe Pacific Pipelines, Inc., previously known as Southern Pacific Pipelines, Inc.; Kinder Morgan Operating L.P. "D"; and Kinder Morgan G.P., Inc., | DEMAND FOR JURY TRIAL |
| Defendants. | |

CLASS ACTION COMPLAINT

1    Plaintiffs Alonzo Valenzuela, Maria Valenzuela, Scott Hurst, Socorro
2  Munoz, Brenda Peters, and Betty Hanson, individually and on behalf of the class
3  of similarly situated persons defined below, allege the following against Union
4  Pacific Railroad Company, successor to Southern Pacific Transportation Company
5  (the "Railroad"), SFPP, L.P. (previously known as Santa Fe Pacific Pipelines, Inc.,
6  which was previously known as Southern Pacific Pipelines, Inc.), Kinder Morgan
7  Operating L.P. "D", and Kinder Morgan G.P., Inc. (collectively, the "Pipeline")
8  (the Pipeline and Railroad collectively are referred to herein as "Defendants"),
9  based on personal knowledge with respect to themselves and on information and
10  belief derived from, among other things, investigation of counsel and review of
11  public documents as to all other matters.

12                                **PARTIES**

13    1.    Plaintiffs Alonzo Valenzuela and Maria Valenzuela are citizens and
14  residents of Maricopa County, Arizona and the fee owners of land in Maricopa
15  County, Arizona identified as tax parcel no. 304-11-206.

16    2.    Plaintiff Scott Hurst is a citizen and resident of Maricopa County,
17  Arizona and the fee owner of land in Maricopa County, Arizona identified as tax
18  parcel no. 504-44-020R.

19    3.    Plaintiff Socorro Munoz is a citizen and resident of Maricopa
20  County, Arizona and the fee owner of land in Maricopa County, Arizona identified
21  as tax parcel no. 500-43-098B.

22    4.    Plaintiffs Brenda Peters and Betty Hanson are citizens and residents
23  of Maricopa County, Arizona and the fee owners of land in Maricopa County,
24  Arizona identified as tax parcel no. 500-46-017B.

25    5.    Defendant Union Pacific Railroad Company, successor to Southern
26  Pacific Transportation Company, is a Delaware corporation with its principal
27  place of business in Nebraska.

28

                                          CLASS ACTION COMPLAINT

6. Defendant SFPP, L.P. is a Delaware limited partnership with its principal place of business in the city of Orange in Orange County, California. Defendant SFPP, L.P. acquired Santa Fe Pacific Pipelines, Inc., previously known as Southern Pacific Pipelines, Inc. Defendant SFPP, L.P. is a subsidiary of Kinder Morgan Energy Partners L.P., which is a subsidiary of Kinder Morgan, Inc.

7. Defendant Kinder Morgan Operating L.P. "D" is a Delaware limited partnership with its principal place of business in Texas. Defendant Kinder Morgan Operating L.P. "D" is also a subsidiary of Kinder Morgan, Inc.

8. Defendant Kinder Morgan G.P., Inc. is a Delaware corporation with its principal place of business in Texas. Similarly, Defendant Kinder Morgan G.P., Inc. is a subsidiary of Kinder Morgan, Inc.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Plaintiffs are citizens of Arizona, and Defendants are citizens of Delaware, Texas, California, and Nebraska.

10. This Court has personal jurisdiction over Defendant Union Pacific Railroad Company because it purposefully avails itself of the benefits of doing business in the state of Arizona by maintaining a railroad throughout Arizona, including in this District. Additionally, this Court has personal jurisdiction over Defendant Pipeline because it purposefully avails itself of the benefits of doing business in the state of Arizona by maintaining a pipeline throughout Arizona, including in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims Plaintiffs and the Class Members assert in this lawsuit occurred in this District.

CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS

**American Railroads in the 19th Century**

12.     As America spread west in the first half of the 19th century, its frontier expanded from the Mississippi River to the coast of California and the Oregon Territory.  Access to the great expanses of the prairies and mountains, as well as to the states and territories on the Pacific Coast, was necessary.

13.     Beginning in approximately 1850, Congress embarked upon a policy of subsidizing railroad construction by paying for it with "lavish grants from the public domain."[1]  With the onset of the Civil War, the need for a transcontinental railroad took on particular urgency, and the ability to reach the west coast over land was considered a military necessity.

14.     President Abraham Lincoln signed the Pacific Railroad Act on July 1, 1862, and subsequent acts were signed by him and his successors.  These initial "Congressional Acts" granted vast areas of land to several transcontinental railroads, encouraging them to build tracks across the nation.

15.     While the early grants were "lavish"—after all, vast areas of land owned by the federal government were given to private companies—they did have strings attached.  In the initial act of 1862, there was an express exception for "all mineral lands" (other than timber, which was granted to the railroad company).[2]

16.     By the 1870's, legislators across the political spectrum had embraced a policy of reserving public lands for settlers rather than granting them to railroads.  However, there was still a need to provide the railroads with the ability to complete the massive project, and Congress passed the General Right–of–Way Act of 1875.[3]  Like the earlier acts in the 1860's, this legislation provided the railroads with a right-of-way through the public lands for the construction of a

---

[1] *Great Northern Ry. Co. v. United States*, 315 U.S. 262, 273 (1942) ("*Great Northern*").
[2] Pacific Railroad Act of 1862, ch. 120, § 3, 12 Stat. 489.
[3] 18 Stat. 482, 43 U.S.C. § 934, *et seq.*

CLASS ACTION COMPLAINT

railroad.  But now Congress made it clear that it was providing the railroads with "mere easements" over the land on which they could lay their tracks and run their trains.  They were given no fee interest in the property itself; rather, title remained in the federal government.

17.    Eventually, the need for rail service diminished with the advent of the internal combustion engine as cars and trucks appeared on the landscape. Railroads sold, abandoned, or discontinued much of their tracks as their need for the rights-of-way granted by Congress diminished.

18.    Pipelines appeared on the scene, carrying oil, gas, coal slurry and other fuels.  Congress passed laws governing subsurface oil and gas pipelines through federal lands, providing for annual rental payments to the government.[4] Consistent with its practice of retaining the value of the subsurface to the United States, Congress passed a law providing that the government could grant leases for oil and gas deposits "in or under lands embraced in railroad or other rights of way acquired under any law of the United States, whether the same be a base fee or mere easement . . . ."[5]

19.    By this time, a hodge-podge patchwork of easements and ownership interests in railroad rights-of-way had spread across the west.  As one might imagine, disputes over the rights of railroads, landowners, and the government arose, resulting in numerous federal and state lawsuits and appellate decisions, as well as several landmark opinions from the United States Supreme Court.  Many of the cases dealt with the rights to the subsurface beneath the railroads' rights-of-way, and many dealt with ownership rights once the rights-of-way were no longer used for railroad purposes.

---

[4] *See*, *e.g.*, 30 U.S.C. § 185, *et seq.*
[5] 30 U.S.C. § 301, *et seq.*

CLASS ACTION COMPLAINT

**Railroad Grants Pipeline Easements Beginning in the 1950's**

20.     The Pipeline owns approximately 1,871 miles of pipeline running through California, Arizona, Nevada, New Mexico, Texas, and Oregon within the Railroad's right-of-way.   Another 1,400 miles or so of the pipeline veer off intermittently into public and private lands.   In all, there are 1,076 pipeline segments.  Some are continuous, some are not.

21.     In the mid–1950's, the Railroad and the Pipeline were sister subsidiaries of Southern Pacific Corporation.  The Railroad possessed a valuable transportation corridor along the rights-of-way granted to it initially by acts of Congress.  The Pipeline wished to obtain a longitudinal easement through which to run its pipelines, which carried petroleum products.  The two sister companies entered into master agreements in 1955 and 1956 wherein the Railroad rented portions of the subsurface under its rights-of-way to the Pipeline.

22.     By that time, there had been considerable litigation, mostly in federal courts, regarding who owned the subsurface beneath a railroad's right-of-way.  As to the 1875 Act, it had been decided by the United States Supreme Court that railroads merely had an easement over the surface of the land, and that title to the subsurface remained in the federal government (or its grantee, if any).[6] But as to the pre–1871 Acts, the issue was unresolved.

23.     Railroads took the position that they had been given the land itself, and therefore could do what they liked with the subsurface.   The federal government disagreed.  It sued the Union Pacific Railroad Company, seeking to enjoin it from extracting oil and gas from the subsurface under a pre–1871 right-of-way.  In 1954, a federal district court found in favor of the Railroad, holding that it had full rights to the subsurface and refusing to enjoin its use for the

---

[6] *Great Northern*, *supra*, 315 U.S. at 275, 62 S. Ct. 529.

CLASS ACTION COMPLAINT

Railroad's benefit.[7]  In 1956, the 10th Circuit United States Court of Appeals affirmed the district court's ruling that railroads owned the subsurface and that it could extract oil and gas from it.[8]

24.    In that same year, an in-house attorney for the Railroad's predecessor sent a letter to the Pipeline explaining that the Railroad appeared to have the right to grant pipeline easements in the subsurface under rights-of-way it obtained via the pre–1871 Acts.  But since the 1875 Act provided only an easement, they would have to obtain consent from the adjoining landowner in order to use the subsurface for a pipeline.

25.    However, in 1957 the United States Supreme Court issued its seminal opinion in *United States v. Union Pacific R. Co.*[9]  The court held that, while under the pre–1871 Acts a railroad was entitled to full use of the surface of the land, it could only use the subsurface "'for railroad purposes.'"[10]  Since the extraction of minerals from the subsurface was not a railroad purpose, and was expressly reserved in the statute, the pre–1871 Acts did not provide a railroad with the right to do so.  The lower court's ruling was reversed, and the government's request that the Railroad be enjoined from extracting minerals from the subsurface was granted.

26.    Despite this narrowing of a railroad's rights to the subsurface underlying its rights-of-way, the sister companies went forward with their pipeline plan.  Leases of pipeline easements proceeded in earnest in late 1957.  Over the following years and decades, easements were granted and pipelines were built

---

[7] *United States v. Union Pacific Railroad Company*, 126 F. Supp. 646 (D. Wyo. 1954).
[8] *United States v. Union Pacific Railroad Company*, 230 F.2d 690. (10th Cir. 1956).
[9] 353 U.S. 112, 77 S. Ct. 685 (1957) ("*Union Pacific*").
[10] 353 U.S. at 114, n.1.

CLASS ACTION COMPLAINT

underneath the Railroad's rights-of-way—those acquired under both the pre–1871 Acts and the 1875 Act—but not without concern on the Railroad's part.

27. In one 1973 letter, an in-house attorney for the Railroad acknowledged that recent federal court decisions bearing on "the extent of the rights granted to Railroad under the March 3, 1871 Act now appear to be more restrictive as to use of the right-of-way for other than railroad purposes . . ." than previously believed. In a similar 1974 letter, the attorney wrote regarding a proposed pipeline easement in Contra Costa County, saying, "[n]o assurance can be given Railroad is entitled to grant the pipeline easement in view of the unfavorable trend of California decisions interpreting grants to railroad companies." Another letter by the same in-house attorney written in 1976 discusses the fact that upon abandonment of rail operations the limited title properties may result in reversion of title, and that the easements are subject to loss upon abandonment for railroad purposes. It concludes that "consideration need [*sic*] be given as to the advisability of granting to [the Pipeline] an easement for pipelines in the property classified as limited title and easement for railroad purposes . . . unless it is feasible for Railroad to take steps necessary to establish that it is the fee owner of the right of way in which [the] pipeline is located." Nevertheless, the Railroad continued to grant easements to the Pipeline.

28. In 1983, during discussions among the related entities regarding mergers, the Railroad and the Pipeline entered into a new master agreement addressing the easements.

**Merger of Parent Companies: The Sister Companies Part Ways and Litigation Begins**

29. The new 1983 master agreement between the two companies revised the arrangement regarding the Pipeline's perpetual, nonexclusive easements, and it set forth the amount of rent to be paid for existing pipeline easements through 1993. Also in 1983, the parent company of the Railroad and the Pipeline

CLASS ACTION COMPLAINT

1   announced a merger with Santa Fe Railroad.  The combination went forward but

2   the Railroad was held in a trust and remained separate from the other newly

3   combined entities, pending a ruling from the Interstate Commerce Commission

4   (ICC) on the merger.  Ultimately, the ICC disapproved of the consolidation of the

5   two railroads and required the Railroad to be sold to a third party.  Meanwhile, the

6   pipeline company became Santa Fe Pacific Pipelines, Inc.  The Railroad and

7   Pipeline companies were no longer sister subsidiaries.

8       30.    In 1991 the Railroad sued the Pipeline and related entities, alleging

9   that the 1983 master agreement should be rescinded because it was created while

10   the companies were still sister entities, and, because it was "not negotiated . . . at

11   arm's length," it set artificially low rent for the pipeline easements.  The Railroad

12   claimed that some of the Pipeline's facilities and tanks had been dedicated for the

13   Railroad's continued use, "without regard to the technical title-holder of such

14   properties, for its fuel needs."  The Railroad also claimed that it should be

15   permitted continued use of those pipeline facilities as if it had an "actual

16   ownership interest."

17       31.    As the case progressed, the parties entered into a "tolling agreement"

18   to stay the litigation in order to attempt to reach a global settlement of all issues.

19       **Settlement of the 1991 Lawsuit**

20       32.    The parties settled the 1991 lawsuit in April 1994.  Pursuant to the

21   settlement agreement, the 1983 master agreement was rescinded; the master

22   agreements of the 1950's were revitalized; the Pipeline's easement rights were

23   confirmed and the easement locations were modified, reducing the width of the

24   easement at many segments.  The parties compromised various existing claims.

25   The Pipeline paid over $5.5 million in return for the Railroad's dismissal of claims

26   and causes of action, including those related to the Pipeline facilities allegedly

27   dedicated for the Railroad's own use.  The new settlement agreement contained no

28   provision for the Railroad's use of the Pipeline's facilities for its own fuel needs.

CLASS ACTION COMPLAINT

33.    As to future rent, the settlement agreement provided as follows: "Beginning January 1, 1994, and every ten (10) years thereafter, [the Railroad] may seek an increase of rent to fair market value . . . ." If the parties could not agree, they would stipulate to an order for judicial reference pursuant to California Code of Civil Procedure section 638.

34.    In July 1994, the parties entered into an amended and restated easement agreement (AREA), which reflected that the Railroad granted easements to the Pipeline for the conveyance of petroleum or natural gas, coal slurries, etc., "in, upon, along and across the property of [the] Railroad." The AREA reiterated the procedure and mechanism for determining rent increases set forth in the prior settlement agreement. In September 1994, the parties also entered into a side letter agreement addressing some outstanding issues. The letter agreement provided, among other things, that "all Existing Easement Agreements shall be amended and restated pursuant to the terms of the [AREA]" and that all future easements would be recorded. It also provided that during the pendency of any reference proceeding or appeal regarding the rent, the Pipeline would continue to pay rent at the previous rate, subject to consumer price index adjustments, until resolution of the dispute.

**The 1994 Case**

35.    On August 31, 1994, the Railroad filed an action for declaratory relief when efforts to agree on a new rental amount failed. The parties proceeded by way of a temporary judge pursuant to California Constitution, article VI, section 21, rather than by way of the referee called for in the AREA. At trial, the Pipeline argued that the Railroad did not have a fee interest in its rights-of-way, since they were largely derived from the 19th century Congressional Acts. The Railroad brought a motion in limine to preclude any evidence regarding its title. The motion was granted and the Pipeline was prevented from proving that its easements did not, in fact, run through the "property of the railroad." Although it

CLASS ACTION COMPLAINT

excluded evidence of the Railroad's property interest, the trial court nevertheless "assume[d] that the [R]ailroad own[ed] a fee interest." At the same time, it said that "the court makes no determination as to whether in fact or in law the [R]ailroad owns a fee interest or, as [the Pipeline] contends, it owns a lesser legal, and thus lesser valued, interest."

36.     Judgment was entered in May 1997 in the approximate amount of $5 million base annual rent as of January 1994. The Railroad appealed and the judgment was reversed two years later on the grounds that the trial court refused to admit expert evidence regarding the Railroad's valuation methods and techniques. The case was tried a second time to the same temporary judge, who then entered judgment for roughly the same amount in July 2003. The Railroad appealed again. This time the judgment was affirmed in 2005 (with one minor exception). After the Railroad sought prejudgment interest, which the temporary judge granted, another appeal followed. The Court of Appeal did not reach the merits of the prejudgment interest issue, but reversed the order on grounds that the request had been untimely. After that, the 1994 litigation finally ended. In the meantime, however, the 2004 litigation had begun.

**The 2004 Case**

37.     Efforts to agree on the amount of the annual rent increase were made in late 2003, but again failed. In July 2004, the Railroad filed a complaint for declaratory relief. The complaint sought another 10–year increase in rent to fair market value on easements "within [the Railroad's] right-of-way property" pursuant to the AREA.

38.     In March 2005, the parties stipulated to the appointment of the Honorable Eli Chernow, Judge (retired), to serve as a temporary judge under California Constitution, article VI, section 21. Trial commenced in February 2007. The Railroad again brought a motion in limine to exclude evidence regarding its title, on the grounds that such evidence was irrelevant to the sole

CLASS ACTION COMPLAINT

1    issue in the case—*i.e.*, the amount of rent due for the easements.  This time, the

2    motion was denied.  Later in the trial, the Railroad brought a motion to strike

3    evidence regarding the status of its title, which also was denied.

4           39.    During trial, the Pipeline brought a cross-complaint against the

5    Railroad regarding properties in which the Railroad had conveyed its interests to

6    third parties but still continued to collect rent from the Pipeline.  The Railroad

7    brought its own cross-complaint regarding the Pipeline's failure to pay rent on

8    certain properties the Pipeline had abandoned.  At the close of the Railroad's case-

9    in-chief, the Pipeline brought a motion for judgment pursuant to California Code

10   of Civil Procedure section 631.8 on the grounds that the Railroad had not

11   introduced sufficient evidence of ownership of the land underlying its rights-of-

12   way to prove its case.  After hearing argument, the trial court suggested that the

13   Railroad reopen in order to address ownership issues.  A substantial amount of

14   testimony was then heard and documentary evidence was received regarding the

15   nature  of  the  Railroad's  ownership  interest  of  the  land  in  question.

16   Knowledgeable persons with expertise in railroad title and the Congressional Acts

17   testified.  Ultimately, the Pipeline's motion for judgment was denied.

18          40.    In April 2012, after more than 250 trial days, the trial court issued a

19   comprehensive 105–page statement of decision.  Judgment was entered on May

20   30, 2012.  Concluding that the Railroad had sufficient property interests in all of

21   the land beneath its rights-of-way to allow it to collect rent from the Pipeline, the

22   court found that pursuant to the AREA the base annual rent commencing on

23   January 1, 2004, was $14,080,487; "back rent" due as of the time of judgment was

24   $81,589,584; and prejudgment interest payable by the Pipeline to the Railroad was

25   $19,372,195.50.   The court also ruled in the Railroad's favor on both cross-

26   complaints.

27          41.    In various motions and pleadings, the Pipeline challenged the

28   Railroad's title to the land through which its easements ran—*i.e.*, the "subject

CLASS ACTION COMPLAINT

property."  Witnesses testified about the pre–1871 and 1875 Congressional Acts. Title cards prepared by the Railroad were presented, delineating which acts granted each right-of-way, and also noting if the right-of-way had been acquired from different sources.  The Pipeline demonstrated that in many cases the Railroad did not own the property in fee, and therefore claimed it had not met its burden to prove a key element of its case—*i.e.*, that rent was due for easements within the property of the railroad.  The Railroad did not prove otherwise; rather, the thrust of its counter-argument was that it did not have to prove title.  It could collect the rent regardless of who owned the property, because the Pipeline had the easements and had agreed to pay rent to the Railroad for them.  In other words, it did not have to prove the "property of the railroad" was the Railroad's property.

42.   After hearing evidence relating to the Congressional Acts and testimony about the title cards, the trial court noted that the records "most commonly showed that [the Railroad] originally acquired title through one or more land grants under certain Acts of Congress."  Other parcels were acquired "by grant[s] from states or other grantors."  The court also noted that "[i]t is undisputed that much of the property held by the [R]ailroad is held in less than full fee ownership" and that the Railroad "did not offer direct evidence of its title to the Subject Property."  But there is little indication that the trial court considered in detail the application of the Congressional Acts, or the case law promulgated under them, in determining the nature of the Railroad's property interest.

43.   Instead, the trial court believed it was "not dealing with a situation in which evidence has been presented that some third party is the owner of title."  It stated that there was "no evidence disputing the Railroad's title to virtually all of the subject property."  And it concluded that "in the absence of any disputing evidence, the Railroad's ownership has been adequately shown for purposes of this proceeding."  The court based its ruling in part on the fact that "no other person or entity has attempted to collect rent for the use of the property" or

CLASS ACTION COMPLAINT

1    disturbed the Pipeline's peaceful occupancy, although it implied the situation

2    might be different if a valid claim was raised by a third party entitled to collect the

3    rent.

4          44.     There are numerous federal and state judicial opinions casting doubt

5    on the rights of railroads to the subsurface underlying their rights-of-way based

6    upon the Congressional Acts.  Yet despite the Pipeline's repeated challenges to the

7    Railroad's ownership under these acts, the trial court stated that "no challenge to

8    [the Railroad's] ownership [had] been made by [the Pipeline]" and that "there

9    [was] no evidence disputing the Railroad's title to virtually all of the subject

10    property . . . ."  On that basis, the trial court held that "in the absence of evidence

11    challenging the [R]ailroad's title," the Railroad's ownership of the property had

12    been "adequately shown" and (with minor exceptions) it was entitled to rent on the

13    easements.

14          45.     The Pipeline timely appealed from the judgment and "all orders and

15    rulings subsumed therein" as well as various postjudgment orders.  The California

16    Court of Appeal held that the 1875 Act and the pre-1871 Congressional Acts did

17    not provide the Railroad with sufficient property rights to allow the Railroad to

18    grant easements or collect rent for the Pipeline's use of the subsurface beneath the

19    Railroad's right-of-way.[11]

20          **The Railroad Wrongfully Granted Easements to the Pipeline**

21          46.     The California Court of Appeal's ruling denotes that the fee owners

22    of the right-of-way, these Plaintiffs and all putative Class Members, and not the

23    Railroad, had the sole and exclusive right to grant easements to the Pipeline for a

24    pipeline below the Railroad's right-of-way and to collect rents from such use and

25    occupancy by the Pipeline.

26

27

28    [11] *Union Pacific Railroad Company v. Santa Fe Pacific Pipelines, Inc.*, 231 Cal. App. 4th 134 (2014).

CLASS ACTION COMPLAINT

47.    The Railroad's using or permitting the Pipeline to use the limited railroad purpose right-of-way to carry petroleum through a subsurface pipe was an improper and illegal use outside the scope of the Pipeline's easement, which terminated the Pipeline's easement.

48.    Pipeline's use of the subsurface of the right-of-way to convey petroleum products may be severed from the surface railroad use and terminated.

49.    The purported easement agreements granted by the Railroad to the Pipeline were and are invalid, and Defendants have been trespassing on Plaintiffs' and the Class Members' fee ownership in the subsurface of the right-of-way for over 50 years without payment to all of the adjacent landowners who own the fee in the right-of-way.

50.    Defendants have been unjustly enriched for over 50 years by, in the Railroad's case, collecting rent from the Pipeline that it had no right to collect, and in the Pipeline's case by developing a commanding share of the oil and gas market through the use and occupancy of the pipeline without the consent of the Plaintiffs and the Class Members and without compensation to them.

51.    Defendants' wrongful conduct is ongoing and continuing, and has caused and continues to this day to cause harm to Plaintiffs and the Class.

52.    Upon information and belief, as early as the 1950's, the Railroad's predecessor-in-interest recognized that the Railroad did not have sufficient legal title to purportedly grant an easement within the subsurface of the Railroad right-of-way to construct and operate an oil and gas pipeline.

53.    Upon information and belief, employees, agents, or representatives of the Railroad's predecessor-in-interest recommended that the company justly compensate the true fee owners of the subsurface, Plaintiffs and the Class Members, which the Railroad's predecessor-in-interest wrongfully failed and refused to do.

CLASS ACTION COMPLAINT

54.     Upon information and belief, the Railroad's predecessor knowingly engaged in a plan and scheme to unlawfully deprive Plaintiffs and the Class Members of their property rights by granting the right to construct an oil and gas line within the subsurface of the railroad's right-of-way in excess of the Railroad's legal rights and without due notice or compensation to Plaintiffs or the Class Members for such use and occupancy.

55.     Upon information and belief, the Pipeline has recognized for decades that the Railroad lacked sufficient title to convey easements to the pipeline in tracts of land that were granted to the Railroad pursuant to Congressional Acts, but have knowingly and deliberately transmitted petroleum products through Plaintiffs' and the Class Members' real property and withheld rents from the lawful owners of the subsurface that they wrongfully use and/or occupy.

56.     Upon information and belief, Defendants are legally sophisticated entities that thoroughly researched, investigated, and assessed the nature of their purported legal rights and claim to the subsurface of the Railroad's rights-of-way, and, upon information and belief, knew that they had no legal right to use, occupy, or profit from the subsurface real property that is owned by Plaintiffs and the Class Members.

57.     Upon information and belief, Defendants, at all times relevant hereto, misrepresented and/or concealed from Plaintiffs the facts regarding the presence of the pipeline on Plaintiffs' real property and the nature of the Defendants' supposed legal rights to use, occupy, or profit from the subsurface of the Railroad's rights-of-way.

58.     Upon information and belief, Plaintiffs were wrongfully deterred from filing their causes of action against Defendants by virtue of the Defendants' wrongful conduct in concealing the true facts and wrongfully and dishonestly misleading Plaintiffs and the Class Members as to the nature of the their rights,

CLASS ACTION COMPLAINT

despite the Defendants' knowledge that they had no right to occupy the subsurface of Plaintiffs' and the Class Members' real property.

59.     The pipeline was constructed underground, in some cases tens of feet below the surface.

60.     Upon information and belief, the Defendants' use and occupancy of the subsurface of the Railroad's rights-of-way was hidden or concealed from the Plaintiffs.

61.     Upon information and belief, either the construction of the pipeline was not visible to Plaintiffs or the Class Members at the time it was constructed, or it was not visually apparent to Plaintiffs or the Class Members that the pipeline was for the purposes of conveying petroleum products for the commercial gain of the Defendants as opposed to being for the structural or drainage needs of the Railroad attendant upon legitimate railroad operations.

62.     Before the date of the California Court of Appeal's decision, Plaintiffs and the Class Members did not discover, and did not know of, facts that would have caused a reasonable person to suspect, both that they had suffered harm and that such harm was caused by the Defendants' wrongful conduct.

63.     Before the date of the California Court of Appeal's decision, Plaintiffs were not entitled to begin and prosecute their claims herein.

## CLASS ACTION ALLEGATIONS

64.     The representative Plaintiffs bring this class action on behalf of themselves and class of similarly situated persons under Rule 23(a) of the Federal Rules of Civil Procedure initially defined:

> All landowners who own land in fee adjacent to and underlying the railroad easement under which the pipeline is located within the State of Arizona.

CLASS ACTION COMPLAINT

65.     The proposed Class is so numerous that joinder of all members is impracticable.  The proposed Class will be made up of those fee landowners who owned parcels adjacent to the railroad's right-of-way where the Railroad owns a surface easement for its railroad purposes and where the pipeline runs within the adjacent landowners' fee ownership in the subsurface of the right-of-way.

66.     Prospective Class Members can be identified from the Defendants' own records and by a search of the records of the Tax Assessor and Recorder of Deeds in a county by county search in the State of Arizona.  The putative class will consist of hundreds or thousands of parcels and owners along the right-of-way and pipeline, including present and past owners who have sustained damages as a result of Defendants' unlawful conduct.

67.     The claims of all of the named Plaintiffs involve all of the same issues of law and fact as the proposed Class Members and are therefore common to each putative Class Member.  The questions of law and fact common to the Class predominate over questions affecting only individual class members.  These questions include, but are not limited to:

a.     Whether the Railroad, in possession of merely a surface easement pursuant to Congressional land grants, improperly and illegally purported to grant subsurface easements for a pipeline without obtaining consent from Plaintiffs and the Class Members and without payment to Plaintiffs and the Class Members.

b.     Whether the Railroad improperly and illegally collected rents from the Pipeline for the right to transmit petroleum products through the Plaintiffs' and the Class Members' real property located in the subsurface beneath the Railroad's surface right-of-way.

c.     Whether the Railroad's activities, specifically using or permitting the Pipeline to use the limited railroad purpose right-of-way to carry petroleum through a subsurface pipe, was an improper and illegal use outside the

CLASS ACTION COMPLAINT

scope of the Railroad's easement which terminated the Railroad's easement or whether such pipeline activity may be severed from the railroad use and itself terminated.

d.     Whether the Pipeline improperly and illegally occupied the subsurface of Plaintiffs' and the Class Members' real property and transmitted petroleum products through Plaintiffs' and the Class Members' real property.

e.     Whether Plaintiffs and the Class are entitled to declaratory relief.

f.     Whether Plaintiffs and the Class are entitled to damages for trespass.

g.     Whether Plaintiffs and the Class are entitled to quiet their title in the real property, free and clear of any claim of right by the Defendants.

h.     Whether Plaintiffs and the Class are entitled to eject the Defendants from Plaintiffs' and the Class Members' real property.

i.     Whether Plaintiffs and the Class are entitled to restitution and disgorgement of benefits unjustly obtained and retained by the Defendants.

j.     Whether Plaintiffs and the Class are entitled to recover reasonable attorneys' fees, prejudgment interest, and the costs of suit.

68.     The claims of the named Plaintiffs are typical of the claims of the proposed Class.  The claims of the named Plaintiffs, as well as the claims of the proposed Class Members, arise from the same set of facts and are premised upon the same legal theories under federal law, namely the scope of Congressional land grants, and the various state property laws.  The named Plaintiffs and the proposed Class Members possess the same interests and they have suffered the same or similar injury—deprivation of their property rights.  Further, the named plaintiffs and the proposed Class Members seek the same remedy—compensation for damages for the diminution in value in their property rights and for recovery of benefits that have been unjustly obtained by Defendants from the Class Members.

CLASS ACTION COMPLAINT

69.     The Plaintiffs, as representative parties, will fairly and adequately protect the interests of the proposed Class.  Plaintiffs have engaged competent and experienced counsel who will properly protect and advance the interests of the Class.

70.     A Class Action is superior to any other available method for the fair and efficient adjudication of this controversy.  Plaintiffs and the members of the Class have suffered irreparable harm as a result of Defendants' unfair and unlawful conduct.  Because of the size of the individual Class Members' claims, few Class Members could afford to seek legal redress for the wrongs claimed herein.  Absent a class action, the Class Members will continue to suffer losses and the violations of law described herein will continue without remedy and Defendants will be permitted to retain the proceeds of their misdeeds.

71.     Further, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards of conduct for Defendants or adjudication of individual claims would be dispositive of the claims of other Class Members not parties to this lawsuit and could substantially impair or impede their ability to protect their interests.

**CAUSES OF ACTION**

Count I – Declaratory Judgment

72.     Plaintiffs re-allege and incorporate paragraphs 1-71 above.

73.     An actual dispute and controversy presently exists between Plaintiffs and Defendants concerning their respective rights and duties to real property situated in the subsurface beneath the Railroad's right-of-way.

74.     Defendant Railroad contends that it holds sufficient legal right and title to purportedly grant easements to third parties, including the Pipeline, to occupy the subsurface of the right-of-way, and to collect rents from such occupancy.

CLASS ACTION COMPLAINT

75.    The Pipeline occupies the subsurface of the right-of-way, and derives a commercial benefit from said occupancy, without the consent of Plaintiffs and the Class Members and without payment of rents to Plaintiffs and the Class Members.

76.    A judicial determination of the rights and responsibilities of the parties over the real property in question is necessary and appropriate at this time.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs request that the Court enter judgment declaring that (1) Defendant Railroad lacks sufficient legal right or title in the subsurface of its right-of-way to grant easements or to collect rents associated with the occupancy of the subsurface, and (2) Defendant Pipeline lacks sufficient legal right or title to occupy the subsurface of the Railroad's right-of-way.

<u>Count II – Trespass</u>

77.    Plaintiffs re-allege and incorporate paragraphs 1-71 above.

78.    The Railroad, by and through various Congressional land acts, acquired a surface easement and right-of-way solely for its railroad purposes.

79.    The Railroad did not, by virtue of the Congressional land acts, acquire a fee interest in the subsurface below its surface right-of-way.

80.    Although the Railroad acquired solely a surface easement for its railroad purposes only, the Railroad purported to grant easements to the Pipeline for the construction of the pipeline in the subsurface of the Railroad's right-of-way.

81.    The Railroad's intentional invasion of Plaintiffs' and the Class Members' interest in the exclusive possession of their subsurface rights in their property is an intentional act of trespass.

82.    The Railroad's continuing claim to possess the authority to grant easements in the subsurface underlying its right-of-way, to the Pipeline and to others, is an ongoing invasion of Plaintiffs' and the Class Members' fee ownership

CLASS ACTION COMPLAINT

1   of the land without authority or permission and amounts to a continuing trespass

2   on Plaintiffs' and the Class Members' fee ownership in their land.

3        83.    The Pipeline constructed, operated, and still transports petroleum

4   products through its pipeline beneath the subsurface of the Railroad's right-of-

5   way, which is actually owned by Plaintiffs and the Class.

6        84.    Since the Railroad did not own or acquire Plaintiffs' or the Class

7   Members' fee ownership interest in the right-of-way, including Plaintiffs' and the

8   Class Members' ownership in the subsurface of the right-of-way, and since the

9   Railroad had no authority to violate Plaintiffs' and the Class Members' fee

10  ownership by purportedly granting easements to the Pipeline, the Pipeline's

11  transmission of petroleum products through its pipeline is an intended invasion of

12  Plaintiffs' and the Class Members' fee ownership interest in the exclusive

13  possession of their property.

14       85.    The Pipeline's intentional invasion of Plaintiffs' and the Class

15  Members' interest in the exclusive possession of their subsurface rights in their

16  property is an intentional act of trespass.

17       86.    The Pipeline's transmission of petroleum products through the

18  pipeline is an ongoing invasion of Plaintiffs' and the Class Members' fee

19  ownership of the land without authority or permission and amounts to a continuing

20  trespass on Plaintiffs' and the Class Members' fee ownership in their land.

21       87.    Defendants' trespass is continuing and could be abated.

22       88.    Additionally or alternatively, Defendants' trespass is permanent, and

23  has resulted in diminution of the value of the Plaintiffs' and the Class Members'

24  real property.

25       89.    Due to the Defendants' trespass, Plaintiffs and the Class Members

26  have suffered damages, including the invasion of their exclusive rights to possess

27  and occupy their subsurface property.

28

CLASS ACTION COMPLAINT

90.     Defendants' trespass is and was malicious, wanton, oppressive, and/or fraudulent in nature.

WHEREFORE, Plaintiffs pray for an award of damages resulting from Defendants' trespass since the 1950's and for continuing trespass, for the diminution in value of their property, for recovery of exemplary damages, and for attorneys' fees and the costs of this action.

<u>Count III – Ejectment</u>

91.     Plaintiffs re-allege and incorporate paragraphs 1-71 above.

92.     This is an action to recover possession of real property located in the State of Arizona.

93.     Plaintiffs are the fee title holders of the Railroad's railroad right-of-way, including the subsurface of the right-of-way.  Plaintiffs' fee ownership is burdened only by a limited easement for the use of the surface for railroad purposes only.

94.     The Railroad's using or permitting the Pipeline to use the limited railroad purpose right-of-way to carry petroleum through a subsurface pipe was an improper and illegal use outside the scope of the Railroad's easement, which terminated the Railroad's easement.

95.     The Pipeline's use of the subsurface of the right-of-way to convey petroleum products may be severed from the railroad use and terminated.

96.     As the fee title holders of the subsurface, Plaintiffs and the Class Members have the exclusive right to possession of the subsurface of the right-of-way.

97.     Defendants have unlawfully occupied and are in possession of the subsurface beneath the Railroad's right-of-way, without the consent of the Plaintiffs and the Class Members.

98.     Defendants have failed and refused to cease their occupation of Plaintiffs' and the Class Members' property.

CLASS ACTION COMPLAINT

99.     Plaintiffs and the Class Members have sustained damages as a direct and proximate result of Defendants' wrongful occupation of the subsurface of the Railroad's right-of-way.

WHEREFORE, Plaintiffs and the Class Members demand judgment for possession of the property and that they be awarded the rents, profits, the reasonable cost of repair or restoration of the property to its original condition, the costs of this action, and other damages which arise from the Defendants' unlawful possession of the property.

Count IV – Quiet Title

100.    Plaintiffs re-allege and incorporate paragraphs 1-71 above.

101.    Plaintiffs and the Class Members are the fee title holders of the Railroad's right-of-way, including the subsurface of the right-of-way.  Plaintiffs' and the Class Members' fee ownership is burdened only by a limited easement for the use of the surface for railroad purposes only.

102.    As the fee title holders of the subsurface, Plaintiffs and the Class Members have the exclusive right to possession of the subsurface of the right-of-way.

103.    Defendants have unlawfully occupied and are in possession of the subsurface beneath the Railroad's right-of-way, without the consent of the Plaintiffs and the Class Members.

104.    Defendants have asserted purported legal claim and title to occupy, use, and possess the subsurface of the right-of-way.

105.    Defendant Railroad has asserted purported legal claim and title to grant easements in the subsurface of the right-of-way and to charge and collect rents from third parties, including the Pipeline, for occupation, use, and possession of the subsurface of the right-of-way.

106.    Defendant Pipeline has asserted purported legal claim and right to use the subsurface to transmit petroleum products through an unlawfully

CLASS ACTION COMPLAINT

constructed and maintained pipeline located within Plaintiffs' and the Class Members' property.

107.    Defendants' claimed rights in the subsurface of the right-of-way are adverse to those of Plaintiffs and the Class Members, and threaten Plaintiffs' and the Class Members' quiet use and enjoyment of their fee interest in their real property.

108.    The claims of Defendants are without merit and Defendants have no right, title, or interest whatsoever in the above-described real property or any part thereof.

WHEREFORE, Plaintiffs and the Class Members demand judgment quieting title in the aforementioned subsurface real property solely in their respective names, free and clear of any claimed interest by Defendants, and each of them.

<u>Count V – Unjust Enrichment</u>

109.    Plaintiffs re-allege and incorporate paragraphs 1-71 above.

110.    Plaintiffs and the Class Members are the fee title holders of the Railroad's right-of-way.

111.    Plaintiffs' and the Class Members' fee ownership of the right-of-way includes the subsurface and aerial rights of the right-of-way, and Plaintiffs' and the Class Members' land is now burdened with a surface railroad easement for railroad purposes only.

112.    The Railroad negotiated with the Pipeline for rent payments by the Pipeline for the use of the subsurface

113.    The Railroad realized monetary benefits and rent payments from the Pipeline for those subsurface rights, without payment to the Plaintiffs and the Class Members.

CLASS ACTION COMPLAINT

114.   The Railroad was aware that it received the benefit of the use of Plaintiffs' and the Class Members' subsurface property rights without compensating Plaintiffs and the Class Members.

115.   The Railroad does not own any title and does not have permission to use the subsurface or aerial rights above and below the right-of-way on the surface, but has received substantial monetary compensation and benefit without any compensation to the Plaintiffs or the Class Members, such that the retention of payments by the Railroad made by the Pipeline is unfair, unjust, and inequitable.

116.   Since the Railroad has realized enormous monetary benefit for the improper use of Plaintiffs' and the Class Members' subsurface rights in their property, the Railroad has been unfairly and unjustly enriched and owes restitution to the Plaintiffs and the Class Members for the use and rent collected by the Railroad for illegal and unauthorized subsurface easements they granted to the Pipeline.

117.   Plaintiffs are entitled to damages for the value of all rents and monetary benefits received by the Railroad for all improper and illegal easements granted to the Pipeline since the 1950's.

118.   The Pipeline, as successor to the original corporate affiliate of the Railroad's predecessor, constructed a pipeline within Plaintiffs' and the Class Members' property without notice to Plaintiffs, and without negotiating or paying for the right to use the subsurface of the right-of-way.

119.   Upon information and belief, the Pipeline's predecessor-in-interest would have faced substantial additional cost and delay if it had fairly negotiated with and compensated the owners of the property at issue at the time the pipeline was constructed, and unjustly, unfairly, and inequitably received the benefit of the use of the property.

120.   The Pipeline, as a corporate affiliate of the Railroad, occupied the subsurface of the Railroad's right-of-way for decades by payment of rents that

CLASS ACTION COMPLAINT

1  were less than the fair market value that would have been charged in an arms-
2  length transaction.

3      121.   By virtue of the wrongful acts herein described, the Pipeline
4  established a considerable market share and dominance of the oil and gas market,
5  with more than 50% of their pipeline in the Western and Southwestern United
6  States passing within the Railroad's right-of-way.

7      122.   The Pipeline realized enormous cost savings and profits derived
8  from operating the pipeline through this territory without payment of just
9  compensation to the property owners, the Plaintiffs and the Class Members.

10     123.   The Pipeline has enjoyed an unjust and unfair competitive advantage
11  over other pipeline companies who properly paid for and secured the right to build
12  their pipelines.

13     124.   The Pipeline is aware of the benefits it has received from and at the
14  expense of the Plaintiffs and the Class Members.

15     125.   Since the Pipeline has realized enormous monetary benefit for the
16  improper use of Plaintiffs' and the Class Members' subsurface rights in their
17  property, the Pipeline has been unfairly and unjustly enriched and owes restitution
18  to the Plaintiffs and the Class Members for the use and rent of Plaintiffs' and the
19  Class Members' real property.

20     126.   Plaintiffs and the Class Members are entitled to damages for the
21  value of all monetary benefits received by the Pipeline for its improper and illegal
22  occupation and use of the subsurface of the rights-of-way since the 1950's.

23     127.   Plaintiffs and the Class Members lack an adequate remedy at law.

24     128.   Defendants' conduct is and was malicious, wanton, oppressive,
25  and/or fraudulent in nature.

26     WHEREFORE, Plaintiffs and the Class Members demand recovery of
27  benefits that were unjustly obtained and retained by Defendants, for a constructive
28  trust in favor of Plaintiffs and the Class Members to be placed upon the benefits

CLASS ACTION COMPLAINT

and proceeds received by Defendants as a result of their violation of the Plaintiffs'
and the Class Members' rights, for recovery of exemplary damages, for Plaintiffs'
and the Class Members' costs and fees, and for any other and further relief as the
Court may deem just and proper.

Count VI – Rents

129.    Plaintiffs re-allege and incorporate paragraphs 1-71 above.

130.    Defendants have held or occupied lands without an agreement with
Plaintiffs or the Class Members for the payment of rents.

131.    Pursuant to Ariz. Rev. Stat. § 12-1271, Plaintiffs and the Class
Members are entitled to recover from Defendants rents, or a fair and reasonable
satisfaction for the use and occupation of Plaintiffs' and the Class Members' real
property.

Wherefore, Plaintiffs and the Class Members pray for recovery of the fair
market value of rents or a fair and reasonable satisfaction for the Defendants' use
of Plaintiffs' and the Class Members' real property, for their costs and attorneys'
fees incurred as permitted by law, herein, and for and for any other and further
relief as the court may deem just and proper.

Count VII – Accounting

132.    Plaintiffs re-allege and incorporate paragraphs 1-71 above.

133.    As set forth above, Defendants have received unlawful benefits from
Plaintiffs and the Class Members.

134.    Plaintiffs and the Class Members are entitled to an accounting from
Defendants of these benefits and profits.

135.    Plaintiffs and the Class Members lack an adequate remedy at law.

WHEREFORE, Plaintiffs and the Class Members pray for an accounting by
Defendants of benefits and profits that were unfairly and/or unlawfully obtained
from Plaintiffs and the Class Members by the Defendants.

CLASS ACTION COMPLAINT

1     **DEMAND FOR TRIAL BY JURY**

2     136.    Plaintiffs demand a trial by jury with respect to all claims so triable.

3     **PRAYER FOR RELIEF**

4     WHEREFORE, Plaintiffs, individually and on behalf of the Class

5     Members, pray for and request the following relief against Defendants:

6     A.    For an order certifying this class as a Class Action and appointing

7     Plaintiffs and Plaintiffs' counsel to represent the Class;

8     B.    For a declaration that (1) Defendant Railroad lacks sufficient legal

9     right or title in the subsurface of its right-of-way to grant easements or to collect

10    rents associated with the occupancy of the subsurface, and (2) Defendant Pipeline

11    lacks sufficient legal right or title to occupy the subsurface of the Railroad's right-

12    of-way;

13    C.    For damages, restitution, and/or disgorgement of benefits and/or

14    profits according to proof;

15    D.    For exemplary damages;

16    E.    For possession of the subsurface real property;

17    F.    For an order quieting title in the subsurface real property in

18    Plaintiffs' and the Class Members' respective names, free and clear of any claimed

19    interest by the Defendants;

20    G.    For a constructive trust in favor of Plaintiffs and the Class Members

21    to be placed upon the benefits and proceeds received by the Defendants;

22    H.    For an accounting by Defendants of all benefits and profits that were

23    unfairly and/or unlawfully obtained from Plaintiffs by the Defendants;

24    I.    For reasonable attorneys' fees;

25    J.    For pre-judgment interest;

26    K.    For costs of suit; and

27    L.    For an order providing such other and further relief as this Court

28    deems just and proper.

CLASS ACTION COMPLAINT

1   DATED:  June 15, 2015                    Respectfully submitted,

2                                            /s/ Kathryn Honecker
                                             Kathryn Honecker
3                                            BONNETT FAIRBOURN
                                             FRIEDMAN & BALINT, P.C.
4                                            2325 E. Camelback Rd., Ste. 300
5                                            Phoenix, AZ 85016
                                             Phone: (602) 274-1100
6                                            Fax: (602) 274-1199
7                                            khonecker@bffb.com

8                                            Norman E. Siegel
9                                            Barrett J. Vahle
                                             Ethan M. Lange
10                                           (pro hac vice forthcoming)
                                             STUEVE SIEGEL HANSON LLP
11                                           460 Nichols Road, Suite 200
12                                           Kansas City, Missouri 64112
                                             Phone: (816) 714-7100
13                                           Fax: (816) 714-7101
14                                           siegel@stuevesiegel.com
                                             vahle@stuevesiegel.com
15                                           lange@stuevesiegel.com

16                                           Jason S. Hartley
17                                           (pro hac vice forthcoming)
                                             STUEVE SIEGEL HANSON LLP
18                                           550 West C Street, Suite 1750
                                             San Diego, CA 92101
19                                           Phone: (619) 400-5822
20                                           Fax: (619) 400-5832
                                             hartley@stuevesiegel.com
21
22                                           Thomas S. Stewart
                                             Elizabeth G. McCulley
23                                           (pro hac vice forthcoming)
                                             STEWART, WALD & MCCULLEY, LLC
24                                           9200 Ward Parkway, Suite 550
25                                           Kansas City, Missouri 64114
                                             Phone: (816) 303-1500
26                                           Fax: (816) 527-8068
27                                           stewart@swm.legal
                                             mcculley@swm.legal
28

                                             CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steven M. Wald
(*pro hac vice forthcoming*)
STEWART, WALD & MCCULLEY, LLC
100 North Broadway, Suite 1580
St. Louis, Missouri 63102
Phone: (314) 720-6190
Fax: (314) 899-2925
*wald@swm.legal*

*Attorneys for Plaintiffs Alonzo Valenzuela, Maria Valenzuela, Scott Hurst, Socorro Munoz, Brenda Peters, and Betty Hanson, individually and on behalf of the class of similarly situated persons*

CLASS ACTION COMPLAINT