**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alonzo Valenzuela, et al., | No. CV-15-01092-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Union Pacific Railroad Company, et al., | |
| Defendants. | |

The question to be decided is whether Defendant Union Pacific Railroad Company is foreclosed from arguing that Congress granted it certain rights with respect to more than 500 miles of railroad rights-of-way in Arizona because a California Court of Appeal, addressing a question that had not been ruled on by the trial court or presented by the parties, decided that Congress had not granted Union Pacific these rights. The Court concludes that the appellate court's decision does not have collateral estoppel effect.

**I.   Background.**

The Court of Appeal's decision is found at *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.*, 231 Cal. App. 4th 134 (2014). It arose out of a long-running California lawsuit between Union Pacific and Defendant Kinder Morgan, which the parties refer to as the "Rent Action."

**A.   The Rent Action.**

Kinder Morgan operates pipelines located within Union Pacific rights-of-way. The pipelines carry fuel, coal slurry, and other products. In 1994, Union Pacific and

Kinder Morgan entered into an amended and restated easement agreement ("AREA") which granted Kinder Morgan an easement to operate the pipelines "in, upon, along[,] and across the property of [the] Railroad" in exchange for annual rent. Doc. 141-2 at 13-21.[1]  The AREA set forth a procedure for determining rent increases. *Id.* at 15-17. In 2004, a dispute arose as to the amount of the rent increase, and Union Pacific brought the Rent Action in the Superior Court for Los Angeles County. *See id.* at 7-11.

The Rent Action lasted almost eight years and included more than 250 days of trial. *See Union Pacific*, 231 Cal. App. 4th at 153 (describing trial court proceedings). The trial court eventually issued a comprehensive, 105-page statement of decision, setting the base annual rent $14,080,487 and awarding back rent of $81,589,584 and prejudgment interest of $19,372,195.50 to Union Pacific. *Id.* at 153-54.

Kinder Morgan appealed, raising four issues. Doc. 141-3 at 107-08. One issue was whether the trial judge erred by awarding rent for a stretch of land known as the Iron Horse Trail that Union Pacific sold nearly a decade before executing the AREA. Doc. 143-2 at 61-66, 147-50. None of the other issues questioned Union Pacific's ownership of the property burdened by the easement. Docs. 143-2 at 2-78 (Kinder Morgan's opening brief), 100-79 (Kinder Morgan's reply brief); *see also Union Pacific*, 231 Cal. App. 4th at 145 (describing issues raised on appeal).

On June 27, 2014, the California Court of Appeal held oral argument. Following discussion of the Iron Horse Trail issue, Justice Rubin stated: "Let me take that subject and go a little bit broader. I don't mean to be opening up a hornet's nest . . . Did the railroad ever own the right to grant these pipelines, ever, under the 1862 or 1875 act?" Doc. 141-3 at 121. Justice Rubin's question was referring to congressional land grants enacted prior to 1871 (the "pre-1871 Acts") and the General Railroad Right-of-Way Act of 1875 (the "1875 Act"), which the Court will refer to collectively in this order as the "Congressional Acts." Kinder Morgan's counsel stated that he would defer to Union

---

[1] All docket citations use the page numbers attached by the Court's CM/ECF system.

1  Pacific's counsel on this issue, but then went on to say that there was no issue on appeal
2  as to whether the pipeline easements were properly granted. *Id.* Justice Kussman
3  responded: "I know. That is the problem: You didn't raise it on appeal." *Id.* at 122. The
4  Justices continued to question Union Pacific's title under the Congressional Acts. Union
5  Pacific's counsel objected that this issue was not before the Court. *Id.* at 124. Justice
6  Rubin replied:

> Obviously, we feel it's before this Court. . . . And we have this concern –
> and I realize this is not briefed and everything. But we have this concern
> based on our review of the '75 and '62 acts as to whether the railroad ever
> had the right to grant any easements to this. . . . And we may need to have
> further briefing on this. . . . It would be terribly wrong for us to decide this
> issue given the state of the argument.

*Id.*

After the hearing, the Court of Appeal requested additional briefing on Union Pacific's right to grant pipeline easements under the Congressional Acts. Doc. 128-3 at 2-3. The parties were allowed two weeks to submit opening briefs limited to 15 double-spaced pages, and 12 more days to submit reply briefs of ten pages. *Id.* at 3. The court specifically asked the parties to address whether there was "evidence *in the record* to support a finding that the railroad had sufficient ownership interests in the subject property to grant subsurface easements to the pipeline." *Id.* at 2 (emphasis added).

Following the supplemental briefing, the Court of Appeal held that (1) "a railroad's rights to the land underneath its rights-of-way granted by the 1875 Act were limited to what was necessary to support the railroad itself" and "[o]therwise . . . remained with the owner of the servient estate," (2) a railroad's rights under the pre-1871 Acts were similarly limited, and (3) because using the subsurface for a pipeline was not a "railroad purpose," Union Pacific had no right to lease the subsurface for that use. 231 Cal. App. 4th at 160-78. Union Pacific sought rehearing (Doc. 128-4 at 2-62), but its request was denied. Union Pacific then sought review before the California Supreme Court (Doc. 128-4 at 106-49), but its petition was denied. The case was remanded to the trial court because issues remained regarding rights-of-way acquired by means other than

- 3 -

the Congressional Acts. Doc. 130-1 (trial court order on scope of remand).

**B.     This Case.**

Following the Court of Appeal's decision, Plaintiffs brought this case on behalf of a class of property owners whose land lies adjacent to Union Pacific's rights-of-way in Arizona. Doc. 75. Plaintiffs contend that Union Pacific possesses only a surface easement, and that they own the subsurface where the pipelines are located. *Id.*, ¶ 114. Plaintiffs have sued Union Pacific and Kinder Morgan, asserting claims for declaratory relief, trespass, and quiet title, among others. *Id.*, ¶¶ 81-121.

Union Pacific has asserted counterclaims for quiet title and declaratory relief. Doc. 115 at 26-36, ¶¶ 17-55. Union Pacific maintains that it acquired rights in the property below its rights-of-way from the Congressional Acts or private conveyances. *Id.*, ¶ 5.

Plaintiffs have moved to dismiss the counterclaims, arguing, among other things, that Union Pacific is collaterally estopped from pursuing the counterclaims by the Court of Appeal's decision. Doc. 117. Kinder Morgan has filed a brief in support of Plaintiffs' collateral estoppel argument. Doc. 128. The Court discussed this issue with the parties at the May 25, 2016 status conference and entered an order requesting additional briefing. Doc. 135. The parties have provided the additional briefing, and the Court heard oral argument on July 5, 2016.

**II.    Legal Standard.**

The Full Faith and Credit Act provides that a state's judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. Thus, in determining the collateral estoppel consequences of a state court judgment, federal courts apply the collateral estoppel doctrine of the state where the judgment was rendered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The parties agreed during oral argument that the Court should look to the collateral estoppel law of California.

In California, the party asserting collateral estoppel must show five elements: (1) "the issue sought to be precluded from relitigation [is] identical to that decided in a former proceeding," (2) "this issue must have been actually litigated in the former proceeding," (3) "it must have been necessarily decided in the former proceeding," (4) "the decision in the former proceeding must be final and on the merits," and (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Lucido v. Superior Court*, 51 Cal. 3d 335, 341-42 (1990). Significantly, for purposes of this order, "[t]he party asserting collateral estoppel bears the burden of establishing these requirements." *Id.*

Four of the elements of collateral estoppel are not in serious dispute. The parties focus their attention only on the second element: whether Union Pacific's property rights under the Congressional Acts were "actually litigated" in the Rent Action.

### III. Analysis.

The parties briefed Plaintiffs' motion to dismiss, including a memorandum filed by Kinder Morgan and several notices of supplemental authority. *See* Docs. 117, 121, 126, 127, 128, 130, 131, 138. Finding that the parties had not provided enough factual detail to determine whether the effect of the Congressional Acts was actually litigated in the Rent Action, the Court entered an order asking the parties to respond to several specific questions:

> A. Did Kinder Morgan ask the California trial court to hold that Union Pacific lacked title under the pre-1871 Acts or the 1875 Act to grant the easements at issue in the litigation? If yes, Plaintiffs or Kinder Morgan should provide the Court with the specific trial court pleadings in which that request was made.
>
> B. Did the trial court decide whether Union Pacific had title under the pre-1871 Acts or the 1875 Act to grant the easements at issue in that litigation? If yes, Plaintiffs or Kinder Morgan should provide the court with the transcript, minute entry, or order in which the trial court decided that issue. If no, why did the trial court not decide that issue if it was raised by Kinder Morgan?
>
> C. Was this assertion – that Union Pacific did not have title under the pre-1871 Acts or the 1875 Act to grant the easements – raised by Kinder Morgan on appeal to the California Court of Appeal[], either in its notice of appeal or its pre-hearing briefs? If yes, Plaintiffs or Kinder Morgan should provide the Court with the notice of appeal or pre-oral-

- 5 -

argument appellate briefs in which it was raised. If no, why was it not raised by Kinder Morgan on appeal if, in fact, it was raised and decided in the trial court?

D. According to Kinder Morgan's brief, an issue is sufficiently litigated for collateral estoppel purposes "when it is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined*." Doc. 128 at 6 (emphasis in original; citation omitted). If Kinder Morgan did not ask the trial court to hold that Union Pacific lacked title under the pre-1871 Acts or the 1875 Act to grant the easements, how is this requirement satisfied?

Doc. 135 at 2-3.

The Court will consider the parties' responses to the first three questions in order to determine whether Union Pacific's title under the Congressional Acts was actually litigated in the trial court. The Court will then consider the parties' responses to the fourth question, and other information in the record, to determine whether the title issue was actually litigated before the Court of Appeal.

**A.   Was the Title Issue Actually Litigated Before the Trial Court?**

**1.   Question 1.**

Plaintiffs defer to Kinder Morgan on the first question. Doc. 142 at 5. Kinder Morgan cites three portions of the trial court record in support of its argument that Union Pacific's right to lease the subsurface was actually litigated in the trial court.[2]

**a.   Motions in Limine.**

Kinder Morgan notes that Union Pacific moved in limine to exclude all evidence regarding the status of its title in the trial court. Union Pacific sought to exclude this evidence as "irrelevant to the sole issue in this case – the rent due to Union Pacific in accordance with the fair market value of the subject property." Doc. 141-2 at 25. In response, Kinder Morgan explained the relevancy of the title issue in these words: "evidence of Union Pacific's title interest is relevant to the market value of rent and should be allowed." Doc. 141-2 at 40. The title issues addressed in the motion thus concerned the amount of rent to be charged, not whether Union Pacific had power under

---

[2] The California action involved Santa Fe Pacific Pipelines. Inc. and SFPP, LLC, in addition to Kinder Morgan. For simplicity, the Court will refer to the arguments in the California court simply as having been made by Kinder Morgan.

- 6 -

the Congressional Acts to convey the leased property to Kinder Morgan.

Union Pacific later moved to strike evidence Kinder Morgan had presented regarding Union Pacific's title. In response, Kinder Morgan disclaimed any challenge to Union Pacific's right to lease the subsurface: "Defendants *do not challenge* Union Pacific's ability to grant easements on railroad land that it has not sold or otherwise transferred. Defendants rather contend that the hodge-podge of Union Pacific's title interests in its right-of-way – much of which is admittedly far less than full fee ownership – creates a material risk that depresses the fair market value of the subject property." Doc. 141-3 at 39-40 (emphasis added).[3] Kinder Morgan's argument for lower rent based on questions about Union Pacific's title did not ask the trial court to rule that Union Pacific lacked title to grant the pipeline easements under the Congressional Acts.

### b. Kinder Morgan's Motions for Judgment.

Kinder Morgan cites its own motions for judgment in the Rent Action. In the briefing on these motions, Kinder Morgan argued that Union Pacific could not recover rent without first proving that it owned the subsurface leased to Kinder Morgan. In the first motion, Kinder Morgan asserted that Union Pacific did not own the subsurface because it had transferred or abandoned the land. It provided five examples. Doc. 141-2 at 48-54. None of these examples concerned Union Pacific's rights to the subsurface under the Congressional Acts. *Id.* In the second motion, Kinder Morgan argued again that Union Pacific could not recover rent because it had failed to prove title. Far from showing that Union Pacific had actually litigated the question of title, this motion argued that it had not:

> [Union Pacific] has not provided the Court with one shred of evidence that it actually *owns* the property for which it seeks to charge Defendants $20 million in annual rent. Indeed, among the tomes of evidence that the Court has received from Union Pacific, not one page has been devoted to showing that its title interests in the subject property are sufficient to support its attempt to charge Defendant rent.

---

[3] *See also id.* at 29 ("Defendants have made it crystal clear, with some exceptions where Union Pacific has sold its property, that they are not disputing Union Pacific's ability to collect *some* rent for the subject property easements.") (emphasis in original).

- 7 -

> \* \* \*
>
> Not once did it attempt to show that it held title to any of the over 1,800 miles of property involved in this matter. . . .  And without making any showing as to the existence, quality, or type of its title to the property on which the easements pass, neither the Court nor the Defendants have any way of assessing whether Union Pacific has the required interest in any portion of its "property" on which to base its rental claim.

Doc. 141-2 at 112, 117 (emphasis in original, footnote omitted).

If, as Kinder Morgan argued, Union Pacific presented no evidence of its title, and the trial court had no basis for assessing whether Union Pacific owned any interest in the subsurface, it can hardly be said that the issue of title was actually litigated in the trial court.  Indeed, the trial court's own ruling on this motion confirms that Union Pacific did not attempt to prove title to the easement property:  "It is undisputed that Union Pacific generally did not offer direct evidence of its title to the Subject Property."  Doc. 141-3 at 92.  The trial court's ruling also confirmed that no evidence had been presented to challenge Union Pacific's title to this property.  *Id.* at 94-95.

The thrust of Kinder Morgan's argument was that judgment should be entered in its favor because Union Pacific had failed to sustain its burden of proof.  The trial court disagreed:  "In a case like this where there is no evidence disputing the Railroad's title to virtually all of the subject property, the court can find no authority or reason for the proposition that as a matter of pleading and proof the party seeking rent must affirmatively present evidence and proof of its chain of title."  *Id.* at 95.[4]

The question litigated in these motions was whether Union Pacific had the burden of proving title before it could collect rent.  The trial court held that it did not.  Title itself was not litigated.

### c. Trial Evidence.

---

[4] The trial court also noted that even if Union Pacific had such a burden, it was, "in the absence of any disputing evidence," satisfied by "circumstantial evidence," including the rental agreement with Kinder Morgan, certain cards that were placed in evidence, and the fact that Kinder Morgan had paid rent for decades.  *Id.* at 95-96.  This was not a ruling on the quality of title obtained under the Congressional Acts.

- 8 -

Kinder Morgan points to testimony of expert witnesses and two trial exhibits. Doc. 141 at 7-8. The testimony shows that the experts *assumed* Union Pacific had title without conducting their own investigations. *See* Doc. 141-4 at 5, 34. Kinder Morgan quotes the following question it asked a Union Pacific's expert: "Did you undertake any investigation at all as to whether recipients of congressional land grants for railroads in the 1860s and 1870s had the right to issue easements for pipelines as part of their grant?" Doc. 141-4 at 17. Kinder Morgan fails to quote the answer, in which the expert testified that he undertook no such investigation. *Id.* at 17-18. The fact that Union Pacific's expert did not investigate title to the easements suggests that Union Pacific did not seek to litigate that question.

Nor do the two trial exhibits provided by Kinder Morgan show that the effects of the Congressional Acts were actually litigated. One exhibit begins with the word "Title" and is followed by what appear to be index cards with no clear information about the Acts or their effects. Doc. 141-3 at 133-144. The other is a graph appearing to show the various types of railroad title and whether they were obtained through acts of Congress or other sources, but it includes no information about the Acts or their effects. *Id.* at 146.

### d.     Summary.

Although Union Pacific's title clearly was mentioned during the trial court litigation, Kinder Morgan has provide no evidence that it actually asked the trial court to determine whether Union Pacific had title under the Congressional Acts, and no proof that the parties submitted evidence or legal arguments on that question.[5]

---

[5] The Court of Appeal's decision suggests that evidence was presented in the trial court on the effects of the Congressional Acts. 231 Cal. App. 4th at 153. But the decision provides no citation to the trial court record, and Plaintiffs and Kinder Morgan, who have the burden of proving that collateral estoppel applies, have provided no such evidence from the trial court record.

### 2. Questions 2 and 3.

Plaintiffs largely defer the second and third questions to Kinder Morgan. Doc. 142 at 5-7.[6] Kinder Morgan admits that the trial court did not rule on whether Union Pacific had rights to the subsurface under the Congressional Acts. Doc. 141 at 9 (recognizing that the "trial court decided not to decide what the property of the railroad was") (citation and internal quotation marks omitted). Kinder Morgan further admits that it did not raise the effects of the Congressional Acts in either its notice of appeal or its pre-hearing appellate briefs. Doc. 141 at 12.

### 3. Conclusion.

Under California law, "[a]n issue is actually litigated when it is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined*." *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 482 (2001) (quoting Restatement (Second) of Judgments § 27 cmt. d) (quotations marks and brackets omitted; emphasis in original). No party has cited any evidence or briefing presented to the trial court on whether Union Pacific in fact possessed rights to lease the pipeline space to Kinder Morgan under the Congressional Acts, and the California trial court never decided this issue. The Court therefore finds that the scope of Union Pacific's title under the Congressional Acts was not actually litigated before the California trial court. The remaining question, therefore, is whether it was actually litigated before the California Court of Appeal.[7]

---

[6] Plaintiffs do quote at some length from the trial court's denial of Kinder Morgan's second motion for judgement. Doc. 142 at 6-7. As noted above, the trial court found that Union Pacific did not have the burden of proving title and, in fact, had not offered any "direct evidence of its title to the Subject Property." Doc. 141-3 at 92. The trial court did not address Union Pacific's title under the Congressional Acts.

[7] The California Court of Appeal stated that challenges to the railroad's property rights "were raised again and again at trial." 231 Cal. App. 4th at 160 n.11. It cited the previously mentioned motion in limine, motion to strike, and motion for judgment (*id.* at 153-54), none of which addressed the effects of the Congressional Acts. It also cited title cards, which presumably are the largely uninformative cards mentioned above. *Id.* at 154. And it stated that witnesses testified about the Congressional Acts (*id.*), but the parties in this case have provided no such testimony. The California trial court, by contrast, found that neither Union Pacific nor Kinder Morgan had presented evidence on this issue. Doc. 141-3 at 92, 94-95.

### B. Was the Title Issue Actually Litigated Before the Court of Appeal?
### 1. Kinder Morgan's Arguments.

Kinder Morgan argues that "it is sufficient, for collateral estoppel purposes, that the issue of Union Pacific's title under the Congressional Acts was determined by the Court of Appeal." Doc. 141 at 10. It cites two cases in support, *Flood v. Simpson*, 45 Cal. App. 3d 644 (1975), and *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754 (9th Cir. 2014).

In *Flood*, the trial court entered default judgment against a pro se litigant who willfully failed to appear for a deposition three times. 45 Cal. App. 3d at 648. The litigant appealed the default judgment, arguing, among other things, that the opposing party's attorney engaged in fraud when he obtained the default. *Id.* at 650-51. The Court of Appeal rejected all of the arguments made by the litigant, including the fraud allegation. *Id.* Thereafter, the pro se litigant sued the same attorney for fraud in connection with the default judgment. *Id.* at 647. The trial court dismissed the fraud claim on collateral estoppel grounds, finding that the issues raised by the litigant had been "decided point by point against [him]" by the appellate court. *Id.* at 650. The Court of Appeal affirmed, reasoning that the litigant was "precluded from raising the issue of fraud and deceit in the instant case, having raised it in his first appeal." *Id.* at 651.

The Court finds *Flood* distinguishable for two reasons. First, *Flood* was decided in the unusual procedural context of a default judgment entered as a sanction. The merits of the claim in the first action were never litigated to a conclusion. The case was short-circuited by the pro se litigant's refusal to appear for his deposition and the trial court's need to enforce its orders requiring him to appear. The pro se litigant sought to attack the default judgment on appeal by arguing, *inter alia*, that the judgment was procured through fraud. This fraud issue was not part of the original case in the trial court; it could not have been litigated in the trial court before the default judgment was entered. This situation differs significantly from the present case, where a merits-related issue was not

litigated or decided in the trial court.

Second, the pro se litigant in *Flood* expressly raised the fraud issue in the appellate proceeding. He chose to litigate it there. The trial court in the second action provided this relevant explanation: "Although [the first] action was dismissed on a technical ground of sanctions as the court was entitled to do, on appeal the plaintiff herein attacked the judgment collaterally in the sense that he raised all of the allegations contained in the present complaint whereby he alleges that there was fraud on the part of the attorneys . . . and that the default was secured by fraud[.]" *Id.* at 651 n.11 (quoting trail court). Holding the pro se litigant to the resolution of an issue *he* chose to present to the appellate court was entirely consistent with the purposes of collateral estoppel. It does not follow that Union Pacific should be held to the resolution of an issue it never presented to the Court of Appeal.

In *ReadyLink*, a company petitioned in California state court for a writ of mandamus against a decision of the California Insurance Commissioner. *ReadyLink HealthCare, Inc. v. Jones*, 210 Cal. App. 4th 1166, 1169-72 (2012). The trial court denied the petition, and the company appealed. The company argued for the first time on appeal that the Commissioner's decision was preempted by federal law. *Id.* at 1173. While the appeal was pending, the company filed a separate action in federal district court asserting the same preemption argument. *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 757 (9th Cir. 2014) (describing district court proceedings). The federal district court dismissed the action on abstention grounds, and the company appealed to the Ninth Circuit, arguing preemption. *Id.* While the appeal was pending before the Ninth Circuit, the California Court of Appeal addressed and rejected the company's preemption argument. *See* 210 Cal. App. 4th 1166.

When the Ninth Circuit considered the appeal of the district court decision, it held that the California Court of Appeal's decision collaterally estopped the company from reurging preemption. 754 F.3d at 761. The Ninth Circuit found that the company "actually litigated" the preemption argument before the Court of Appeal because it had

- 12 -

1  properly raised the issue in that court, it had submitted the issue for determination, and
2  the issue had been determined. *Id.* Thus, in *ReadyLink*, as in *Flood*, the party later
3  subject to collateral estoppel was the party that raised the issue in the appellate court.
4  Indeed, the Ninth Circuit made clear that the company in *ReadyLink* could have avoided
5  collateral estoppel by not raising preemption in the California appellate court:

> Had ReadyLink not made its Supremacy Clause claim in the mandamus action, the Court of Appeal's opinion would not have precluded a federal suit raising that claim. . . . But, ReadyLink instead voluntarily chose to litigate the Supremacy Clause claim in the state mandamus action, and the appellate court's decision therefore has preclusive effect.

*Id.* at 762. This fact distinguishes *ReadyLink* from this case. Union Pacific did not ask the Court of Appeal, or the California trial court for that matter, to decide the question of its title to the railway subsurface. Nor did Kinder Morgan ask that the issue be resolved.[8]

Even if *ReadyLink* is viewed as holding that resolution of an issue raised for the first time on appeal can in some cases satisfy the "actually litigated" requirement of collateral estoppel, the Court concludes that this is not one of those cases. The Ninth Circuit expressly noted in *ReadyLink* that it was dealing with a purely legal issue. *Id.* at 761-62 ("Preemption is almost always a legal question, the resolution of which is rarely aided by development of a more complete factual record.") (quotation marks and citation omitted). The same is not true for the title issue addressed here. As the Court of Appeal's decision in the Rent Action makes clear, the purpose for which railroad property is used – specifically, whether it is a "railroad purpose" – is an important factual issue in determining the effect of the Congressional Acts. The Court of Appeal noted that

---

[8] At oral argument, Plaintiffs and Kinder Morgan argued that *Flood* and *ReadyLink* could not be distinguished in this way because the test for determining collateral estoppel in California does not ask which party raised the issue on which preclusion is sought. The Court is not persuaded. In California, collateral estoppel applies "'only where such application comports with fairness and sound public policy.'" *Direct Shopping Network, LLC v. James*, 206 Cal. App. 4th 1551, 1562 (2012) (quoting *Smith v. ExxonMobil Oil Corp.*, 153 Cal. App. 4th 1407, 1414 (2007)). Certainly, there is nothing unfair about binding a party to a decision it chose to litigate in an appellate court. Having voluntarily raised the issue in that forum, the party can hardly be heard later to argue that the issue should have been litigated before a trial court. The analysis may differ where the party against whom preclusion is sought did not voluntarily raise the issue decided by the appellate court.

1  evidence on this issue was *not* contained in the trial court record:

2
3  > Implicitly acknowledging that its rights-of-way must be used for railroad
>  purposes, the Railroad argues in its supplemental briefs that the pipelines
4  > serve a railroad purpose after all.  To support this proposition, it claims that
>  the Railroad uses the fuel transported through the pipeline system to power
5  > its locomotives.  *There is nothing in the record supporting this claim, and
>  no admissible evidence to that effect was ever proffered.*
6

7  231 Cal. App. 4th at 166 (emphasis added).  The Court of Appeal thus confirmed that the

8  trial had not included evidence on a key factual issue relevant to the question of Union

9  Pacific's title under the Congressional Acts.[9]

10  Undeterred by this gap in the factual record, the Court of Appeal proceeded to
11  resolve the issue by making various factual assumptions.  It noted repeatedly that the
12  "mere fact" that the railroad used fuel from the pipelines did not satisfy the "railroad
13  purpose" requirement (*id.*), but a full factual record would not likely have been limited to
14  this "mere fact."  The Court of Appeal assumed several other relevant facts: (1) using the
15  pipeline fuel was no different than ("fully consistent with") simply purchasing the fuel
16  elsewhere (*id.* at 167); (2) the pipeline lease was entered "in order to generate revenue"
17  for the railroad, even though it was entered when the railroad and pipeline companies
18  were subsidiaries of the same corporation (*id.*); (3) the railroad entered the pipeline leases
19  because it was "seeking value from the use of the servient estate" (*id*. at 168); (4) the
20  pipelines are all buried deep under the railroad tracks, which distinguished this case from
21  cases finding that shallower fiber optic cables beneath railroad lines can serve a railroad
22  purpose (*id.* at 169); and (5) the railroad rented the pipeline space to "a third party from a
23  different industry," again disregarding that the pipeline and railroad companies were
24  corporate sisters when the lease was entered (*id.* at 170).  The Court of Appeal also noted
25  that the railroad "has submitted no evidence, indeed it makes no claim, that its collecting

---

[9] Although not entirely clear, the Court of Appeal decision appears to hold that the "railroad purpose" inquiry is relevant only under the pre-1871 Acts and not under the 1875 Acts.  Even if this is true, Union Pacific stated during oral argument that it has not yet determined whether both sets of statutes apply to its Arizona rights-of-way.

- 14 -

1  rent from the Pipeline in some way helps the Railroad itself run, as opposed to merely
2  providing revenue to the company for the benefit of its shareholders." *Id.* at 174.

3       Thus, unlike the appellate court in *ReadyLink*, the Court of Appeal in this case
4  considered several facts, virtually all of which were assumed rather than proved. It is one
5  thing to hold, as *ReadyLink* did, that a litigant who asks an appellate court to decide a
6  pure question of law is bound by that court's decision in subsequent litigation. It is quite
7  another to hold that a litigant can be bound to an appellate court's decision on a mixed
8  question of law and fact that no party has raised and on which no evidence has been
9  taken. *ReadyLink* does not control here.

10       Kinder Morgan argues that Union Pacific has no one but itself to blame for the
11 absence of evidence in the record supporting its claim to title, asserting that Union Pacific
12 could have presented such evidence at trial. But Union Pacific's consistent position in
13 the trial court was that it did not need to prove title – a position with which the trial court
14 agreed.

15       Kinder Morgan also argues that Union Pacific could have requested permission to
16 present new evidence at the appellate level. *See* Cal. Civ. Proc. Code § 909 ("The
17 reviewing court may . . . take additional evidence of or concerning facts occurring at any
18 time prior to the decision of the appeal"); *In re K.M.*, 242 Cal. App. 4th 450, 456 (2015)
19 (granting motion under this provision to introduce post-judgment records purporting to
20 show that the appeal was moot). But Kinder Morgan cites no case where a trial-like
21 record was created on appeal, and the Court has serious doubts that the Court of Appeal
22 would have entertained a procedure in which fact witnesses and experts testified and,
23 potentially, discovery occurred. In any event, the decision whether to permit additional
24 evidence would have been within the discretion of the Court of Appeal, and the Court of
25 Appeal gave no indication that it was amenable to taking additional evidence, asking
26 instead that the parties point to "*evidence in the record*" to support their arguments.
27 Doc. 128-3 at 2.

28

### B. Plaintiffs' Arguments.

Plaintiffs offer a different theory as to how the title issue was "properly raised" in the Rent Action. They point to cases holding that California appellate courts are authorized to raise issues *sua sponte*. *See San Joaquin Raptor/Wildlife Rescue Ctr. v. Cty. of Stanislaus*, 27 Cal. App. 4th 713, 741 n.12 (1994) ("an appellate court has the power to raise issues on its own motion") (citations omitted, alterations incorporated); *Noguera v. N. Monterey Cty. Unified Sch. Dist.*, 106 Cal. App. 3d 64, 72 n.5 (1980) ("We are at liberty to consider, and even to decide, a case upon any points that its proper disposition may seem to require, whether taken by counsel or not.") (citation omitted); *see also* Cal. Gov't Code § 68081.

Because the Court of Appeal was authorized to raise and decide the title issue, Plaintiffs argue that the issue was "properly raised" for purposes of collateral estoppel. Doc. 142 at 9-10. But the proper scope of an appellate court's jurisdiction and the proper application of collateral estoppel are legally distinct questions. Plaintiffs do not cite any California case holding that preclusive effect must be accorded every decision that is procedurally proper under the rules of the rendering court. To the contrary, California courts have denied preclusive effect to decisions that, although procedurally proper, appear to reflect a less than full consideration of the relevant issues. In *Grove v. Peterson*, 100 Cal. App. 4th 659, 667 (2002), for example, the Court of Appeal considered whether the denial of a motion to set aside a default judgment collaterally estopped a subsequent, independent attack on that judgment. The court held that it did not, explaining:

> [I]n the motion procedure the moving party is limited to presenting ex parte affidavits of voluntary witnesses, unless the trial court in its discretion permits a greater latitude. The party does not have the right to produce oral testimony or to compel witnesses to attend for deposition or cross-examination. *In other words, the motion procedure does not involve all the aspects of full litigation.*

*Id.* at 667-68 (emphasis added).

Other courts have denied preclusive effect where an issue was decided without all

- 16 -

the aspects of full litigation.  For example, courts have held that "a preliminary injunction hearing is not considered a full and fair opportunity to litigate an ultimate issue" for collateral estoppel purposes.  *Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n, Local 159*, 553 F. Supp. 324, 327 (M.D.N.C. 1982).  Similarly, where a court decides an issue raised for the first time at oral argument or in a reply brief, such a decision may lack preclusive effect.  *See In re MDL-1824 Tri-State Water Rights Litig.*, 644 F.3d 1160, 1203 n.40 (11th Cir. 2011) (denying preclusive effect to D.C. Circuit holding based on issue that arose for the first time at oral argument); *Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997) (expressing doubt as to whether issue first raised in reply brief was "actually litigated" for collateral estoppel purposes).

As the Fifth Circuit has explained, if a court "assumes to adjudicate an issue or question not submitted by the parties in their pleadings nor drawn into controversy by them in the course of the evidence, and bases its judgment on such adjudication," the judgment has no collateral estoppel effect.  *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 430 F.2d 38, 45 (5th Cir. 1970).  Part of the rationale for this rule is that a party has less opportunity to present its views on an issue raised *sua sponte* by the court.  But the rationale is broader.  Ordinarily, parties have opportunities throughout the course of litigation to shape the issues that will ultimately be decided.  They may use these opportunities to manage their broader legal risk.  They may expend additional resources on issues that threaten far-reaching effects.  They may enlist intervenors and *amici* who share their views.  A plaintiff, as Union Pacific was in the Rent Action, has even broader freedom to shape its destiny, and may choose not only the issues it presents to the court, but, in many cases, the court itself.  When a court decides an issue that no party has presented, litigants are largely deprived of the opportunity to manage their legal risk and present their case.

As a matter of basic fairness, it is appropriate to limit the collateral effects of a decision rendered *sua sponte* and on an incomplete factual record, even where, as here,

the litigant has been offered some opportunity to brief the issue decided. As already noted, collateral estoppel is "an equitable concept based on fundamental principles of fairness." *Sandoval v. Superior Court*, 140 Cal. App. 3d 932, 941 (1983). Indeed, California courts instruct that "[e]ven where the technical requirements are all met, the doctrine [of collateral estoppel] is to be applied 'only where such application comports with fairness and sound public policy.'" *Direct Shopping Network, LLC v. James*, 206 Cal. App. 4th 1551, 1562 (2012) (quoting *Smith v. ExxonMobil Oil Corp.*, 153 Cal. App. 4th 1407, 1414 (2007)). For this reason, "[w]here there is doubt about the application of issue preclusion, it should not apply." *Union Pacific*, 231 Cal. App. 4th at 186 (citing *Flynn v. Gorton*, 207 Cal. App. 3d 1550, 1554 (1989)). The Court has serious doubts about application of collateral estoppel in this case, and therefore concludes that it should not apply.

In so holding, the Court does not address the merits of Plaintiffs' or Kinder Morgan's arguments regarding Union Pacific's title to the subsurface beneath its railroad rights-of-way. That is a matter to be decided later, after more complete briefing and evidence. The parties will be free to cite the Court of Appeal's decision as highly relevant case law. The Court holds only that Union Pacific is not collaterally estopped from asserting its counterclaims and contesting Plaintiff's allegations based on the Congressional Acts.

**IT IS ORDERED** that Plaintiffs' motion for partial dismissal (Doc. 117) is **denied**.

Dated this 11th day of July, 2016.

_____
David G. Campbell
United States District Judge