1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Alonzo Valenzuela, et al.,                      No. CV-15-01092-PHX-DGC

10                  Plaintiffs,                    **ORDER**

11  v.

12  Union Pacific Railroad Company, et al.,

13                  Defendants.

14

15          Plaintiffs assert that six documents produced by Defendants Union Pacific and

16  Kinder Morgan in this litigation are not privileged and should be available as evidence.

17  Following a telephone conference, the Court directed the parties to submit the documents

18  for *in camera* review and to provide the Court with memoranda on the issue.  Doc. 190.

19  The Court has reviewed the documents and memoranda (Docs. 213, 215, 217, 225), and

20  holds that the privilege applies and has not been waived.

21          The six documents reviewed *in camera* are referred to by the parties as Exhibits A

22  through F.  Exhibits A, B, C, and D are memoranda written by in-house attorney Roy

23  Jerome between 1966 and 1976, and were addressed to officers or employees of Union

24  Pacific's and Kinder Morgan's predecessor corporations.  Doc. 215 at 3.[1]  Mr. Jerome

25  was employed as a lawyer by Southern Pacific Company, the former parent of Union

26  Pacific's and Kinder Morgan's predecessors.  Exhibit E is a 1976 internal memorandum

27  _____

28          [1] Citations are to page numbers attached at the top of each page by the Court's
CMECF system, not to original page numbers at the bottom of each page.

written to several individuals, including Mr. Jerome.  Exhibit F is a 1957 document written by Engineering Management, Inc. ("EMI") that discusses legal advice provided by Paul DeFord, an in-house attorney employed by Southern Pacific Company.  Doc. 217 at 3-4.  Union Pacific asserts the attorney-client privilege with respect to Exhibits A-C, and Kinder Morgan asserts the privilege with respect to Exhibits D-F.  Doc. 213 at 2.

At the parties' request, the Court previously entered a stipulated order which provides that "[t]he production of any privileged or otherwise protected or exempted Information shall not be deemed a waiver or impairment of any claim of privilege or protection, including, but not limited to, the attorney-client privilege or the protection afforded to work product materials, or the subject matter thereof, as to the produced Information, or any other Information."  Doc. 110 at 2.  As a result, Plaintiffs do not contend that the production of Exhibits A-F waived the attorney-client privilege.  They instead argue that the documents are not privileged in the first instance, that subject matter waiver has occurred through the production and use of related documents, and that Defendants waived the privilege by taking certain positions in this case and by failing to make timely objections when the documents were used in a deposition.  Doc. 213.

Plaintiffs cite Arizona privilege law in support of their arguments.  *Id.* at 2. Kinder Morgan argues that California law applies.  Doc. 217 at 2-3.  Union Pacific cites both Arizona and California law.  Doc. 215.  All parties cite Federal Rule of Evidence 502.  The Court need not engage in a choice-of-law analysis because Rule 502 resolves most of the issues and, where state law is relevant, the result would be the same under Arizona and California law.

### A.    Are the Documents Privileged?

Plaintiffs make only cursory arguments that Exhibits A-F are not privileged. Doc. 213 at 4.  They assert that the documents do not provide legal advice based on confidential information, but Exhibits A-E are written either by or to an attorney, Exhibit F recounts the advice of an attorney, and the significance of all six documents, in Plaintiffs' view, is their legal advice – their statements about the legal status of the

railroad's ownership interest in the railroad right-of-way.  Plaintiffs contend that the privilege does not extend to both Union Pacific and Kinder Morgan, but do not dispute Defendants' assertion that they were sister corporations at the time of the communications, owned by a single corporate parent.  Nor do Plaintiffs dispute that the attorneys involved were employed by the parent.  Finally, Plaintiffs contend that Exhibit F was written by EMI, an unrelated third-party, but do not dispute that EMI was retained by Kinder Morgan's predecessor as its right-of-way agent.  Both Arizona and California law include agents within the corporate attorney-client privilege.  *See* A.R.S. § 12-2234(B) (corporate privilege includes agents); *Nemirofsky v. Seok Ki Kim*, 523 F. Supp. 2d 998, 1002 (N.D. Cal. 2007), as amended (Nov. 24, 2007) (privilege "includes communications with the entity's agent, at least where the agent is acting within the scope of his agency.").

Union Pacific and Kinder Morgan provided detailed responses to Plaintiffs' arguments on this issue, and the Court afforded Plaintiffs an opportunity to reply, but the reply said nothing more about this issue.  Doc. 225.  The Court finds that Exhibits A-F satisfy the requirements for privileged attorney-client communications.

**B.**     **Subject Matter Waiver under Rule 502.**

Plaintiffs argue that Defendants waived the attorney-client privilege with respect to Exhibits A-F by disclosing three other letters or memoranda – Exhibits G, H, and I – which address the same subject matter (the status of the railroad's right-of-way title) and were written by Defendants' in-house lawyers.  Although Plaintiffs initially suggested that the waiver occurred when Exhibits G-I were used in related California litigation referred to by the parties as the Rent Action, Plaintiffs narrowed their position in their reply, asserting that the Court need not consider the Rent Action.  Plaintiffs instead claim that Defendants waived the privilege by failing to object to Plaintiffs' use of Exhibits G-I in this litigation, both in Plaintiffs' complaint and in depositions.  Doc. 225 at 4.

Plaintiffs assert an argument for subject-matter waiver – that Defendants' waiver of the privilege with respect to Exhibits G-I constitutes a waiver of the privileged for

other documents addressing the same subject matter (Exhibits A-F).  In support, Plaintiffs

rely on Federal Rule of Evidence 502(a):

> When the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1)    the waiver is intentional;
>
> (2)    the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3)    they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

The Advisory Committee Note to Rule 502(a) explains the intent of this rule,

particularly when privileged information "ought in fairness" to be disclosed.  It explains

that the rule does not establish a general rule of subject matter waiver.  To the contrary,

the Note states that voluntary disclosure of a privileged communication,

> if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.

Fed. R. Evid. 502(a) advisory committee note (11/28/2007).  As if for emphasis, the Note

adds: "Thus, subject matter waiver is limited to situations in which a party intentionally

puts protected information into the litigation in a selective, misleading and unfair

manner."  *Id.*  As one court has explained, Rule 502(a) "abolishes the dreaded subject-

matter waiver, i.e., that any disclosure of privileged matter worked a forfeiture of any

other privileged information that pertained to the same subject matter."  *Trustees of Elec.*

*Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 11

(D.D.C. 2010).

- 4 -

1    Union Pacific has shown that Exhibits G, H, and I were introduced as evidence in

2   the Rent Action over its objection, were used against it in that case, and will not be used

3   by Union Pacific in this case.  Doc. 215 at 8-10.  Kinder Morgan also states that it does

4   not intend to use Exhibits G-I in this case.  Doc. 217 at 6.  Given these facts, the Court

5   cannot conclude that Defendants are "intentionally put[ting] protected information into

6   [this] litigation in a selective, misleading and unfair manner" as required by the Advisory

7   Committee Note.  Thus, even if the Court were to find that the documents were disclosed

8   voluntarily in this litigation – a conclusion that is not obvious given that they were

9   admitted in the Rent Action over Union Pacific's objection and, according to Plaintiffs,

10   are now available in the public record – Plaintiffs cannot satisfy the Rule 502(a)(3)

11   requirement that disclosure of Exhibits A-F "ought in fairness" to be required.  As

12   another judge of this Court has noted, a party's avowal that it does not intend to use a

13   privileged communication in litigation eliminates the need for subject matter waiver

14   under Rule 502 because "the party asserting the privilege is not selectively and

15   misleadingly presenting the disclosed materials as evidence."  *Gateway Deliveries, LLC*

16   *v. Mattress Liquidators, Inc.*, 2016 WL 232427, at *3 (D. Ariz. Jan. 20, 2016).

17    Union Pacific does intend to use Exhibit K, which consists of title cards created by

18   Union Pacific attorneys to reflect sources of title for individual track segments.  Plaintiffs

19   argue that the cards were created by in-house attorneys, that they contain attorney-client

20   communications, and that Union Pacific's use of the cards creates the unfairness Rule

21   502(a) is intended to prevent.  The Court is not persuaded.  The cards relate to specific

22   properties and appear to show the parcel number, the source of the railroad's interest in

23   the property (deeds, patents, statutes), whether the title is in fee, limited, or an easement,

24   other relevant information such as mineral reservations, and a column for "remarks,"

25   which often includes information such as termination dates.  Each card appears to be

26   signed and dated by an attorney.

27    The existence of the attorney-client privilege usually must be established by the

28   party asserting it.  *S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 551 (D. Ariz. 2002).

- 5 -

In this instance, the normal roles are reversed.  Plaintiffs claim that the title cards are privileged, while Defendants claim the opposite.  Plaintiffs, therefore, bear the burden of showing that the privilege applies.

Plaintiffs have not carried this burden.  The cards are not labelled as privileged, are not addressed to anyone, and appear to be an information-tracking system.  Plaintiffs provide no evidence that the cards were created or maintained in confidence.  Deposition testimony provided by Union Pacific states simply that the cards were maintained in the "real estate file room."  Doc. 215-1 at 34.

Plaintiffs quote deposition testimony stating that the cards contain "a very rough opinion as to the nature of title associated with the parcel" (Doc. 225 at 6-7), but cite no authority to show that documents created by attorneys for a tracking system constitute privileged communications.  Such documents may be attorney work product if litigation is anticipated, Fed. R. Civ. P. 26(b)(3), but Plaintiffs do not suggest that the cards were created in anticipation of litigation.

On this record, Plaintiffs have not shown that the cards contain privileged information being used selectively by Defendants.  The Court therefore cannot conclude that Defendants are "intentionally put[ting] protected information into the litigation in a selective, misleading and unfair manner."  Fed. R. Evid. 502(a) advisory committee note (11/28/2007).  Plaintiffs may raise this issue again if they develop other evidence.

### C.    Waiver by Litigation Conduct.

The attorney-client privilege may be waived through a party's litigation actions. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).  The test for such waiver is three-pronged.  First, a party must assert the privilege as an affirmative act in the litigation. Second, through the affirmative act, the party must put privileged information at issue. Third, the Court must find that allowing the privilege to stand would deny the opposing party access to information vital to its case.  *Arizona Dream Act Coal. v. Brewer*, No. CV-12-02546-PHX-DGC, 2014 WL 171923, at *1 (D. Ariz. Jan. 15, 2014).

Plaintiffs claim that Defendants have waived the attorney-client privilege for Exhibits A-F by asserting that their easement practices are lawful.  Specifically, Plaintiffs cite an affirmative defense asserted by Union Pacific which states that "conduct alleged in the Complaint conformed with all state and federal statutes, regulations, and other law based upon the state of knowledge at all relevant times alleged in the Complaint." Doc. 115 at 24.  Plaintiffs claim that this puts in issue Union Pacific's knowledge of legal matters during the relevant times periods, and note that Kinder Morgan has adopted the same defense by incorporation.

It is well-established that a holder of the privilege cannot claim that legal advice from his or her attorney justifies his or her action while simultaneously shielding that advice from disclosure.  *Chevron*, 974 F.2d at 1163; *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008); *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982).  But if the privilege holder merely asserts that his conduct was lawful and makes no claim that he or she relied on counsel's advice, privileged information is not necessarily placed in issue.

The most analogous case in this circuit appears to be *United States v. Amlani*, 169 F.3d 1189 (9th Cir. 1999), in which the defendant argued on appeal that the prosecutor's disparaging comments about his lawyer caused him to fire his lawyer and settle for less effective counsel.  The government sought discovery of the defendant's conversations with his lawyer to determine whether the alleged disparagement had in fact caused him to change counsel, and the defendant asserted the attorney-client privilege in response.  The Ninth Circuit held that the defendant's claim – that his lawyer was fired only because of statements made by the prosecutor – sufficiently interjected his communications with the lawyer into the case to constitute waiver of the privilege.  *Id.* at 1195.

Other cases have taken a variety approaches on this issue.  At one end of the spectrum, the Eastern District of Washington in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), took a broad view of waiver.  In *Hearn*, prison officials in a civil rights case asserted the defense of qualified immunity.  *Id.* at 574.  The defendants never

claimed advice of counsel as a defense to their actions, but the district court noted that for qualified immunity to apply, the defendants must have acted in good faith. *Id.* The plaintiff sought disclosure of the legal advice rendered to the defendants by the state's attorney "insofar as such advice related to plaintiff's confinement and tends to prove defendants' bad faith." *Id.* at 578. The district court held that the defendants' assertion of the immunity defense was an affirmative act and, because "the legal advice they received is germane to the qualified immunity defense they raised," the first two prongs of the waiver test were met. *Id.* at 581. The district court justified its holding by noting that "the content of defendants' communications with their attorney is inextricably merged with the elements of plaintiff's case and defendants' affirmative defense. These communications are not incidental to the case; they inhere in the controversy itself, and to deny access to them would preclude the court from a fair and just determination of the issues." *Id.* at 582.

Other courts disagree with the broad scope of waiver applied in *Hearn*. *See, e.g.*, *In re Cnty. of Erie*, 546 F.3d at 229. The Third Circuit, for example, reviewed the holding in *Hearn* and similar cases and characterized them as extending "waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation," rather than limiting waiver to situations where a party affirmatively asserts that advice of counsel justified his or her actions. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994). The Third Circuit noted that cases such as *Hearn* "rest on a conclusion that the information sought is relevant and should in fairness be disclosed." *Id.* But "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged." *Id.*; *see also Erie*, 546 F.3d at 229. The Third Circuit held that even if a privilege holder's state of mind is at issue, the privilege still applies. Other courts have also held that "a party must *rely* on privileged advice from his counsel" in order to waive the privilege, rather than merely make the evidence relevant. *Erie*, 546 F.3d at 229 (emphasis in original).

The Court finds the reasoning in *Rhone-Poulenc* and *Erie* truer to the intent and

nature of the attorney-client privilege than *Hearn*.  Waiver requires that a party put the advice of counsel at issue, either by asserting that it relied on that advice or, as in *Amlani*, placing the attorney-client communications squarely in the case.  Defendants have not done so.  They do not claim that they should prevail in this case because they relied on advice of counsel.  Nor do Plaintiff's claims lend themselves to such a defense.  Plaintiffs sue for trespass, quiet title, ejectment, inverse condemnation, unjust enrichment, recovery of rents, and an accounting.  Doc. 75 at 18-28.  These claims will turn on whether Defendants had title to the property they occupied, not whether they reasonably believed so based on the advice of counsel.

This is not a bad faith case like *State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169 (Ariz. 2000), cited by Plaintiffs, where the reasonableness of the party's state of mind is the question.  The defendant in *Lee* "alleged that its actions were objectively and subjectively reasonable and in good faith based on its evaluation of the law – an evaluation that included advice of counsel."  *Id.* at 1175.  Defendants make no similar assertion here, and the Court cannot conclude that they have asserted the privilege as an affirmative act in this litigation and thereby put privileged information at issue. *Amlani*, 169 F.3d at 1195.

### D.      Timeliness of Objections.

Plaintiffs claim that Defendants waived the privilege with respect to Exhibits A, B, D, and E by failing to make timely objections after the exhibits were used in depositions in this case.  Doc. 213 at 12-13.

Exhibits A and B were marked during the morning session of the Ryan Dahl deposition on October 19, 2016.  Doc. 213, Ex. L.  Mr. Dahl responded to questions about both exhibits.  Immediately after lunch, counsel for Kinder Morgan stated on the record that he had determined that the exhibits were privileged, that he objected to further questions on the exhibits and would instruct the witness not to answer such questions, and that he would raise the issue with the Court.  *Id.* at 81-83.  Counsel for Union Pacific, which was participating by phone, did not have copies of the exhibits when they were

introduced in the deposition.  When counsel located copies later that day, he sent an email objecting to their use and invoking the procedures of the Court's protective order.  Doc. 215-1 at 10.  His email is time-stamped 2:36 p.m.  *Id.*

Exhibits D and E were marked during the afternoon of Mr. Dahl's deposition.  Counsel for Kinder Morgan stated on the record that he could not determine whether the exhibits were privileged, and reserved any privilege objections.  *Id.* at 109, 116-17.  Counsel for Plaintiffs responded: "If you want to raise an objection later, that's fine."  *Id.* at 117.  Kinder Morgan later asserted that the exhibits were privilege.  Doc. 217 at 11.

Plaintiffs cite three cases where waiver resulted from a party's failure to timely object to the use of privileged information.  Doc. 213 at 12.  In the first case, *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06CV2804 BTM (WM), 2010 WL 275083 (S.D. Cal. Jan. 13, 2010), the memo in question was used in a deposition without objection, used in another deposition two months later without objection, and used in a summary judgment motion without objection.  *Id.* at *5-6.  The court found that any privilege claim for the memo had been waived, and cited cases where delays of between six days and two months had resulted in waiver.  *Id.* at *5.  In the second case, *SurfCast, Inc. v. Microsoft Corp.*, No. 2:12-CV-333-JAW, 2013 WL 4039413 (D. Me. Aug. 7, 2013), the producing party failed to object when an obviously privileged document was marked and discussed at a deposition, and did not raise an objection to the questioning until five days later.  *Id.* at *1, 4-5.  In the third case, *Jacob v. Duane Reade, Inc.*, No. 11 CIV. 0160 JMO THK, 2012 WL 651536 (S.D.N.Y. Feb. 28, 2012), the producing party did not object until two months after the deposition where the privileged document was used.  *Id.* at *5.  The court noted that other cases had found waivers from delays of one month and four months.  *Id.* at *6.

In contrast to these cases, the delay on which Plaintiffs rely with respect to Exhibits A and B was a matter of hours.  Objections were made while the deposition was still underway.  With respect to Exhibits D and E, a reservation of the privilege objection was immediately lodged and Plaintiffs' counsel stated that a later objection would be

fine.  Given these facts, the Court cannot conclude that Defendants delayed unreasonably in raising their privilege objections.  Other cases have held that objections made during a deposition, even if after some questioning on privileged documents, do not waive the privilege.  *See Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011) ("As soon as Defendant obtained the entire text of the emails while the deposition was still ongoing, Defendant interrupted the deposition to put its privilege assertion on the record.  Then, within a few days, Defendant reviewed its entire production to identify other documents affected by the glitch.  These steps constitute a prompt and immediate response to the inadvertent production.").

Rule 502 states that waiver does not occur if "the holder promptly took reasonable steps to rectify the error."  Fed. R. Evid. 502(b)(3).  The Court concludes that this requirement was satisfied by Defendants' same-day actions to assert the privilege.

Dated this 21st day of December, 2016.

David G. Campbell
United States District Judge