**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alonzo Valenzuela, et al., | No. CV-15-01092-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Union Pacific Railroad Company, et al., | |
| Defendants. | |

Plaintiffs filed this case on behalf of a class of persons who own real property adjacent to approximately 505 miles of railroad right-of-way in Arizona, operated by Defendant Union Pacific Railroad Company. Defendants SFPP, L.P. (formerly known as Santa Fe Pacific Pipelines, Inc. and Southern Pacific Pipelines, Inc.); Kinder Morgan Operating L.P. "D"; and Kinder Morgan G.P., Inc. (collectively, "Kinder Morgan") operate a pipeline under the right-of-way that carries fuel products. For decades, Kinder Morgan has paid rent to Union Pacific for operation of the pipeline. Plaintiffs allege that they are the rightful owners of the subsurface beneath the right-of-way and bring claims for trespass, quiet title, ejectment, inverse condemnation, unjust enrichment, recovery of rents, and an accounting. Doc. 75.

Plaintiffs move to certify a class and subclass. Doc. 208. The motion is fully briefed, and the Court heard oral argument on February 10, 2017. For reasons stated below, the Court will deny the motion for class certification, but require the parties to

provide additional briefing on whether an issue class should be certified under Rule 23(c)(4) of the Federal Rules of Civil Procedure.

I.    **Rule 23 Requirements.**

Under Rule 23(a), a district court may certify a class only if (1) it is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). The Court must also find that one of the requirements of Rule 23(b) has been met.[1] Plaintiffs rely primarily on Rule 23(b)(3), which requires that questions of law or fact common to the class predominate over questions affecting only individual class members, and that a class action be superior to other available methods for resolving the controversy. Fed. R. Civ. P. 23(b)(3). Plaintiffs also contend that the class can be certified under Rule 23(b)(2).

Plaintiffs bear the burden of showing that the Rule 23 requirements have been met. *Connecticutt Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011). At least four circuits have held that Plaintiffs must carry this burden by a preponderance of the evidence. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 484 (3d Cir. 2015); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Novella v. Westchester Cnty.*, 661 F.3d 128, 148-49 (2d Cir. 2011); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). This standard appears to be the trend in federal courts. *Newberg on Class Actions*, § 7:21 (2016) ("*Newberg*"). The Court concludes that Plaintiffs must demonstrate that it is more likely than not that the requirements of Rule 23 have been satisfied. *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 427 (D. Ariz. 2013).

---

[1] Some cases have imposed an additional administrative feasibility requirement on class actions, sometimes referred to as "ascertainability." The Ninth Circuit has made clear, however, that this is not a requirement separate from those expressly set forth in Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017).

The Court must rigorously analyze the proposed class to ensure it comports with Rule 23.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("*Dukes*").  The Court will first address the Rule 23(a) requirements.

## II.    Rule 23(a).

Plaintiffs seek certification of the following class: "all landowners who, from January 1, 1983 to the date of class certification, own or have owned land in fee adjoining and underlying the railroad right-of-way granted under the General Right of Way Act of 1875 under which the pipeline is located within the State of Arizona."  Doc. 208 at 8.[2]  Plaintiffs further move to certify a "Current Owner Sub-Class" consisting of "all landowners who, as of the date of class certification, own land in fee adjoining and underlying the railroad right-of-way granted under the General Right of Way Act of 1875 under which the pipeline is located within the State of Arizona."  *Id.* at 8-9.[3]

### A.    Numerosity.

A proposed class satisfies the numerosity requirement if members are so numerous that joinder would be impractical.  Fed. R. Civ. P. 23(a)(1).  Courts in this circuit have held that classes of 40 or more members satisfy this requirement.  *See*, *e.g.*, *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008); *Wamboldt v. Safety-Kleen Sys., Inc.*, No. C 07-0884 PJH, 2007 WL 2409200, at *11 (N.D. Cal. Aug. 21, 2007) (courts have found that "numerosity is satisfied if the class comprises 40 or more members"); *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 sufficient).

Plaintiffs rely on maps and other data provided by Defendants to assert that the class includes hundreds of landowners spread across five counties in Arizona.  Doc. 208 at 9-10.  Union Pacific does not dispute that the numerosity requirement is satisfied.

---

[2] This order cites to page numbers assigned at the top of each page by the Court's CM/ECF system, not to original page numbers.

[3] Plaintiffs request but do not discuss this subclass.  They provide no explanation for the role it would play in this case or why it is needed.  For ease of reference, the Court will refer throughout this order to "the class," but concludes that both the class and subclass fail to satisfy the requirements of Rule 23 for reasons stated in this order.

Doc. 242.  Kinder Morgan argues that many of the property owners included in the proposed class do not own property under the right-of-way granted in the General Right of Way Act of 1875 ("1875 Act") and cannot be included in the class, and that Plaintiffs therefore have failed to prove numerosity.  Doc. 243 at 27.

Although it is true that not all 505 miles of railroad right-of-way in Arizona were acquired through the 1875 Act, a review of the railroad's valuation maps, the Kinder Morgan's alignment sheets, and Geographic Information System ("GIS") data suggests that there are several hundred parcels of property adjacent to portions of the right-of-way acquired through the 1875 Act and containing the pipeline.  Doc. 280-32.  And although it also is true that many of these adjacent landowners may not own land under the right-of-way, as discussed more fully below, the Court concludes that Plaintiffs have provided enough evidence to show that it is more likely than not that class membership will exceed 40.  Numerosity is satisfied.

**B.    Commonality.**

Commonality exists if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "This does not mean merely that they have all suffered a violation of the same provision of the law[.]"  *Dukes*, 564 U.S. at 350.  Rather, "[t]heir claims must depend upon a common contention[.]"  *Id.*  "That common contention must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue which is central to the validity of the claims in one stroke."  *Id.*

Union Pacific does not argue that commonality is lacking.  Doc. 242.  Kinder Morgan argues that courts routinely find a lack of commonality in right-of-way cases due to significant legal and factual variations inherent in proving the extent of the railroads' rights and the corresponding rights of the putative class members.  Doc. 243 at 28.

Plaintiffs identify several questions they view as common.  Doc. 208 at 17-18. From Plaintiffs' list, the Court finds three common issues:

- whether the Railroad lacks sufficient property interests in the subsurface of its right-of-way under the 1875 Act to convey property rights in the subsurface beneath its right-of-way to the Pipeline;

- whether the commercial pipeline underneath the Railroad's right-of-way is a railroad purpose under the 1875 Act;

- whether Defendants knew or had reason to know that the Railroad did not possess a sufficient ownership interest in the subsurface underneath its right-of-way to grant easements or other property rights to the Pipeline;

*Id.* at 17.[4]

To satisfy Rule 23(a)(2), Plaintiffs need not show that most issues in the case are common, nor that common issues will predominate in the litigation (a requirement discussed later). The Supreme Court made clear in *Dukes* that even a single common question will do. 564 U.S. at 359. But mere pleading of a common question is not enough. There must be "significant proof" that the question is common and central to the claims of all class members. In this case, Plaintiffs have provided such proof. They have raised serious and substantial questions about whether Union Pacific acquired rights in the subsurface and whether Kinder Morgan's pipeline fulfills a railroad purpose. *See Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.*, 231 Cal. App. 4th 134

---

[4] Plaintiffs identify five other issues as being susceptible to proof on a class-wide basis. Doc. 208 at 17-18. The first two – whether the railroad attempted to grant easements in the subsurface to Kinder Morgan, and whether the railroad collected rent for the pipeline – are not disputed by Defendants, as confirmed during the hearing. Three other issues identified by Plaintiffs will require class-member-specific inquiries. (1) Whether Defendants acted with malice and reckless indifference to the rights of class members likely will require an individualized inquiry. As noted in this order, Defendants have presented evidence that they obtained easements from many class members and corresponded or spoke with others about the pipeline. What was said and done, and whether it shows malice on the part of Defendants, cannot be decided as a common question. (2) Whether Defendants concealed their actions will, as discussed below, require an inquiry into the communications Defendants had with particular class members regarding the pipeline and its operation. (3) Whether Defendants have been unjustly enriched will, under Arizona law and as discussed below, require an inquiry into whether the class members have been impoverished, which in turn will require a determination of whether they own the land beneath the right-of-way. Thus, of the eight "common issues" identified by Plaintiffs, the Court finds that fiver are either uncontested or will require inquiries regarding individual class members.

(Cal. Ct. App. 2014).   And they have presented evidence that representatives of Defendants raised questions between the 1950s and 1990s about whether the railroad could grant rights in land beneath the right-of-way.   Doc. 208 at 11 (quoting Exs. 3-6). Although it is true that factual variations among parcels and class members will arise, as discussed below, the Court finds that the three questions identified above are subject to proof that will apply to all class members.   Commonality is satisfied.

### C.   Typicality.

Typicality exists if "the claims or defenses of the representative parties are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs argue that named Plaintiffs James Paul Mooney and Lazy Coyote RV Village, LLC satisfy the typicality requirement because they own property adjacent to the railroad right-of-way where the pipeline is located, their claims arise from the same conduct of Defendants, and their claims are based on the same legal theories as the class claims.  Doc. 208 at 19.  Defendants argue that the named Plaintiffs are not typical for three reasons.

First, Defendants claim that Plaintiff Mooney has no injury and lacks standing because his property does not include land under the railroad right-of-way.  Defendants base this argument on relevant deeds for his property, which state that the boundary of the land runs "*to* the Westerly right-of-way line of the Southern Pacific Railroad; thence . . . *along* said Westerly right-of-way line."   Doc. 243 at 26 (emphasis added). Defendants refer to this as "cut-off" language, and assert that it means title to land under the right-of-way was not included in the grant to Mooney.  *Id.*

Arizona law does not agree.  In *Cottonwood/Verde Valley Chamber of Commerce, Inc. v. Cottonwood Prof'l Plaza I*, 901 P.2d 1151 (Ariz. Ct. App. 1994), the Arizona Court of Appeals confirmed Arizona's adoption of what the parties call "the centerline presumption."   Describing the presumption as "an almost universal rule governing transfers of lands abutting roadways," *Cottonwood* explains the presumption in these terms:

> "[I]f land abutting on a public way is conveyed by a description covering only the lot itself, nevertheless, the grantee takes title to the center line of the public way if the grantor owned the underlying fee, unless the contrary intention sufficiently appears from the granting instrument itself, or the circumstances surrounding the conveyance. This rule is one of construction, and applies in the absence at the time of the grant of any indication as to the grantor's intent in dealing with his interest in the public way."

*Id.* at 1154 (quoting *Torrey v. Pearce*, 373 P.2d 9, 12 (Ariz. 1962)).

*Cottonwood* specifically rejects Defendants' argument.  It holds that a deed conveying property "to" a right-of-way and then "along" the right-of-way actually conveys property to the centerline of the right-of-way.  *Id.* at 1153, 1155.  Defendants cite several cases from outside Arizona that reach the opposite conclusion, but the Court concludes that Arizona law should be applied to Mooney's Arizona property.  Defendants also argue that *Cottonwood* concerned a highway right-of-way, not a railroad right-of-way, but the Court sees no material difference between the two.  Indeed, as Plaintiffs note, the Arizona Constitution states that a railroad is a public highway.  Ariz. Const. art. XV § 10.  Because Defendants have presented no evidence of a "contrary intention" from Mooney's "granting instrument" or from "the circumstances surrounding the conveyance," *Cottonwood*, 901 P.2d at 1154, the Court concludes for purposes of this motion that Mooney owns land beneath the railroad easement where the pipeline is located.

Second, Union Pacific argues that Plaintiff Lazy Coyote has suffered no injury and lacks standing because Union Pacific acquired the parcel under the right-of-way adjoining Lazy Coyote's property in fee in 1915.  Union Pacific asserts that deeds from

1919 and 1930 contain language excluding the right-of-way, meaning that Lazy Coyote did not obtain an interest in the land under the right-of-way.  Doc. 243 at 26.  In support of these assertions, Union Pacific cites the expert report of Bernie Shaner.  *See* Doc. 242-2 at 11.  Mr. Shaner explains that he reached these conclusions after searching records in person in the Yuma County clerk's office.  *Id.*

Plaintiffs respond that Defendants have misread the title history for the Lazy Coyote property – that the 1915 deed was in fact to a different railroad.  Plaintiffs argue that Lazy Coyote owns land to the centerline of the railroad right-of-way.  In support, Plaintiffs cite the rebuttal report of their expert, John H. Rall.  Doc. 247 at 17.  With apologies to the reader, the Court quotes the relevant but lengthy language from the Rall opinion because it aptly illustrates the complexity of the title inquiry required for just one parcel of property, a point that will become important later in this order:

> i.  With regard to the Union Pacific Railroad Company Right-of-Way ("the Right-of-Way") adjacent to the Lazy Coyote property, the first document that is relevant to the ownership of the fee interest of the Right-of-Way is the Right of Way and Track Map ("the Map") listed in Schedule B of the Lazy Coyote chain of title. The Map contains numerous indications that the current Right-of-Way adjacent to the property owned by Lazy Coyote was originally established by the Southern Pacific Railroad Company as a railroad purpose easement pursuant to the General Railroad Right of Way Act of March 3, 1875 ("1875 Act"). Most notable among the various indications on the Map, is the statement within the Schedule of Property that identifies segments of the Right-of-Way as granted by the United States Government pursuant to the 1875 Act, and the following statement labeled "Note No 1": "Map of definite location . . . approved by the Secretary of the Interior December 19, 1879." The 1875 Act was a grant to railroads of a railroad purpose easement through public lands owned by the United States Government. Accordingly, the Map demonstrates that the United States Government was the fee simple owner of the land portrayed on the Map at the time the Southern Pacific Railroad Company established the Right-of-Way. The relevance of this, with regard to the ownership of the fee simple interest beneath the Right-of-Way, is that for the particular segments of the Right-of-Way established pursuant to the 1875 Act, the fee simple interest remained with the United States Government, while the Southern Pacific Railroad Company obtained an easement for railroad purposes. I have reviewed the Map and the boundaries of the property owned by Lazy Coyote, and I have concluded that the Lazy Coyote property is adjacent to a segment of the Right-of-Way established by the Southern Pacific Railroad Company pursuant to the 1875 Act.
>
> ii.  The next document in the Lazy Coyote chain of title that is relevant to the ownership of the fee interest beneath the Right-of-Way is the Patent from the United States of America to the Santa Fe Pacific Railroad Company, dated December 30, 1915, and recorded April 5, 1916 in Book

42 of Deeds, page 354. The Patent shows that as of the date of the Patent, the land conveyed was still among the public lands of the United States Government. Accordingly, the fee simple interest in the Right-of-Way was still in the possession of the United States Government, as of the date of December 30, 1915. I have reviewed the Patent, and it does not contain any indications that the United States sought to retain its ownership of the fee simple interest in the Right-of-Way. I have also considered the effect of the centerline presumption, which, from a railroad's perspective, results in the presumption that a fee simple interest to the centerline of an easement is presumed to be conveyed to the grantee of land adjacent to an easement such as the railroad purpose easement here. Thus, when the United States Government transferred the land to the Santa Fe Pacific Railroad Company, and failed to expressly reserve the fee simple interest in the Right-of-Way, it transferred the fee simple interest in land to Santa Fe Pacific Railroad Company to the centerline of the Southern Pacific Railroad Company railroad purpose easement. As is typical of such conveyances, no grantee in the chain subsequently reserved the fee, or even sought to transfer said land to a 3rd party (other than what is shown in the chain of title), thus indicating that each grantee sought to convey the fee to the land within the railroad right of way to the immediate subsequent grantee. Furthermore, I have reviewed the descriptions of the land conveyed by the Patent, and the land conveyed includes the property now owned by Lazy Coyote, across which the Union Pacific Railroad Company's current railroad purpose easement now runs.

iii.  I note that it is irrelevant that a railroad, the Santa Fe Pacific Railroad Company, was the first successor-in-interest to the land underneath another railroad (at the time, Southern Pacific Railroad Company) that is now owned by Lazy Coyote. It is afforded no special treatment simply by virtue of being a railroad company. It was simply like any other landowner.

iv.  The next document I reviewed was the Deed from the Santa Fe Pacific Railroad Company to Fen S. Hildreth, dated January 24, 1916, and recorded January 27, 1916 in Book 42 Deeds, page 359. I have reviewed the Hildreth Deed, and it does not contain any indications that the Santa Fe Pacific Railroad Company sought to retain its ownership of the fee simple interest under the Southern Pacific Railroad Company railroad purpose easement. Thus, when the Santa Fe Pacific Railroad Company transferred the land to Fen S. Hildreth, it also transferred the fee simple interest to Hildreth to the centerline under Southern Pacific Railroad Company railroad purpose easement. I have reviewed the descriptions of the land conveyed by the Hildreth Deed, and the land conveyed includes the property now owned by Lazy Coyote and across which the Union Pacific Railroad Company's current railroad purpose easement now runs.

v.  I have also examined all of the other instruments included in the Lazy Coyote chain of title. For the same reasons as my conclusions regarding the grant from the United States to the Santa Fe Pacific Railroad Company, and the subsequent grant from that railroad to Hildreth, I conclude that none of the intermediate conveyances in its chain of title indicate that any grantor in the chain expressly reserved land in the railroad purpose easement when conveying the parcel that adjoined the railroad purpose easement, and furthermore there is no conveyance from any grantor in Lazy Coyote's chain of title to a 3rd party relating to the fee underlying the railroad purpose easement (other than the conveyances in its

> chain of title). Consistent with how railroads would view these conveyances across the rail corridor, I conclude that all grantees in the chain of title obtained the fee simple interest to the centerline of the railroad purpose easement, up to the current day ownership of Lazy Coyote to the centerline of Union Pacific Railroad Company's railroad purpose easement.

Doc. 242-21 at 6-10.

In addition to this chain of title dispute about ownership of land under the right-of-way, Defendants argue that the chain of title for Lazy Coyote includes an express easement granted to Kinder Morgan's predecessor "to construct, maintain and operate a pipeline" on the Lazy Coyote property. Doc. 243 at 26. Plaintiffs respond that the easement concerns land outside the railroad right-of-way and is therefore irrelevant. Doc. 247 at 17. In support, Plaintiffs cite a copy of the deed that is largely illegible, without further explanation (*id.* (citing Doc. 243-10 at 33-34)), and the report of defense expert Lawrence Lacombe (*id.* (citing Doc. 242-1 at 11)). Lacombe opines, however, that "[a]lthough the easement may not refer specifically to allowing the pipeline in the land underlying the right-of-way, it is recorded, and evidences Hibbard's intent to grant an easement to the Pipeline. . . . Based on the documents I have reviewed, it appears that there is record notice that the Pipeline had a right to install a pipeline on Lazy Coyote's property." Doc. 242-1 at 11. Defendants have also produced pages from Lazy Coyote's title insurance policy showing a pipeline easement on its property. Doc. 243-14 at 139. Thus, even if the pipeline is not within the railroad right-of-way adjacent to Lazy Coyote's property, there appears to be a question as to whether Lazy Coyote's predecessor granted an easement for the pipeline and whether Lazy Coyote knew of that easement – knowledge that could support affirmative defenses.

These questions concerning the viability of Lazy Coyote's claim in this case are complex. They have produced sharp disagreements between the experts, and they are unique to Lazy Coyote's property. No other property owned by class members has precisely the same title or easement history. These unique issues suggest that Lazy Coyote does not satisfy the typicality requirement of Rule 23(a)(3). *See Ellis*, 657 F.3d at 984 ("[t]he named plaintiff did not satisfy Rule 23(a)'s typicality requirement because his

'unique background and factual situation require[d] him to prepare to meet defenses that [were] not typical of the defenses which may be raised against other members of the proposed class.'") (quoting *Hanon*, 976 F.2d at 508).

Third, Defendants argue that no landowner can be typical in a case like this. Each class member has a different title and easement history, different levels of notice of the pipeline, and different possible defenses. For example, Defendants presented evidence at the hearing that Kinder Morgan posted several signs with warnings about the pipeline next to the Mooney and Lazy Coyote properties. Doc. 258-1 at 6-9. Defendants also present evidence that Kinder Morgan sent written communications to Mooney in 2006, 2012, and 2014 regarding the pipeline (Doc. 243-13 at 74), and had oral communications with a person on the Lazy Coyote property in 2014 and 2015 regarding the pipeline, during which the person said he was aware of the pipeline (Doc. 243-24 at 153). Defendants also note that Mooney and the owners of Lazy Coyote do not live on their property, distinguishing them from some class members and raising questions about the level of their notice that will differ from class members who live on their property.

Several cases have found typicality lacking in similar cases involving landowners adjacent to a railroad right-of-way. *See, e.g.*, *Sustainable Forest, L.L.C. v. Qwest Commc'ns Int'l, Inc.*, No. CV 0:01-2935-CMC, 2005 WL 8146267, at *8 (D.S.C. Nov. 28, 2005) (in railroad right-of-way case, "the necessary differences between the proof of the various class members' claims so overwhelm the 'common' issues as to make it unlikely that any individual or group of individuals could have claims 'typical' of the class"); *Kirkman v. N. Carolina R. Co.*, 220 F.R.D. 49, 52-53 (M.D.N.C. 2004) ("The problem with Mr. Kirkman's position on commonality and typicality is that the Defendants' right to lay cable on a railroad right-of-way is only part of the equation. Other issues involved in this case include the nature of the Defendants' property interest in each of the disputed rights-of-way, the property interest of each potential class member in the right-of-way at the time of the alleged trespass, and the possibility of statute of limitations defenses for some class members. . . . By its nature as a property dispute, this

inquiry is necessarily an individual one."); *Nudell v. Burlington N. & Santa Fe Ry. Co.*, No. A3-01-41, 2002 WL 1543725, at *5 (D.N.D. July 11, 2002) ("The case would require resolution of several property-related issues:  the extent of the railroad's interest in the land at issue; the extent of each property owner's interest; whether the defendant's activities regarding laying of fiber optic cable exceeded the scope of the railroad's interest vis-a-vis that of the class members; whether any legal defenses exist to bar the claim of each class member, such as consent, acquiescence, or the statute of limitations; and, finally, assuming the claims are legitimate and proven, whether and how much damages are due.  The Court concludes that these decisions turn on so many individual questions that the claims of the named plaintiffs are not typical of the class."); *Chambers v. MCI Worldcom Network Serv., Inc.*, No. 00-C-348-C, 2001 WL 37114660, at *7 (W.D. Wis. Mar. 2, 2001) ("Even if the railroad is limited to railroad purposes for the entire length of the right-of-way, each class member must demonstrate that he or she possesses the underlying interest in the right-of-way.  The proposed class members obtained their property interests through such a large number of instrument that plaintiffs are not typical of the class.").

Having considered the typicality issues carefully, the Court concludes that neither of the named Plaintiffs can be said to be typical of the myriad property situations contained in the proposed class.  As noted, Lazy Coyote presents a complex and unique set of factual and legal issues related to its title and the grant of an easement on its property.  And even though the Court finds that Plaintiff Mooney's deed language does not deprive him of the centerline presumption, that presumption can be overcome when a "contrary intention sufficiently appears from the granting instrument itself, or [from] the circumstances surrounding the conveyance."  *Cottonwood*, 901 P.2d at 1154.  As illustrated by the complexities of Lazy Coyote's title and easement history, it is likely that many class members will face unique facts that call into question the applicability of the centerline presumption.  These unique facts will not be represented by the equally unique circumstances of Mooney or Lazy Coyote.  Moreover, Mooney and Lazy Coyote

have signs near their property regarding the pipeline, Mooney has received written communications from Kinder Morgan regarding the pipeline, and someone on the Lazy Coyote property has had oral communications.  Whether these forms of notice are sufficient to trigger defenses such as the statute of limitations or adverse possession will be questions unique to the named Plaintiffs, factually unlike the situations of other class members.  Thus, like the cases cited above and many others cited by Defendants that are not summarized here, the Court concludes that the claims of the many property owners in the proposed class are simply too varied to be represented by Mooney and Lazy Coyote. Typicality has not been met.

### D.   Adequacy of Representation.

The adequacy requirement is satisfied if the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  The Supreme Court has explained that this requirement "tends to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)) (brackets, quotation marks, and ellipses omitted).

The Court acknowledges the considerable experience and abilities of interim class counsel, and does not doubt the willingness of the named Plaintiffs to litigate this action. But the difficulties identified above and discussed below persuade the Court that the claims of the named Plaintiffs are not sufficiently typical of the class claims to represent the class adequately.  *See Neidhardt v. TCI Midcontinent LLC*, No. 1:09-CV-078, 2011 WL 1527030, at *6 (D.N.D. Apr. 20, 2011) (class representative not typical where "each individual class member will have questions regarding ownership of the land, the class member's knowledge of Midcontinent's activities, and whether the class member acquiesced or consented to the installation of fiber optic cable on his or her land");

*Kirkman*, 220 F.R.D. at 53 ("the conclusion that Mr. Kirkman's claims are not typical of those of the other class members leads naturally to a conclusion that he cannot adequately represent the claims of the proposed class"); *Chambers*, 2001 WL 37114660 at *7-8 (class representatives not adequate when "each parcel of the right-of-way and each adjoining parcel must be adjudicated on an individual basis").  Adequacy is not met.

## III.    Rule 23(b)(3) Predominance.

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks and citation omitted).  "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (quoting *Newberg*, § 4:50 (5th ed. 2012)).

"Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted).  Plaintiffs bring claims for trespass, quiet title, ejectment, inverse condemnation, unjust enrichment, recovery of rents, and an accounting.  Doc. 75.  They argue that a few central issues will dominate the litigation:

> the central issues in this litigation are whether Defendants had the right to install and operate a commercial pipeline underneath the Railroad's right-of-way obtained via the 1875 Act and Defendants' knowledge of these rights.  These questions will focus on Union Pacific's and Kinder Morgan's conduct vis-à-vis the property and pipeline at issue here, not the conduct of individual class members.

Doc. 208 at 22-23; *see also id.* at 33.

1    If Plaintiffs were correct that Defendants' actions would be the primary focus of
2    this litigation, the Court might conclude that Rule 23(b)(3) could be satisfied.   But a
3    careful review of Plaintiffs' claims makes clear that each claim results in liability only if
4    a class member owns the land underlying the railroad right-of-way.   On this question,
5    individual issues will overwhelm the litigation.   Additionally, each class member will be
6    subject to affirmative defenses that will turn on facts different from any other class
7    member, also producing a predominance of individual issues.

8    **A.**    **Proof of Individual Ownership.**

9    Each of the claims asserted in the complaint requires proof that the class members
10   own the subsurface beneath Union Pacific's right-of-way where the pipeline is located.
11   For example, a claim for trespass requires proof that the defendant has entered land in the
12   possession of the plaintiff.   *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 771
13   (D. Ariz. 2012) ("Arizona law imposes liability to another for trespass . . . if he
14   intentionally . . . enters land in the possession of the other, or causes a thing or a third
15   person to do so." (quotation marks and citations omitted)).   To prevail on their trespass
16   claim, therefore, members of the plaintiff class must prove that they are in possession of
17   the land beneath the right-of-way.   Proof of the common issues on which Plaintiffs focus
18   – for example, that Union Pacific had no right under the 1875 Act to lease the subsurface
19   to Kinder Morgan – will establish no liability for trespass unless the class members own
20   the subsurface.

21   The same is true for Plaintiffs' other theories of liability:  (1) Plaintiffs' claim for
22   declaratory relief asks the Court to determine Plaintiffs' and Defendants' "respective
23   rights" to the "subsurface beneath the Railroad's right-of-way."  Doc. 75, ¶ 82.  This will
24   require proof that class members own the subsurface.  (2) To prevail on their quiet title
25   claim, Plaintiffs must prove that "Plaintiffs and the Class are the fee title holders of the
26   land under the Railroad's right-of-way."   *Id.*, ¶ 114.   (3) To obtain the remedy of
27   ejectment, Plaintiffs must prove that they have "a valid and subsisting interest in real
28   property," namely, the subsurface.   A.R.S. § 12-1251.   (4) To prevail on a claim of

inverse condemnation, a plaintiff must prove that the defendant "constructed or developed a public improvement that substantially interfered with the plaintiff's property right." *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 217 P.3d 1220, 1230 (Ariz. Ct. App. 2009).   (5) A claim for unjust enrichment requires proof, among other elements, of an enrichment and an impoverishment.   *Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 991 (D. Ariz. 2011).   Even if Defendants have been enriched by installation and use of the pipeline, a class member will not have been impoverished unless the pipeline unlawfully used his or her land.   (6) Plaintiffs' claim for rents requires proof that they are "entitled" to recover rents for the use of their property.   A.R.S. § 12-1271.   A person who does not own or lawfully possess the subsurface is not entitled to demand rent for its use.   (7) Plaintiffs' claim for an accounting alleges:   "As the occupants of the dominant estates, Defendants owe Plaintiffs and the Class, who are owners of the servient estates, a duty to account for benefits that Defendants have obtained from the servient estates."   Doc. 75, ¶ 174.

Thus, each of Plaintiffs' claims requires that the class members own the land beneath the railroad right-of-way.   Plaintiffs cannot establish Defendants' liability on any claim without that proof.   As a result, Plaintiffs' argument that the trial will focus primarily on Defendants' conduct is simply not correct.   No member of the class will establish liability unless he or she owns the subsurface.   And given the myriad issues that arise in connection with proof of property ownership, it certainly cannot be said that proof that the two named Plaintiffs own the subsurface adjacent to their property will establish that all members of the class own the subsurface adjacent to their property. Individual proof of ownership will be required.   The case will devolve into a series of individual trials.

As the lengthy quotation cited above from Plaintiffs' expert, John H. Rall, demonstrates, the question of an individual class member's ownership of the right-of-way subsurface is not simple.   It can be very complex.   To reach his opinion that Lazy Coyote owned the subsurface, Mr. Rall (a) examined a decades-old Right of Way and Track Map

listed in Schedule B of Lazy Coyote's chain of title; (b) focused on Note 1 in the Schedule of Property on the map; (c) compared the map to the Lazy Coyote property boundaries; (d) examined a 1915 patent from the federal government to Santa Fe Pacific Railroad and considered it in light of the centerline presumption; (e) compared the patent to Lazy Coyote's property boundaries; (f) examined the deed from the Santa Fe Pacific Railroad Company to Fen S. Hildreth, dated January 24, 1916; (g) compared the Hildreth deed to Lazy Coyote's property boundaries; and (h) examined all of the other instruments included in the Lazy Coyote chain of title.  Doc. 242-21 at 6-10.  Even then, Mr. Rall reached an opinion with which Union Pacific's expert, Bernie Shaner, disagrees.  *See* Doc. 242-2 at 11 (concluding that Lazy Coyote owns no interest in the right-of-way subsurface).  Thus, to determine whether one property owner possesses rights in the subsurface, the factfinder would be required, at the least, to examine multiple documents and hear the conflicting testimony of two experts.  And this would not even address Defendants' claim that Lazy Coyote's title history also includes an express grant of an easement for the pipeline.  *See* Doc. 243-10 at 11 (expert opinion that "that Lazy Coyote's property is subject to an express easement from its predecessor in title, Leslie and Viola Hibbard (Hibbard), in favor of Southern Pacific Pipe Line, Inc. 'to construct, maintain and operate a pipeline,' appearing in Official Records in Book 139, Page 560, June 22, 1955").

Nor can the Court conclude that such complex issues will be limited to Lazy Coyote.  This case has had a number of different named Plaintiffs, all but two of whom have been dropped from the case.  *See* Docs. 1, 36, 60.  Defendants assert, without contradiction from Plaintiffs, that several of these former class representatives encountered title or easement problems after they joined the lawsuit.  These include (1) Katherine Tuchscherer, whose property was found to be subject to a 1955 easement expressly authorizing the pipeline in the right-of-way; (2) an entity called Penvesco, whose predecessor in title conveyed an interest in the right-of-way to the railroad 130 years ago; and (3) Scott Hurst, whose predecessors granted an interest in the right-of-way

to the railroad by a quitclaim deed and by an easement.  Doc. 243-10 at 11-13.  These property owners presumably would now be members of the class, and proof of their claims would require consideration of these parcel-specific issues.

In addition, Kinder Morgan provides evidence that it sought pipeline easements from adjoining landowners in the 1950s and 1980s.  Doc. 243-1.  These easements often expressly applied to property within the railroad's right-of-way, were signed by the property owner, and authorized the pipeline company "to construct, maintain, and operate" the pipeline, or words to that effect.  Doc. 243-2 at 4-23; Doc. 243-5 at 10.  Kinder Morgan asserts that it has found more than 100 such easements in the class area so far.  Doc. 243-1, ¶ 2.  It provides 13 examples of such easements as attachments to its memorandum opposing class certification.  Doc. 243-2.  Kinder Morgan further asserts without contradiction that locating these easements requires a property-by-property search.  Doc. 243 at 16.[5]

Finally, Defendants note that some claimed class members do not even own property abutting the right-of-way.  They assert, for example, that former named Plaintiff Katherine Tuchscherer's property is separated from the railroad right-of-way by a 200-foot-wide strip of property, that nothing in county assessor's map book suggests that the strip belongs to Tuchscherer, and that a title search would be required to determine who owns it.  Doc. 243-10 at 11-12.  The Court has seen no response to this point from Plaintiffs.

In short, the Court concludes that individual issues of property ownership and pipeline easements will predominate if the proposed class is certified.  The three common issues identified by Plaintiffs and acknowledged by the Court above will not be difficult to litigate.  Whether Union Pacific had the right to grant pipeline easements to Kinder

---

[5] Plaintiffs' response to this easement issue is not to contradict any of Kinder Morgan's evidence, but simply to assert that it will not generate enough individual issues to predominate.  Doc. 247 at 22 ("Given the multiple liability issues that are susceptible to common proof, the purported 'dual' easements cannot defeat a finding that common issues predominate.").  But if Kinder Morgan has found 100 such easements so far, this issue will require the examination of at least 100 class-members' claims.

Morgan and whether the pipeline serves a railroad purpose may well be resolved by summary judgment.  *See Union Pac. R.R.*, 231 Cal. App. 4th 134; *In re SFPP Right-of-Way Claims*, No. CV 15-7492, 2016 WL 3456985 (C.D. Cal. June 7, 2016).  If not, trial of this issue will not be difficult.  Whether Defendants knew or had reason to know that the Railroad did not possess a sufficient ownership interest in the subsurface will focus on evidence against Defendants and likely will not require extensive trial time.  By contrast, to establish Defendants' liability to the class members, proof of each member's right to the subsurface would be required, potentially involving an examination of the property's history back to 1875 as we saw above in Mr. Rall's report.  This problem is not solved by Arizona's centerline presumption.  That presumption does not apply if a "contrary intention sufficiently appears from the granting instrument itself, or [from] the circumstances surrounding the conveyance" – issues that necessarily are property-specific.  *Cottonwood*, 901 P.2d at 1154.  Nor can it resolve cases where previous property owners did not own the fee or have granted an easement or conveyed their interests to the pipeline.  Thus, on balance, the Court concludes that the relatively modest amount of trial time and effort required for the three common issues will be greatly outweighed by the time and evidence required to litigate the property-specific issues of individual class members.  Individual issues will predominate.

One final argument should be addressed.  Plaintiffs assert that they can establish class members' ownership of the subsurface beneath the right-of-way through the testimony of their mapping expert, Cindi A. R. Straup, and use of the centerline presumption.  Ms. Straup proposes to identify "parcels of land in Arizona adjacent to particular segments of the Union Pacific Railroad Company's railroad right of way beneath which one or more petroleum products pipelines owned and operated by Kinder Morgan are buried."  Doc. 242-18 at 4-5.  She thus will identify property "adjacent to" the right-of-way, not ownership of the subsurface, and Plaintiffs will rely on the centerline presumption to do the rest of the work – to establish that the landowner owns

the subsurface to the center of the right-of-way.  The Court is not persuaded that this method of proof will eliminate the individual issues discussed above.

Ms. Straup proposes to identify property owners adjacent to the right-of-way by digitizing and overlaying railroad valuation maps and Kinder Morgan alignment sheets on electronic maps from the GIS data produced by county assessor's offices, using a mapping program called ArcGIS.  Ms. Straup describes the process in this way:

> The process generally involves first identifying the Union Pacific right of way at issue, then identifying a master list of the landowner parcels that are adjacent to either side of the Union Pacific right of way.  Next, the particular segments of the right of way are labeled according to the particular source conveyance(s), e.g., 1875 Federal land grant, patent, condemnation, deed.  The location of the Kinder Morgan pipelines are then identified as lying on either side of the centerline of the right of way.  The landowner parcels that are adjacent to the same side of the right of way centerline where a Kinder Morgan pipeline is buried remain in the master list.  All other landowner parcels are filtered out, i.e., removed from the master list and the visual representation of parcels at issue.  The landowner parcels are then inputted and correlated with the applicable railroad segment and source conveyance information, and the Kinder Morgan pipeline location information.  The landowner parcels can be grouped by this information, and excluded from or included in the master list based on given criteria.

*Id.* at 5.

Defendants argue, with some force, that Ms. Straup's method does not produce reliable property boundaries.  They note that organizations such as the American Land Title Association and National Society of Professional Surveyors do not rely on GIS databases like those Ms. Straup obtained from the county assessor's offices.  Those organizations instead require on-site fieldwork to identify property boundaries.  Doc. 242 at 38-39 (quoting standards).  Defendants also note that the county assessor GIS data used by Ms. Straup is generated for property tax purposes, not as a record of property boundaries, and are not suitable for determining property boundaries.  Indeed, the Pima County website – which Ms. Straup used in her analysis – includes this disclaimer about its GIS data, referred to as "Products":

> Products are for illustration purposes only and are not suitable for site-specific decision making.  Products have not been prepared for and are not suitable for engineering, or surveying purposes.  Generally, Products do not

represent on-the-ground surveys and rather represent the approximate relative location of boundaries and features.

http://webcms.pima.gov/cms/One.aspx?portalId=169&pageId=33106 (visited 2/15/17). An "approximate relative location" does not appear to be a reliable basis on which to make liability determinations, particularly when more reliable property boundary information can be obtained through deed descriptions or on-site surveys. Defendants even note that one of the owners of named Plaintiff Lazy Coyote took issue during her deposition with the GIS representation of her property boundaries, asserting that it was incorrect. Doc. 243-14 at 85-86.

Defendants also present evidence that railroad valuation maps are not accurate indicators of property boundaries, "but rather set forth the general location of the boundaries of the right-of-way in relation to other features depicted on the map." Doc. 242-3 at 10. And the pipeline alignment sheets provide "only a general indicator of the location of the pipeline and do not identify specific location." *Id.* at 11.

The Court does not hold that Ms. Straup's methodology is so unreliable as to be inadmissible. The Court will address *Daubert* motions in the future, if necessary. But if Plaintiffs were permitted to present their case of class-member property ownership through Ms. Straup, Defendants would be permitted to contest that evidence with property-specific facts showing that her opinion on a particular parcel is incorrect. Individual issues would still predominate.

Nor can the Court conclude that the centerline presumption would do the rest of the work. The centerline presumption is just that – a presumption. It can be rebutted. Plaintiffs could attempt to rely on the presumption once adjacent properties are reliably identified, but Defendants would have the right to present contrary, parcel-specific information before their liability could be adjudged.

Other courts have denied class certification when proof similar to Plaintiffs' was proposed to prove property ownership by class members. *See*, *e.g.*, *Chambers*, 2001 WL 37114660, at *5 ("It is not sufficient that a person own land adjacent to the cable side of

1    the right-of-way: that person must establish also that he or she owns the underlying (or

2    superior) interest in the right-of-way."); *Melton ex rel. Dutton v. Carolina Power & Light*

3    *Co.*, 283 F.R.D. 280, 298-99 (D.S.C. 2012) ("title search is the only reliable way to

4    determine the relevant class members").

5         Plaintiffs argue that other courts have relied on rebuttable presumptions when

6    certifying classes.  They rely primarily on securities fraud cases where plaintiffs look to

7    the fraud-on-the-market theory for a presumption that investors relied on an efficient

8    securities market and its reflection of the defendant's misrepresentations and omissions,

9    rather than being required to prove that individual class member relied on the defendant's

10   actions.  As the Supreme Court has explained:

> This presumption springs from the very concept of market efficiency.  If a
> market is generally efficient in incorporating publicly available information
> into a security's market price, it is reasonable to presume that a particular
> public, material misrepresentation will be reflected in the security's price.
> Furthermore, it is reasonable to presume that most investors – knowing that
> they have little hope of outperforming the market in the long run based
> solely on their analysis of publicly available information – will rely on the
> security's market price as an unbiased assessment of the security's value in
> light of all public information.  Thus, courts may presume that investors
> trading in efficient markets indirectly rely on public, material
> misrepresentations through their reliance on the integrity of the price set by
> the market.

18   *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1192-93 (2013)

19   (quotation marks and citations omitted).

20        The Court does not view the centerline presumption in the same light as the fraud-

21   on-the-market theory.  The centerline presumption is, as Arizona courts have explained, a

22   "rule of construction" for interpreting property descriptions in deeds.  *Torrey*, 373 P.2d at

23   12; *Cottonwood*, 901 P.2d at 1154.  If a deed conveys property to the edge of a public

24   right-of-way, this rule of construction permits the court to construe the deed as also

25   conveying the subsurface of the right-of-way to the centerline, provided the "grantor

26   owned the underlying fee" and no "contrary intention sufficiently appears from the

27   granting instrument itself, or the circumstances surrounding the conveyance."  *Id.*  This

28   presumption is deed- and property-specific, and requires certain conditions to apply.  It

readily recognizes that the lack of a grantor's fee interest, language in the deed, or circumstances surrounding the conveyance may render the presumption inapplicable.

As discussed above, Defendants have presented enough evidence to convince the Court that such a property-specific inquiry would be required for many if not most of the properties in the class, even before easements or affirmative defenses are considered. The Court views Arizona's deed-specific presumption and the unique facts of this case as fundamentally different from the common sense reliance on efficient markets reflected in the fraud-on-the-market theory, which the undersigned has relied on to certify other class actions. *See Smilovits*, 295 F.R.D. at 437.[6]

## B.    Affirmative Defenses.

Defendants contend that several affirmative defenses will also result in individual issues predominating.  As Plaintiffs correctly note, the mere existence of affirmative defenses "does not compel a finding that individual issues predominate over common ones." *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975).  But neither can the Court ignore such defenses when making a predominance decision.  "[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims." *Dukes*, 564 U.S. at 367.  And "[t]he potentially individualized nature of affirmative defenses requires that courts consider such defenses in undertaking the predominance analysis." *Newberg*, § 4.55; *see also Myers v. Hertz Corp.*, 624 F.3d

---

[6] Plaintiffs also rely on *Walker v. Life Ins. Co. of the Sw.*, No. CV 10-9198 JVS RNBX, 2012 WL 7170602 (C.D. Cal. Nov. 9, 2012), where the district court relied on a well-recognized presumption of reliance in fraudulent omission securities fraud cases. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972) (securities fraud cases involving "primarily a failure to disclose" a material fact do not require "positive proof of reliance"). *Walker* recognized this presumption, and that the defendants could seek to rebut it, but ultimately did "not find that it detracts sufficiently from the predominance of the other common issues to warrant a refusal to certify the class." 2012 WL 7170602 at *15.  In other words, the judge made a case-specific determination that individual issues would not predominate.  The Court views this case as quite different from a securities fraud class action and reaches a different conclusion on predominance due to case-specific facts.

537, 551 (2d Cir. 2010) ("[T]here is no reason the district court ought to have given the 'defense' less weight in determining whether overall class certification would serve the goals of the predominance requirement.  [W]hile it is well established that the existence of a defense potentially implicating different class members differently does not necessarily defeat class certification, it is equally well established that courts must consider potential defenses in assessing the predominance requirement." (citations omitted)); S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* ("Gensler") at 533 (2016) ("The court must determine what impact, if any, the affirmative defenses will have on the mix of common versus individualized issues[.]").

Plaintiffs cite *Tibble v. Edison Int'l*, No. CV 07-5359 SVW AGRX, 2009 WL 6764541, at *9 (C.D. Cal. June 30, 2009), for the proposition that affirmative defenses should not be considered at the class certification stage.  Doc. 208.  But *Tibble* did not address affirmative defenses under the Rule 23(b)(3) predominance inquiry; it certified a class under Rule 23(b)(1), which includes no predominance requirement.  *Id.* at *7. *Tibble* denied the defendants' request to reduce the scope of the proposed class on the ground that the claims of some members were barred by the statute of limitations, noting that it was premature to decide statute limitations issues.  *Id.*  *Tibble* relied on *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 112 (N.D. Cal. 2008), another Rule 23(b)(1) case that confronted the same request to reduce the scope of the class, and reached the same conclusion.  *Id.*  The Court in this case, by contrast, is not reducing the scope of the class or deciding whether the affirmative defenses have merit.  The Court is addressing the preponderance requirement of Rule 23(b)(3) and identifying individual issues that will arise in the litigation.

Defendants assert several relevant affirmative defenses: statute of limitations, laches, adverse possession, and easement by prescription.  Doc. 242 at 26.  Defendants note, without contradiction, that the relevant limitations periods for the various claims vary between one and ten years.  *Id.* at 27.  Thus, all of the defenses are potentially in play in this class action, which dates back to 1983.  Defendants also note that each of

these defenses turns, at least in part, on when the class members or their property predecessors knew of the pipeline's presence in the subsurface.

On the statute of limitations defense, Arizona follows the "discovery rule."  Under that rule, a limitations period begins running when "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause."  *Perez v. First Am. Title Ins. Co.*, 2010 WL 1507012, at *3 (D. Ariz. April 14, 2010) (quotation marks and citation omitted).  To identify this point in time, a factfinder must apply a reasonable person standard to the particular circumstances of each individual plaintiff.  *Id*. at *4.  A look at each class member's situation is required.

Similar individual issues will arise from the notice-based defenses of adverse possession, prescriptive easement, and laches.  A party claiming title to real property by adverse possession – in this case, Defendants – "must show that his or her possession of the property was actual, visible, and continuous for at least ten years and that it was under a claim of right, hostile to the claims of others, and exclusive."  *Spaulding v. Pouliot*, 181 P.3d 243, 250 (Ariz. Ct. App. 2008).  Prescriptive easements share similar requirements: "a person must establish that the land in question has actually and visibly been used for ten years, that the use began and continued under a claim of right, and [that] the use was hostile to the title of the true owner of the land."  *Paxson v. Glovitz*, 50 P.3d 420, 424 (Ariz. Ct. App. 2002) (citations omitted).  Laches requires a lack of diligence on the part of the plaintiff and an injury or prejudice to the defendant due to such lack of diligence.  *Meyer v. Warner*, 448 P.2d 394, 397 (Ariz. 1968).  Thus, for each of these defenses, the factfinder will need to determine whether Defendants' possession of the right-of-way subsurface was apparent to the class member and whether the class member acted with reasonable diligence.

None of these defenses can be adjudicated through common evidence or facts.  When one class member learned of the pipeline or of her rights in the right-of-way will not determine when other class members acquired such knowledge.  And an individual property owner's knowledge will depend on a host of individual facts: what disclosures

of the easement and pipeline is found in her chain of title, what posting of the easement and pipeline is found on or near her property, what if anything she observed when Defendants performed installation or maintenance on the right-of-way adjacent to her property, whether there are above-surface pipeline structures on or near her property, whether she inhabited the property continuously or visited it only occasionally, and what other communications she had or information she acquired that might have informed her of the pipeline's presence.  What is more, some of these defenses apply against the land, not the landowner, *see Maycock v. Asilomar Dev., Inc.*, 88 P.3d 565, 568, 570-71 (Ariz. Ct. App. 2004), requiring an inquiry into what a class member's predecessors on the property knew and did.

The potential application of these defenses is not mere speculation as Plaintiffs contend.  Defendants have presented substantial evidence that the presence and purpose of the pipeline was disclosed in chains of title, mailings to landowners, phone calls with landowners, signs along the pipeline route, and public awareness campaigns.  *See, e.g.*, Docs. 242-10, 242-14, 243-2, 243-3, 243-4, 243-5, 243-13, 243-14.  Whether these forms of disclosure resulted in sufficient knowledge for a class member or its predecessor to be subject to a time-bar, adverse possession, or some other notice-based defense will require an individualized inquiry.  *See Melton*, 283 F.R.D. at 291-92 (presence of notice-based affirmative defenses destroyed predominance); *Kirkman*, 220 F.R.D. at 52-53 (denying certification in part based on individualized issues including statute of limitations defenses).

Plaintiffs contend that the statute of limitations defenses can be resolved through a common issue – Defendants' fraudulent concealment.  Plaintiffs argued in their motion that Defendants concealed "defects in their title."  Doc. 208 at 29.  In their reply, Plaintiffs narrowed the concealment argument somewhat:  "Plaintiffs do not focus on Defendants' concealment of the existence of the pipeline, but rather concealment that the pipeline did not serve a railroad purpose."  Doc. 247 at 20.  Plaintiffs assert that Defendants knew that the railroad had no right under the 1875 Act to grant easements in

the subsurface of the right-of way and yet had no policy of informing adjacent landowners that they may have an interest in the subsurface.  *Id.*

Plaintiffs present evidence to support their fraudulent concealment response to Defendants' statute of limitations defense.  Doc. 208 at 12-13.  But the Court is not convinced that fraudulent concealment will eliminate individual issues.  Arizona courts have explained that applying fraudulent concealment to a statute of limitations defense looks not only to actions of the defendant, but also to the knowledge and due diligence of the plaintiff:

> We think the true inquiry, however, is not whether the defendant has wrongfully concealed the existence of the cause of action itself, but whether the defendant has wrongfully concealed facts giving rise to the cause of action *in such a manner as to prevent a plaintiff from reasonably discovering a claim exists within the limitations period*.

*Hannah v. Gen. Motors Corp.*, No. CIV. 93-1368 PHX RCB, 1994 WL 924259, at *3 (D. Ariz. June 3, 1994) (emphasis added) (quoting *Anson v. Am. Motors Corp.*, 747 P.2d 581, 587 (Ariz. Ct. App. 1987)).  Determining whether Defendants' actions prevented a particular landowner from reasonably discovering her claim will require an examination of that landowner's circumstances.

Furthermore, even if Plaintiffs' fraudulent concealment argument helps resolve the statute of limitations and laches defenses without individual inquiries, Plaintiffs cite no authority to suggest that fraudulent concealment can bar a defense of adverse possession or easement by prescription.  Indeed, those defenses turn on the openness of Defendants' possession and use of the easement.  *See Spaulding*, 181 P.3d at 250 (possession must be "actual, visible, and continuous").  Defendants argue, with supporting evidence as noted above, that their possession and use of the easement for a pipeline was readily apparent to class members.  Determining the validity of these defenses will require an individualized inquiry.

Plaintiffs rely on the following statement from the Supreme Court: "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods*, 136 S. Ct. at 1045 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d ed. 2005)).  The key point in this statement, in the Court's view, is that "one or more of the central issues in the action are common to the class *and can be said to predominate*." *Id.* (emphasis added).  The Court does not find that the three common issues discussed above will predominate in this case.  Individual issues of ownership will overwhelm common issues on the threshold question of liability.  And the credible affirmative defenses raised by Defendants likely will require an additional individualized inquiry of class members.  This simply is not a case where a handful of individual issues do not predominate and can be resolved through other procedures.  Thus, the Court does not view the quoted statement from *Tyson Foods* as controlling.

### C.      Plaintiffs' Proposed Methods of Class-Wide Proof.

The parties vigorously disagree on whether Plaintiffs have presented viable methods for determining the location and nature of the class members' property through Ms. Straup, and a viable approach to damages through Plaintiffs' damages expert, C. David Matthews.  Both sides present plausible arguments supported by experts.  Parsing the expert reports and supporting documents would be a major undertaking that the Court finds unnecessary in light of the conclusions reached above.  Other than the discussion of Ms. Straup's approach set forth above, the Court will not address the parties' arguments on these issues, including Defendants' *Daubert* motions.

### D.      Defendant's Fail-Safe Argument.

Defendants argue that the proposed class is an invalid "fail-safe" class.  "A fail-safe class is improper because it shields the class members from the risk of an adverse judgment: either the class members win or they are not in the class and therefore not bound by the judgment."  Gensler at 522.  It is true that Plaintiffs' proposed class definition requires that members own land "underlying the railroad right-of-way." Doc. 208 at 8.  If a class member fails to prove such ownership, he or she will not be a

member of the class and therefore will not be bound by the judgment.   But this only underscores the more central problem in this case: the factfinder will need to determine whether individual class members own the right-of-way subsurface on a parcel-by-parcel basis.   Individual issues will predominate.   The Court finds this to be a more fundamental reason for denying class certification.

       **E.**       **Additional Arguments by Plaintiffs.**

       Plaintiffs make a few other arguments the Court must address.

       Plaintiffs rely heavily on *Koyle v. Level 3 Communications, Inc.*, No. CV-01-286-S-BLW, 2005 WL 8145917 (D. Id. 2005), which addressed a class action brought on behalf of property owners adjacent to a railroad right-of-way in which fiber optic cable had been laid.   The case was similar to this one, and the district court addressed whether individual issues would predominate.   The court's discussion is not detailed, but does note that the defendants made arguments similar to those made here:   that because "the ownership interest of each class member depends on the conveyance instrument held by that member – the member's interest cannot be determined unless the instrument is examined."   *Id.* at *2.   The district court found this argument "persuasive" and observed that whether this would result in a predominance of individual issues was "not an easy call."   *Id.* at *3.   The court decided to certify the class conditionally – something that was permitted under the then-current version of Rule 23(c)(1)(C) – subject to being revisited later.   *Id.* at *4.   When the Advisory Committee amended Rule 23 to eliminate such conditional certifications, it noted that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification[.]"   *See* Fed. R. Civ. P. 23 advisory committee's note (2003).

       The Court respects the decision in *Koyle*, but does not find it persuasive in this case.   As the Court has attempted to discuss in detail above, proof that each class member owns the subsurface of the right-of-way is an essential element of every claim asserted by Plaintiffs, and that element simply cannot be proved without a property-by-property inquiry.   In addition, the credible affirmative defenses applicable to this case will also

require inquiries unique to each property and property owner, and perhaps to their predecessors.  The Court sees nothing in *Koyle* that persuades it otherwise, and notes that a strong majority of cases addressing this issue have denied class certification.  *See, e.g.*, *Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) ("The case involves different conveyances by and to different parties made at different times over a period of more than a century . . . [with] laws moreover that have changed over the period . . . [and] whose application involves intricate legal and factual issues . . . making it unlikely that common issues predominate over individual-claim issues.") (internal quotations and citations omitted); *Melton*, 283 F.R.D. at 298-99 & n.18; *Regan v. Qwest Commc'ns Int'l, Inc.*, No. 2:01-766 WBS KJM, 2010 WL 3941471, at *8 (E.D. Cal. Oct. 5, 2010); *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 489 (C.D. Ill. 2007); *McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2006 WL 1476110, at *13 (N.D. Ill. May 23, 2006); *Sustainable Forest*, 2005 WL 8146267 at *10; *Corley v. Entergy Corp.*, 220 F.R.D. 478, 486-87 (E.D. Tex. 2004); *Kirkman*, 220 F.R.D. at 53; *Calhoun v. Kansas City S.*, No. 3-03CV1511, 2004 WL 7321942, at *3 (W.D. La. June 10, 2004); *Hebert v. Doyle Land Servs., Inc.*, No. 2:00 CV 1851, 2002 WL 35633227, at *2 (W.D. La. Mar. 5, 2002); *Nudell*, 2002 WL 1543725 at *6; *Oxford v. Williams Companies, Inc.*, 137 F. Supp. 2d 756, 764 (E.D. Tex. 2001); *Chambers*, 2001 WL 37114660 at *7; *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 640 (N.D. Okla. 2000); *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2004 WL 7321972, at *4 (Bankr. S.D.N.Y. Dec. 28, 2004); *Gipson v. Sprint Commc'ns Co.*, 81 P.3d 65, 71 (Okla. Civ. App. 2003).

Plaintiffs also rely heavily on the Ninth Circuit's recent decision in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), particularly its reference to "'the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns.'"  *Id.* at 1128 (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)).  Plaintiffs argue that the individual issues arising from proof of property ownership and affirmative defenses are merely manageability concerns.  Plaintiffs suggest that these individual issues can be managed in a way that

will result in only common issues at trial, with individual issues being addressed through a claims administration process or some other creative mechanism.

The Court does not agree.  Rule 23(b)(3) permits certification of a class only if common issues will predominate over individual issues.  That is a requirement.  The rule does not suggest that a court can avoid this requirement, or find it satisfied, merely by *assuming* that individual issues can be dealt with through some form of creative case management later.  Indeed, the Supreme Court has rejected efforts to eliminate individual issues through a "novel project" such as a "Trial by Formula."  *Dukes*, 564 U.S. at 367.  The Court does not mean to suggest that careful case management can never be used to avoid a predominance of individual issues.  Many cases have certified classes on the understanding that liability issues will be decided class-wide and member-specific damages will be resolved through a post-trial claims administration procedure.  But when individual issues will predominate on the threshold question of liability, as they will here, the Court cannot conceive of a workable and fair procedure that will avoid those individual issues.  Defendants are entitled to have a jury determine whether they are liable to individual property owners, and that liability will turn on whether a class member owns property underlying the right-of-way and whether the class member or her property are subject to affirmative defenses.  Those issues cannot be relegated to claims administration; they are central to each of Plaintiffs' claims.

Nor does the Court view the quoted statement from *ConAgra* – "the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns" – as standing for the proposition that predominating individual issues can be disregarded at class certification because creative case management techniques may be found to deal with them later.  The Ninth Circuit made the statement in the course of deciding that Rule 23 does not include an independent "administrative feasibility" requirement that obliges class representatives to present a method at the outset of the case for identifying every class member.  *Id*. at 1123-33.  The Court of Appeals was faced with a class action that consisted of persons who had purchased a

particular brand of cooking oil.  That every such person could not be identified with precision, the Ninth Circuit held, was not a basis for denying class certification.  Liability could be established on the basis of proof regarding the defendant's allegedly misleading advertising, and class members could present simple proof of purchase to a claims administrator after trial.  *Id.*  Such a case is a far cry from this one, where individual class members have claims for trespass, quiet title, or rents only if the history of their real estate ownership shows that they actually own the subsurface where the pipeline is located.

### F.    Rule 23(b)(3) Summary.

In summary, like the many cases cited above, the Court concludes that individual issues will predominate in this property rights case.  As a result, the class cannot be certified under Rule 23(b)(3).

### IV.   Superiority.

The superiority inquiry asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This requirement must be met in addition to the predominance of common issues – it is not an alternative means for certifying a Rule 23(b)(3) class.  *See id.* (requiring predominance "and" superiority).  Thus, if predominance of common issues is not present, superiority cannot save the day.  Because the Court finds that individual issues will predominate, it need not address superiority.

### V.    Rule 23(b)(2).

Rule 23(b)(2) permits certification of a class if the requirements of Rule 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs suggest in passing that the class can be certified under Rule 23(b)(2), but they devote only one footnote in their opening brief and one paragraph in their reply brief to the subject. Docs. 208 at 25 n.6, 247 at 28.

The Court finds a Rule 23(b)(2) class inappropriate for two reasons. First, the typicality and adequacy requirements of Rule 23(a) are not satisfied as noted above. Second, because Rule 23(b)(2) authorizes a class in which declaratory or injunctive relief is granted to "the class as a whole," courts have made clear that it does not apply when class members' claims are inherently individual. As the Supreme Court explained:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Dukes*, 564 U.S. at 360-61 (quotation marks and citations omitted). The Ninth Circuit has applied this guidance and rejected a Rule 23(b)(2) class that would result in individual damages awards. *Ellis*, 657 F.3d at 987. And yet that is essentially the relief Defendants seek here. They have proposed no class-wide injunction or declaratory relief that would accomplish their objectives. The Court concludes that Rule 23(b)(2) is not satisfied.

**VI.   Rule 23(c)(4) Issues Class.**

Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." The Ninth Circuit has recognized that "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule [23(c)(4)] authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Courts have held that issue-class certification is appropriate only if it would "materially advance the litigation." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015).

Plaintiffs ask the Court to certify an issue class consisting of the common issues identified above if the Court declines to certify the class under Rule 23(b)(2) or (3).  As already noted, the Court finds the following issues to be common:

- whether the Railroad lacks sufficient property interests in the subsurface of its right-of-way under the 1875 Act to convey property rights in the subsurface beneath its right-of-way to the Pipeline;

- whether the commercial pipeline underneath the Railroad's right-of-way is a railroad purpose under the 1875 Act;

- whether Defendants knew or had reason to know that the Railroad did not possess a sufficient ownership interest in the subsurface underneath its right-of-way to grant easements or other property rights to the Pipeline.

Doc. 208 at 17.

In deciding whether to certify an issue class addressing these or other issues, the Court is confronted with several questions that have not been addressed in the parties' briefing:

a.  If the Court certifies an issue class, precisely what issues would be certified?  The three set forth above?  Others?

b.  How would resolution of those issues materially advance the litigation? Relatedly, could a decision on these issues in a non-class-action case bind Defendants through collateral estoppel in a way that benefits adjacent property owners as much as their resolution in an issue class?

c.  What would be the proposed course of discovery, motion practice, and trial in such an issue-focused case?

d.  What would happen once the common issues are resolved?  Would this case end?  If not, what more would happen?

e.  If the Court considers certifying an issue class, the class presumably must satisfy the requirements of Rule 23(a).  Would the analysis of typicality and adequacy be different than when considering a (b)(2) or (b)(3) class? Would that analysis look only at the common issues to be addressed in the issue class?

f.  If an issue class is certified, what is Plaintiffs' proposed class definition?

g.  Would notice to class members be required?

1      The Court will require Plaintiffs to file a 12-page memorandum addressing these
2  issues by **March 3, 2017**, with Defendants to file a 12-page response by
3  **March 10, 2017**, and Plaintiffs to file an 8-page reply by **March 17, 2017**.  To allow
4  time for the parties to complete this briefing, the status conference set for
5  February 24, 2017 is rescheduled as a telephone conference on **March 22, 2017, at**
6  **3:00 p.m.** Arizona time.  The purpose of the conference will be to address a possible
7  issue class.

8  **VII.   Conclusion.**

9      The Court concludes that Plaintiffs have not carried their burden of showing by a
10  preponderance of the evidence that the requirements of Rule 23(a)(3), (a)(4), (b)(2), and
11  (b)(3) have been met.  The Court notes that it would reach the same conclusion even if a
12  standard less than a preponderance of the evidence were applied.  The Court is convinced
13  that the property-specific issues in this case prevent the named Plaintiffs from being
14  typical or adequate, and will result in individual issues predominating regardless of
15  creative case management.  The Court will require the additional briefing set forth above
16  before deciding whether an issue class is appropriate.

17      **IT IS ORDERED:**

18      1.      Plaintiffs' motion for class certification (Doc. 208) **is denied**.

19      2.      The Court will hold a telephone conference with the parties on
20              **March 22, 2017, at 3:00 p.m.** Arizona time.

21      3.      The parties' joint motion to stay (Doc. 259) is **denied** without prejudice to
22              the parties raising the stay issues during the March 22 conference.

23  Dated this 21st day of February, 2017.

_____
David G. Campbell
United States District Judge