**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alonzo Valenzuela, et al., | No. CV-15-01092-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Union Pacific Railroad Company, et al., | |
| Defendants. | |

The Court previously entered an order denying Plaintiffs' motion for class certification under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure. Doc. 260. Plaintiffs also argued in their motion that an issue class should be certified under Rule 23(c)(4). Doc. 208 at 8, 36-37.[1] The Court requested additional briefing on the proposed issue class (Doc. 260 at 34-35) and heard oral argument on March 22, 2017 (Docs. 273, 277). Because Plaintiffs have not met their burden of showing that an issue class is appropriate in this case, the Court will deny their request for issue class certification.

**I.  Background.**

Plaintiffs own real property adjacent to a railroad right-of-way operated by Defendant Union Pacific Railroad Company. Doc. 75, ¶¶ 1-3, 71. For several decades, Defendants SFPP, L.P. (formerly known as Santa Fe Pacific Pipelines, Inc. and Southern

---

[1] Page citations are to numbers placed at the top of each page by the Court's CM/ECF system and not the original page numbers.

Pacific Pipelines, Inc.), Kinder Morgan Operating L.P. "D," and Kinder Morgan G.P., Inc. (collectively, "Kinder Morgan") paid Union Pacific rent to operate a pipeline carrying petroleum products under the right-of-way. *Id.* ¶¶ 4-6, 25-26, 29. Plaintiffs, claiming the land under the right-of-way was neither Union Pacific's to rent nor Kinder Morgan's to use, brought this trespass action on behalf of a putative class of "all landowners who . . . own or have owned land in fee adjoining and underlying the railroad easement granted under the General Right of Way Act of 1875 under which the pipeline is located within the State of Arizona." *Id.* ¶¶ 29-30, 52, 70; Doc. 208 at 8.

The Court denied the motion for Rule 23(b) class certification on February 21, 2017, concluding that "the property-specific issues in this case prevent the named Plaintiffs from being typical or adequate, and will result in individual issues predominating." Doc. 260 at 35. The Court found the following issues to be common to all alleged class members: (1) whether the Railroad lacks sufficient property interests in the subsurface of its right-of-way under the 1875 Act to convey property rights in the subsurface to the Pipeline, (2) whether the commercial pipeline underneath the Railroad's right-of-way is a railroad purpose, and (3) whether Defendants knew or had reason to know that the Railroad did not possess a sufficient ownership interest in the subsurface underneath its right-of-way to grant easements or other property rights to the Pipeline. *Id.* at 34 (quoting Doc. 208 at 17). Although these issues were not sufficiently predominant to certify the class under Rule 23(b)(2) or (3), Plaintiffs argued that the Court should resolve these issues in an issue class under Rule 23(c)(4). Doc. 208 at 36-37. Because a possible issue class under Rule 23(c)(4) gave rise to matters the parties had not yet addressed, the Court requested additional briefing. Doc. 260 at 34-35.[2]

---

[2] On March 2, 2017, Plaintiffs moved to vacate the February 21 order denying the motion for certification, arguing that entry of a single order ruling on class certification under Rule 23(b)(2) and (3), and issue class certification under Rule 23(c)(4), would "permit a more efficient consolidated process for appeal" under Rule 23(f). Doc. 264 at 2. The Court granted the motion and withdrew the portion of the February 21 order denying class certification "[t]o avoid an unnecessary duplication of papers and effort before the Court of Appeals." Doc. 268. "The denial will be reinstated after the Court rules on the possible Rule 23(c)(4) class, thereby prompting one course of appeal from the Court's class certification decisions rather than two." *Id.*

## II. Legal Standard.

Plaintiffs bear the burden of establishing that the requirements of Rule 23(c)(4) have been met. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001). Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)[] and proceed with class treatment of these particular issues."). Neither the text of the rule nor the advisory committee notes offers guidance as to what makes an issue class appropriate.

Some courts have held that certification of an issue class is warranted where it will "materially advance" the disposition of the litigation. *See, e.g.*, *Fulghum v. Embarq Corp.*, No. 07-2602, 2011 WL 13615, at *2 (D. Kan. Jan. 4, 2011); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 169 (S.D.N.Y. 2003); *Emig v. Am. Tobacco Co., Inc.*, 184 F.R.D. 379, 395 (D. Kan. 1998) (quoting *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996)). This phrase, commonly associated with interlocutory appeals, *see* 42 U.S.C. § 1292(b), first appeared in the Rule 23(c)(4) context in *In re Tetracycline Cases*, 107 F.R.D. 719 (W.D. Mo. 1985), where the court declared without citation that the critical inquiry is whether the resolution of the common issues would "materially advance a disposition of the litigation as a whole." *Id.* at 727, 732. Years later, the Second Circuit quoted this language in a footnote. *See Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 167 n.12 (2d Cir. 2001) (discussing circuit split on issue of whether an issue class presupposes Rule 23(b)(3) predominance). A few other courts, including district courts in this Circuit, have used the "materially advances" language over the years. *See, e.g.*, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015); *Rahman v. Mott's LLP*, No. 13-3482, 2014 WL 6815779, at

*9 (N.D. Cal. Dec. 3, 2014) (citing *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013)); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002); *Harding*, 165 F.R.D. at 632.

Regardless of the provenance of the "materially advances" standard, its focus on whether issue class certification will move the litigation forward – saving money, time, and judicial resources in the process – is a sensible consideration. *See Valentino*, 97 F.3d at 1229 (evaluating "whether the adjudication of the certified issues would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency"). Even where courts have not used that specific language, the factors that have guided their decisions are consistent with the theme of moving the litigation forward efficiently. Some of these courts have considered whether the issue class will save time and reduce costs, *see, e.g.*, *id.*; *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982), as well as conserve judicial resources, *see, e.g.*, *Fulghum*, 2011 WL 13615, at *2; *In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D. Cal. 1985). Others have looked to the overall convenience of issue class certification. *See, e.g.*, *Soc'y for Individual Rights, Inc. v. Hampton*, 528 F.2d 905, 906 (9th Cir. 1975) (per curiam) (citing *Nix v. Grand Lodge, IAM*, 479 F.2d 382, 385 (5th Cir. 1973)). Conversely, an issue class is "not appropriate if, despite the presence of a common issue, certification would not make the case more manageable."[3] *MTBE*, 209 F.R.D. at 351 (quoting *Hamilton v. Accu-Tek*, 935 F. Supp. 1307, 1332 (E.D.N.Y. 1996)).

These considerations are closely related to the significance of the issue to be certified: the more significant the common issue, the more likely class-wide adjudication of that issue will advance the litigation. *See In re Copley Pharm., Inc.*, 158 F.R.D. 485, 491 (D. Wyo. 1994) (even where "significant issues" would "require individual

---

[3] Asking whether an issue class would make litigation more manageable and efficient comports with the policy underlying Rule 23(c)(4), which was "designed to give the court additional flexibility in handling class actions" so that an otherwise "unmanageable" putative class action can be adjudicated rather than "dismissed or reduced to a nonrepresentative proceeding." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1790 (3d ed. 2005).

determination," certification is appropriate if "equally significant common issues" could be resolved). A common issue is sufficiently significant if it relates to "important aspects of plaintiffs' claims" that form "the centerpiece" of the case, such that deciding the issue "will resolve the core of plaintiffs' claims for the classes as a whole." *See In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 610-11 (D. Kan. 2012).

**III. Discussion.**

After considering the parties' arguments carefully, the Court cannot conclude that issue class certification would significantly advance this litigation, nor have Plaintiffs shown that an issue class will save time and resources. Even if the disputed common issues were to be litigated on a class-wide basis, significant complexity would remain.

**A. An Issue Class Will Not Materially Advance the Litigation.**

In its previous order denying certification under Rule 23(b)(2) and (3), the Court identified three common issues: (1) whether Union Pacific had title to the subsurface under the 1875 Act that could be conveyed to Kinder Morgan, (2) whether Kinder Morgan's pipeline under Union Pacific's right-of-way is a "railroad purpose," and (3) whether Defendants knew or should have known that Union Pacific did not have title to the property. Doc. 260 at 4-5. The Court will confine its analysis to these three issues, and will not consider undisputed common issues as suggested by Plaintiffs. Doc. 269 at 5. Precisely because those issues are undisputed, resolving them in an issue class would do nothing to move the litigation forward. *See McDaniel v. Qwest Commc'ns Corp.*, 2006 WL 1476110, at \*17 (N.D. Ill. May 23, 2006).

Plaintiffs have failed to show that the three common issues are "the centerpiece of this case," and that their resolution would "materially advance the litigation." *Motor Fuel*, 279 F.R.D. at 610-11. Issue classes are most often used to "accurately and efficiently resolve the question of liability, while leaving the potentially difficult issue of individualized damage assessments for a later day." *See Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (quoting *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014) (affirming order certifying class on liability);

*see also In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (courts can use issue class certification to "separate the issue of liability from damages")); *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 526 (N.D. Cal. 2015) (only fact of injury and damages remained to be determined individually); *Campion v. Credit Bureau Servs., Inc.*, 206 F.R.D. 663, 676-78 (E.D. Wash. 2001) (certifying class as to common questions, despite individual causation and damages issues); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657-58 (C.D. Cal. 2000) (declining to decertify issue class that would resolve liability).[4]

Examples of cases where liability-resolving common issues have been certified under Rule 23(c)(4) include antitrust violations, *see, e.g.*, *Kamakahi*, 305 F.R.D. at 193 (certifying issue of Sherman Act violation); products liability, *see, e.g.*, *Copley Pharm.*, 158 F.R.D. at 492 ("[S]trict liability, negligence, negligence per se, breach of warranties, and the request for declaratory relief . . . may be tried to a single jury in a unified trial."); the materiality of misstatements in fraud cases, *see, e.g.*, *Endo v. Albertine*, 147 F.R.D. 164, 173 (N.D. Ill. 1993); *Activision*, 621 F. Supp. at 438; and constitutional or discrimination cases involving policies, *see, e.g.*, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012) (reversing denial of certification as to whether employer "violated the antidiscrimination statutes"); *Soc'y for Individual Rights*, 528 F.2d at 906 (9th Cir. 1975) (affirming certification of issue class for injunctive relief purposes).

Initially, there was some uncertainty as to how Plaintiffs planned to resolve this litigation following completion of any issue class. Plaintiffs' briefs suggested that an issue-class verdict in their favor would be followed by proceedings in this Court that would allow individual class members to present proof of their property ownership and damages, and would afford Defendants an opportunity to oppose such evidence and assert affirmative defenses. Docs. 269 at 10, 272 at 4. During oral argument, however,

---

[4] Plaintiffs are correct that Rule 23(c)(4) does not suggest that an issue class is appropriate "only if it fully resolves liability issues for all class members," Doc. 272 at 2-3. *See Kamakahi*, 305 F.R.D. at 182 n.14. As a practical matter, however, where issue classes are certified at all, the common issues tend to be critical to the determination of liability.

Plaintiffs agreed that such a proceeding could not occur because class members would not be parties before this Court once the issue class was resolved. Doc. 277 at 20-22. There would be no continuing class action that could resolve their claims (certification under Rule 23(b)(2) and (3) having been denied), and they would not be named Plaintiffs who could pursue this case to a conclusion on a non-class basis. At best, individual class members would have in hand an issue-class judgment they could try to use to their advantage in individual lawsuits they file against Defendants. Even if relitigation of the three common issues was not necessary in these individual lawsuits, however, the parties would still need to litigate the rest of the case, an undertaking that the Court finds would not be made materially easier by the issue class.

Resolution of the three common issues would not establish Defendants' liability to any Plaintiff. The Court's previous order demonstrated that every claim Plaintiffs assert requires proof that an individual plaintiff owns or owned the land beneath the railroad right-of-way. Doc. 260 at 15-16. Proving such ownership will be a substantial undertaking. It will require a detailed examination of the title and ownership history of each class member's property back to 1875, most likely by conflicting experts. *Id.* at 16-17. It will require an examination of whether previous owners of the property received the land in fee, and whether they granted easements to Kinder Morgan or its predecessors, as apparently happened in many cases. *Id.* at 17-18. And in some cases, Defendants argue that class members do not even own property abutting the right-of-way, their property being separated from the right-of-way by a narrow strip of land they do not own. *Id.* at 18. Issues like these would need to be resolved in every individual case, even if the three common issues had been decided class-wide.

> The Court provided this summary in its previous order:
> The three common issues identified by Plaintiffs and acknowledged by the Court above will not be difficult to litigate. Whether Union Pacific had the right to grant pipeline easements to Kinder Morgan and whether the pipeline serves a railroad purpose may well be resolved by summary judgment. If not, trial of this issue will not be difficult. Whether Defendants knew or had reason to know that the Railroad did not possess a sufficient ownership interest in the subsurface will focus on evidence

> against Defendants and likely will not require extensive trial time. By contrast, to establish Defendants' liability to the class members, proof of each member's right to the subsurface would be required, potentially involving an examination of the property's history back to 1875 as we saw above in [an expert's] report. This problem is not solved by Arizona's centerline presumption. That presumption does not apply if a "contrary intention sufficiently appears from the granting instrument itself, or [from] the circumstances surrounding the conveyance" – issues that necessarily are property-specific. Nor can it resolve cases where previous property owners did not own the fee or have granted an easement or conveyed their interests to the pipeline. Thus, on balance, the Court concludes that the relatively modest amount of trial time and effort required for the three common issues will be greatly outweighed by the time and evidence required to litigate the property-specific issues of individual class members. Individual issues will predominate.

*Id.* at 18-19 (citations omitted).

These realities are relevant to an issue class. The Court concludes, as have many others, that certification of an issue class would not materially advance the resolution of this litigation. *See Soc'y for Individual Rights*, 528 F.2d at 906-07 (where "the issue of liability would have to be separately litigated for each person who claimed to be a class member . . . [j]udgment in favor of the class would be of little practical value in resolving these individual questions"); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008) ("[G]iven the number of questions that would remain for individual adjudication, issue certification would not 'reduce the range of issues in dispute and promote judicial economy.'" (quoting *Robinson*, 267 F.3d at 168)); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-1967, 2011 WL 6740338, at *9 (W.D. Mo. Dec. 22, 2011) ("[K]ey questions regarding liability . . . will be left unanswered even after a trial on the [common] issues."); *Benner*, 214 F.R.D. at 169 ("The sheer number of issues left for the individual stage of this litigation is emblematic of the futility of issue certification.").

Not surprisingly, it appears that issue classes are rarely certified in cases involving real property rights. Plaintiffs cite no property-rights cases where an issue class has been certified, while Union Pacific notes that courts have declined to certify issues classes in

similar cases involving fiber-optic cables under railroad rights-of-way. Doc. 270 at 4-5 (citing, e.g., *Hebert v. Doyle Land Servs., Inc.*, No. 00-1851, 2002 WL 35633227, at *2 (W.D. La. Mar. 5, 2002) ("[T]he real issues in contest . . . will require individualized consideration. The issue of ownership will involve questions relative to both the interests of the railroads and the interests of each of the putative class members."), *report and recommendation adopted*, 2002 WL 35633226 (W.D. La. Apr. 24, 2002)).

Nor would the common issue of Defendants' knowledge move the litigation forward significantly. Even if a jury in an issue class were to decide that Defendants knew or should have known that Union Pacific did not have title to the subsurface, resolution of this issue would not save significant time and effort in individual cases. Plaintiffs wanting to use such knowledge as a basis for seeking punitive damages would want the jury to hear the evidence of Defendants' actual knowledge, not simply the fact that a jury in another case found in their favor. And if individual plaintiffs were to use Defendants' knowledge as a basis for equitable tolling of the statute of limitations or fraudulent concealment, the nature, timing, and extent of Defendants' knowledge would likely be relevant, again requiring the jury to hear specific evidence of knowledge.

What is more, affirmative defenses would need to be litigated in individual cases before liability could be assessed. As the Court previously noted, defenses such as laches, the statute of limitations, prescriptive easements, and adverse possession will require property-specific inquiries and potentially much evidence regarding when a class member or her predecessor was on notice of the pipeline beneath the railroad easement. Doc. 260 at 23-27. This is true regardless of how a jury might resolve the three common issues in a class trial.

In short, the Court finds that although certification of an issue class could resolve three common issues, resolution of those issues would not materially advance the resolution of the overall dispute between the parties. Individual class members would still need to file lawsuits against Defendants. Each lawsuit would require litigation of complex issues regarding property ownership back to 1875, historical easements or other

title issues, affirmative defenses based on the passage of time and the level of notice to an individual class member or her predecessors, and damages. Practically speaking, full-blown litigation would continue between each class member and Defendants, and Plaintiffs have not shown that class-wide adjudication of the three common issues would make this litigation significantly more efficient or less complicated.[5]

## B. Other Concerns.

Two other concerns reinforce the Court's conclusion that Plaintiffs have not established that issue class certification would make the litigation more manageable.

### 1. Class Definition.

Plaintiffs initially defined the class as "all landowners who own or have owned land in fee adjoining *and underlying* the railroad easement under which the pipeline is located within the State of Arizona." Doc. 75 ¶ 71 (emphasis added). In their memorandum addressing issue certification, Plaintiffs define the proposed issue class as "[a]ll landowners who from January 1, 1983 to the date of class certification, own or have owned land adjoining the railroad right-of-way granted under the general Right of Way Act of 1875, on the same side of the centerline of the right-of-way under which the pipeline is located in the State of Arizona." Doc. 269 at 13.

Plaintiffs' proposed issue class definition differs from the definition originally proposed in the complaint, most significantly in that class membership does not require ownership of the subsurface beneath the right-of-way. Defendants argue that this alteration is impermissible, as the class definition cannot depart from the class identified in the complaint. While "[t]he Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it," *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009), "a narrower version of the class definition presented in the [complaint] . . . is allowable" at the certification stage,

---

[5] Because the Court declines to certify the requested issue class and these proceedings need not be bifurcated, it need not resolve the Seventh Amendment issues Defendants raise. *See* Docs. 270 at 10-11, 271 at 12; *see also In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (discussing Seventh Amendment implications where claims are severed and tried in separate proceedings).

- 10 -

*Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015). Plaintiffs' new class definition, however, is not narrower than the class definition included in the complaint.

### 2. Class Notice.

Plaintiffs' proposed issue class definition likely would give rise to a number of factual disputes, such as whether a particular parcel is adjacent to the railroad, which railroad rights-of-way were granted by the 1875 Act, and whether the pipeline is on one side or the other of the tracks in a particular location. These and other factual issues would affect who should receive class notice. Neither the briefing nor the discussion during the hearing clarified whether these factual issues must be resolved prior to notice, or whether notice should be sent to an overly broad group, leaving the question of the recipients' class membership to be answered later.

But the Court is even more concerned that past property owners who are part of the proposed class would not receive proper notice. Plaintiffs suggest notice by publication would be sufficient, implying that it would be unnecessary to search property records in order to locate these class members. *See* Doc. 269 at 13. The Court has serious doubts that notice by publication is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B). To rely solely on notice by publication seems questionable where, as here, past property owners can be identified through title searches. Granted, a title search for every property in the class could prove prohibitively expensive, but it would have to be done at some time, whether in the class or individual cases. The need to address such property-specific issues, particularly with respect to something as consequential as class notice, only points up the difficulty of treating property claims such as this on a class basis, as previously noted by the Court. *See* Doc. 260. These notice concerns give the Court considerable pause regarding the advisability of certifying an issue class. *Valentino*, 97 F.3d at 1234 (certification inappropriate where, inter alia, "notice may be problematic" and raised "serious due

process concerns"). Unlike the Seventh Circuit in *McReynolds* – a case relied on by Plaintiffs – the Court has little "trouble seeing the downside of . . . limited class action treatment . . . in this case." 672 F.3d at 492.

### C. Alternatives to an Issue Class.

The Court also can envision at least two ways in which the common issues might be resolved efficiently.

First, resolution of these issues in favor of one class member in an individual lawsuit might give rise to collateral estoppel against Defendants. Not only do Plaintiffs and Kinder Morgan agree that "collateral estoppel could bind Defendants," Doc. 271 at 11, Kinder Morgan states that it will be making this argument *for* the individual plaintiffs, Doc. 277 at 28-29. And even Union Pacific concedes that a decision on these issues in an individual case would be "persuasive authority in subsequent cases." Doc. 270 at 8.

Second, Defendants note that two of the common issues are currently pending before the Ninth Circuit on appeal from nearly-identical litigation filed in the Central District of California. Docs. 270 at 7-8, 271 at 7 n.1, 11. Plaintiffs do not disagree. Assuming the Court of Appeals decides these issues, Defendants may be effectively bound without the need for an issue class trial with its attendant complexities.

### VII. Conclusion.

The party seeking certification of an issue class under Rule 23(c)(4) has the burden of demonstrating why the issue class is "appropriate" – how litigating certain issues on a class-wide basis rather than individually will move the litigation forward in a significant and efficient manner. *See Hawkins*, 251 F.3d at 1238. Because Plaintiffs have not done so, certification of an issue class under Rule 23(c)(4) will be denied.

**IT IS ORDERED:**

1. Plaintiffs' motion for certification of an issue class under Rule 23(c)(4) (Docs. 208, 269) **is denied**.

2. Plaintiffs' motion for class certification under Rule 23(b)(2) and (3) (Doc. 208) **is denied** for reasons stated in Doc. 260.
3. A status conference will be held on **May 17, 2017 at 3:00 p.m.** to discuss how the remainder of this case should be resolved.

Dated this 19th day of April, 2017.

_____
David G. Campbell
United States District Judge