1  Kathryn Honecker (AZ Bar No. 020849)
2  ROSE LAW GROUP PC
   7144 E Stetson Drive, Suite 300
3  Scottsdale, Arizona 85251
   Phone: (480) 291-0744
4  Fax: (480) 505-3925
5  khonecker@roselawgroup.com

6  Attorney for Plaintiffs
   (Additional Counsel on Signature Page)
7
                  **IN THE UNITED STATES DISTRICT COURT**
8                    **FOR THE DISTRICT OF ARIZONA**

9

| | |
|---|---|
| 10  Gordon H. Earhart, trustee of the Earhart Family Revocable Trust, Rudy T. Escalante and Laurie B. Escalante, Patricia Miller and Jeffrey Miller, Linda Martinez, Scott Hurst, Mark Blosser, Janie Hernandez, Petra R. Lopez, and Raymond Vice and Barbara Vice, | |
| 14  Plaintiffs, | LEAD CASE NO. 2:15-cv-01092-DGC (Consolidated with Case No. 2:17-cv-03099-SPL) |
| 16  v. | **AMENDED COMPLAINT** |
| 17  Union Pacific Railroad Company, successor to Southern Pacific Transportation Company, SFPP, L.P. (formerly known as Santa Fe Pacific Pipelines, Inc., formerly known as Southern Pacific Pipelines, Inc.), Kinder Morgan Operating L.P. "D", and Kinder Morgan G.P., Inc., | **JURY TRIAL DEMANDED** |
| 23  Defendants. | |

24       Plaintiffs Gordon H. Earhart, trustee of the Earhart Family Revocable Trust, Rudy

25  T. Escalante and Laurie B. Escalante, Patricia Miller and Jeffrey Miller, Linda Martinez,

26  Scott Hurst, Mark Blosser, Janie Hernandez, Petra R. Lopez, and Raymond Vice and

27  Barbara Vice (collectively "Plaintiffs"), allege the following against Union Pacific

28  Railroad Company (formerly known as Southern Pacific Transportation Company) (the

"Railroad") and SFPP, L.P. (formerly known as Santa Fe Pacific Pipelines, Inc. and Southern Pacific Pipelines, Inc.), Kinder Morgan Operating L.P. "D", and Kinder Morgan G.P., Inc. (collectively, the "Pipeline") (the Pipeline and Railroad collectively are referred to herein as "Defendants"), based on personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## PARTIES

1.     Plaintiff Gordon H. Earhart, trustee of the Earhart Family Revocable Trust is the fee owner of land in Pima County, Arizona that includes tax parcel number 21728001K, which is adjacent to the railroad right-of-way.

2.     Plaintiffs Rudy T. Escalante and Laurie B. Escalante are the fee owners of land in Pinal County, Arizona that includes tax parcel number 40215032A, which is adjacent to the railroad right-of-way.

3.     Plaintiffs Patricia Miller and Jeffrey Miller are the fee owners of land in Pima County, Arizona that includes tax parcel number 221360070, which is adjacent to the railroad right-of-way.

4.     Plaintiff Linda Martinez is the fee owner of land in Pinal County, Arizona that includes tax parcel number 405020500, which is adjacent to the railroad right-of-way.

5.     Plaintiff Scott Hurst is the fee owner of land in Maricopa County, Arizona that includes tax parcel number 50444020S, which is adjacent to the railroad right-of-way.

6.     Plaintiff Mark Blosser is the fee owner of land in Pinal County, Arizona that includes tax parcel number 41002001A, which is adjacent to the railroad right-of-way.

7.     Plaintiff Janie Hernandez is the fee owner of land in Pinal County, Arizona that includes tax parcel number 405020560, which is adjacent to the railroad right-of-way.

8.     Plaintiff Petra R. Lopez is the fee owner of land in Maricopa County, Arizona that includes tax parcel number 50444019C, which is adjacent to the railroad right-of-way.

9.     Plaintiffs Raymond Vice and Barbara Vice are the fee owners of land in Pinal County, Arizona that includes tax parcel number 405032910, which is adjacent to the railroad right-of-way.

10.    Defendant Union Pacific Railroad Company, successor to Southern Pacific Transportation Company, is a Delaware Corporation with its principal place of business in Omaha, Nebraska (the "Railroad").

11.    Defendant SFPP, L.P. is a Delaware limited partnership with its principal place of business in the city of Orange in Orange County, California. Upon information and belief, the partners of SFPP are citizens of the States of Texas and/or Delaware. Defendant SFPP, LP acquired Santa Fe Pacific Pipelines, Inc., previously known as Southern Pacific Pipelines, Inc. Defendant SFPP, L.P. is a subsidiary of Kinder Morgan Energy Partners L.P., which is a subsidiary of Kinder Morgan, Inc.

12.    Defendant Kinder Morgan Operating L.P. "D" is a Delaware limited partnership with its principal place of business in Houston, Texas. Upon information and belief, the partners of Kinder Morgan "D" are citizens of the States of Texas and/or Delaware. Defendant Kinder Morgan Operating L.P. "D" is a subsidiary of Kinder Morgan, Inc.

13.    Defendant Kinder Morgan G.P., Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Similarly, Defendant Kinder Morgan G.P., Inc. is a subsidiary of Kinder Morgan, Inc.

14.    Defendants SFPP, L.P., Kinder Morgan Operating L.P. "D", and Kinder Morgan G.P., Inc. are collectively referred to herein as the "Pipeline."

## JURISDICTION AND VENUE

15.    Subject matter jurisdiction exists in this case pursuant to federal question jurisdiction, 28 U.S.C. § 1331, because a substantial federal question exists as to

Plaintiffs' claims including the General Right-of-Way Act of 1875, 18 Stat. 482, 43 U.S.C. § 934, *et. seq.* ("1875 Act").

16.     Additionally or alternatively, jurisdiction is proper pursuant to 28 U.S.C. § 1332(a), because this dispute is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendants SFPP, L.P., Kinder Morgan Operating L.P. "D", and Kinder Morgan G.P., Inc. because they purposefully avail themselves of the benefits of doing business in the State of Arizona by maintaining a pipeline throughout Arizona, including in this District. Additionally, this Court has personal jurisdiction over Defendant Union Pacific Railroad Company because it purposefully avails itself of the benefits of doing business in the State of Arizona by maintaining a railroad throughout Arizona, including in this District.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). Defendants do business in the State of Arizona and in this District and are subject to personal jurisdiction in the State of Arizona, and therefore reside in this District for venue purposes pursuant to 28 U.S.C. § 1391(c)(2). Additionally, a substantial part of the events giving rise to the claims Plaintiffs assert in this lawsuit occurred in this District, because the real property that forms the subject matter of this action is located in the State of Arizona and the conduct complained of herein occurred, in whole or in part, within the State of Arizona and/or was directed at residents and citizens of the State of Arizona.

## FACTUAL ALLEGATIONS

### A. Historical Context of the Railroad's Right-of-Way

19.     As America spread west in the first half of the 19th century, its frontier expanded from the Mississippi River to the coast of California and the Oregon Territory. Access to the great expanses of the prairies and mountains, as well as to the states and territories on the Pacific Coast, was necessary.

20.     Beginning in approximately 1850, as described by the United States Supreme Court, Congress embarked upon a policy of subsidizing railroad construction by

AMENDED COMPLAINT

paying for it with "lavish grants from the public domain."

21.    With the onset of the Civil War, the need for a transcontinental railroad took on particular urgency and, starting in 1862, the government lavished sweeping land grants on the railroads in order to build several transcontinental railroads.

22.    President Abraham Lincoln signed the Pacific Railroad Act on July 1, 1862, and he and his successors signed subsequent acts. These initial Pre-1871 Acts granted vast areas of land to several transcontinental railroads, encouraging them to build tracks across the nation.

23.    After the Civil War, Congress passed the General Right-of-Way Act of 1875. Like the earlier railroad acts, this legislation provided the railroads with a right-of-way through public lands for the construction of a railroad; however, the 1875 Act made it clear that it was providing the railroads with "mere easements" over the land on which they could lay their tracks and run their trains. The railroads were given no fee interest in the property itself; rather, title remained in the federal government.

24.    The United States government owned the subsurface of the railroad right-of-way at the time of the 1875 Act conveying railroad rights-of-way through the public lands.

25.    Under the 1875 Congressional Act, the railroads were granted only a surface easement, and the right to use the subsurface only as necessary to support the surface operation of the railroad. The Railroad's use and occupation of the surface created no right of possession in the subsurface.

26.    Plaintiffs are successors in title to what were once public lands through which the Railroad rights-of-way now pass.

**B. The Railroad Leased, But Did Not Own, the Subsurface of Its Right-of-Way.**

27.    In the 1950s, the Railroad's predecessor began constructing oil and gas pipelines to run below ground, beneath the Railroad's right-of-way in these Western states, including within the State of Arizona.

28.    The Pipeline operates a pipeline system through the Western and Southwestern United States that is more than 3,000 miles in length, including approximately 505 miles within the State of Arizona. The system distributes refined petroleum products (principally diesel, all grades of gasoline, and jet fuel).

29.    More than half the length of the pipeline is located beneath the Railroad's surface easement, unlawfully utilizing the subsurface rights of the actual fee owners.

30.    In the mid-1950's, when construction of the Pipeline began, the Railroad's predecessor and the predecessor of the Pipeline were sister subsidiaries of Southern Pacific Corporation.

31.    The Railroad claimed for itself or purported to grant the right to construct an underground pipeline within the subsurface underlying the Railroad's right-of-way. Although serious doubts existed as to the Railroad's rights to the subsurface beneath its right-of-way, the two sister companies entered into master agreements in 1955 and 1956 wherein the Railroad rented portions of the subsurface under its right-of-way to the Pipeline.

32.    The sister companies built pipelines underneath the Railroad's rights-of-way irrespective of what ownership interest the Railroad had actually acquired in this subsurface real property pursuant to the 1875 Act and irrespective of the fact that the Railroad only acquired a surface easement for its railroad purposes and has and had no legal rights whatsoever to occupy the subsurface or to grant subsurface easements for purposes of constructing or operating the pipeline.

33.    The sister companies chose to proceed under this arrangement despite the United States Supreme Court's decision, in 1942, holding that railroads merely had an easement over the surface of the land, and that title to the subsurface remained in the federal government (or its grantee, if any) under the 1875 Act.

34.    Recognizing the limitations of the 1875 Act, on several occasions, counsel for the Railroad questioned whether it had sufficient property rights to grant easements to the Pipeline.

1   35.   In fact, in 1956, an in-house attorney for the Railroad's predecessor sent a

2   letter to the Pipeline explaining that the Railroad appeared to have the right to grant

3   pipeline easements in the subsurface under rights-of-way it obtained via the pre-1871

4   Acts. But since the 1875 Act provided only an easement, they would have to obtain

5   consent from the adjoining landowner in order to use the subsurface for a pipeline.

6   36.   Despite acknowledging the ramifications of attempting to lease property

7   rights it did not own, the Railroad nevertheless decided to continue to grant purported

8   easements to the Pipeline.

9   37.   In 1983, the parent company of the Railroad and Pipeline announced a

10   merger with Santa Fe Railroad, which eventually led to the Railroad being sold to a third

11   party. Because the Railroad and Pipeline were no longer sister companies and up to that

12   point the rental agreement was not negotiated at arm's length, in 1991, the Railroad sued

13   the Pipeline seeking higher rent payments for the use of the subsurface below the

14   Railroad's right-of-way.

15   38.   In April of 1994, the parties to the 1991 lawsuit negotiated a settlement

16   agreement, which rescinded the 1983 easement rental agreement, confirmed the

17   purported pipeline easement rights, compromised the parties' various existing claims, and

18   pursuant to which the Pipeline's predecessor paid over $5 million in return for the

19   Railroad's dismissal of claims and causes of action. The settlement agreement provided

20   that the Railroad could seek an increase in rent to fair market value every ten years

21   following January 1, 1994.

22   39.   In July of 1994, the Railroad and the Pipeline's predecessor entered into an

23   amended and restated easement agreement ("AREA"), which purported to state that the

24   Railroad granted easements to the Pipeline's predecessor for the transportation of its

25   petroleum, natural gas, and other products, and reiterated a procedure and mechanism to

26   determine the amount of rent that the Pipeline's predecessor would pay the Railroad for

27   what purported to be perpetual easements in the subsurface of the right-of-way, which

28   was to be calculated at fair market value.

40.     In August 1994, when the two companies could not reach an agreement on the new rental amount, the Railroad filed suit to determine the fair market value of the purported easements. Ultimately, judgment was entered that in January 1994 the base rent for the Pipeline's use of the subsurface was approximately $5 million annually.

41.     For the ten year period beginning in 2004, the Railroad and Pipeline again could not agree on the amount of the annual increase in rent. The Railroad again sued the Pipeline seeking another ten-year increase in rent to fair market value of the alleged easements granted by the Railroad to the Pipeline.

42.     In April of 2012, after more than 250 trial days, a trial court in Los Angeles, California found that pursuant to the AREA, the base annual rent owed from the Pipeline to the Railroad commencing on January 1, 2004 was $14,080,487; that back rent due as of the time of the judgment was $81,589,584; and that prejudgment interest was payable by the Pipeline to the Railroad in the amount of $19,372,195.50.

43.     The Pipeline appealed the trial court's decision, questioning, among other things, whether the Railroad had sufficient interest in the land beneath its right-of-way to grant the alleged subsurface easements and to collect rent for their use.

44.     The California Court of Appeals agreed with the Pipeline and ruled that the 1875 Act did not provide the Railroad with sufficient property interests to allow the Railroad to collect rent for the Pipeline's use of the subsurface beneath the Railroad's right-of-way.

45.     The court explained that under the 1875 Act the Railroad was granted a mere easement of the surface and had no rights to the subsurface.

46.     The California Court of Appeals further ruled that the fee owners of the right-of-way, including these Plaintiffs, and not the Railroad, had the sole and exclusive right to grant easements to the Pipeline for a pipeline below the Railroad's right-of-way and to collect rents from such use and occupancy by the Pipeline.

47.     The opinion specifically noted that the Railroad, in some instances, may have sought and collected rent for the use of property owned by others—including

1   private landowners.

2       48.    The Railroad's using or permitting the Pipeline to use the limited railroad

3   purpose right-of-way to carry petroleum through a subsurface pipe was an improper and

4   illegal use outside the scope of the Railroad's easement, which terminated the Railroad's

5   easement.

6       49.    The Pipeline's use of the subsurface of the right-of-way to convey

7   petroleum products may be severed from the railroad use and terminated.

8   **C. Without Permission, the Defendants Trespassed on and Profited from**

9      **Plaintiffs' Land.**

10      50.    Because the Railroad did not have property rights in the subsurface of its

11  right-of-way pursuant to the 1875 Act, the alleged easement agreements granted by it to

12  the Pipeline were of no effect and did not convey any interest to the Pipeline. Therefore,

13  the Railroad could not convey any rights in the land owned in fee by Plaintiffs.

14      51.    Plaintiffs are fee owners of the real property that runs adjacent to the

15  railroad bed owned by the Railroad and beneath the Railroad's right-of-way to the center

16  line of the right-of-way, including land within which the pipeline was installed and is

17  operated.

18      52.    The Railroad and Pipeline did not obtain an easement or other right to use

19  the subsurface of Plaintiffs' land.

20      53.    The purported easement agreements granted by the Railroad to the Pipeline

21  were and are invalid. The Pipeline, without compensation or permission, used the

22  Plaintiffs' subsurface land by installing its pipeline on their property.

23      54.    Upon information and belief, the Pipeline has benefitted substantially from

24  the use of the land of Plaintiffs, because it would have faced higher costs had it fairly

25  negotiated an arm's-length transaction with Plaintiffs.

26      55.    Furthermore, the Railroad without reimbursing or otherwise compensating

27  the Plaintiff property owners, charged the Pipeline rent for the use of property. The

28  Plaintiffs have received no compensation for the unauthorized use of their land.

56.     Defendants' wrongful conduct is ongoing and continuing, and has caused and continues to this day to cause harm to Plaintiffs.

57.     Upon information and belief, the Railroad knowingly engaged in a plan to unlawfully deprive Plaintiffs of their property rights by granting to the Pipeline the alleged right to construct a pipeline within the subsurface of the Railroad's right-of-way in excess of the Railroad's property rights and without notice or compensation to Plaintiffs.

58.     Upon information and belief, as early as the 1950s, the Railroad's predecessor-in-interest recognized that the Railroad did not have sufficient legal title to purportedly grant an easement within the subsurface of the Railroad's right-of-way to construct and operate an oil and gas pipeline.

59.     Upon information and belief, employees, agents, or representatives of the Railroad's predecessor-in-interest recommended that the company justly compensate the true fee owners of the subsurface, Plaintiffs, which the Railroad's predecessor-in-interest wrongfully failed and refused to do.

60.     Upon information and belief, the Pipeline has recognized for decades that the Railroad lacked sufficient title to convey easements to the Pipeline in tracts of land that were granted to the Railroad pursuant to the 1875 Act, but have knowingly and deliberately transmitted petroleum products through the Plaintiffs' real property and withheld rents from the lawful owners of the subsurface that they wrongfully use and/or occupy.

61.     Plaintiffs were not aware and could not have discovered through reasonable diligence, that the pipeline was not being used for legitimate railroad purposes.

62.     Moreover, Plaintiffs were not aware, and could not have discovered with reasonable diligence, that the Railroad was collecting rent from the Pipeline for the use of Plaintiffs' subsurface land.

63.     The earliest Plaintiffs could have learned or suspected the Pipeline was trespassing on their land and the Railroad was collecting rent was November 5, 2014

AMENDED COMPLAINT

1    when the Second District Court of Appeals of California issued an opinion explaining the

2    Railroad did not have sufficient property interests from the 1875 Act to grant easements

3    or charge rent for the subsurface underneath its right-of-way.

4        64.     Before the date of the California Court of Appeals' decision, Plaintiffs did

5    not discover, and did not know of facts that would have caused a reasonable person to

6    suspect, both that they had suffered and continue to suffer harm and that such harm was

7    caused by the Defendants' wrongful conduct.

8        65.     Further, the Railroad and Pipeline concealed their actions from Plaintiffs

9    with the intent to deceive and induce them to refrain from demanding compensation for

10   the Railroad's and Pipeline's unauthorized commercial use of their lands and acted in

11   such a fashion as to indicate that they had the right to install and maintain a pipeline or

12   collect rent therefrom despite their knowledge that they had no such right. Plaintiffs

13   justifiably relied on the Railroad or Pipeline to inform them of the Railroad's and

14   Pipeline's intent to unlawfully use and profit from the use of Plaintiffs' lands. As a result

15   of the fraudulent concealment of the trespass, Plaintiffs assert tolling of the applicable

16   statute of limitations affecting the causes of action by Plaintiffs.

17       66.     Moreover, Plaintiffs assert their claims were further tolled during the

18   pendency of the class actions asserted *Clements et. al v. Union Pacific Railroad*

19   *Company et. al*, Case No. 4:15-cv-00191 (D. Ariz.) and *Valenzuela et. al v. Union Pacific*

20   *Railroad Company et. al*, Case No. 2:15-cv-01092-DGC (D. Ariz.).

21       67.     Because the Railroad and Pipeline are not the owners of the property where

22   the pipeline was laid, they have trespassed and been unjustly enriched for over 50 years,

23   and they continue to do so today. Due to the Railroad's and Pipeline's actions, Plaintiffs

24   are seeking to recover damages, exemplary and/or punitive damages, restitution,

25   attorneys' fees, and pre- and post-judgment interest, and a declaration that they are the

26   true owners of the property underneath the Railroad's right-of-way and that the Railroad

27   and Pipeline cannot profit or collect rent from the land owned by Plaintiffs, and to quiet

28   title in the subsurface real property in the Plaintiffs' names free and clear of any claimed

1  interests of Defendants, and possession of their real property.

2  **FIRST CAUSE OF ACTION**

3  **(DECLARATORY JUDGMENT)**

4  68.    Plaintiffs reallege paragraphs 1-67.

5  69.    An actual dispute and controversy presently exists between Plaintiffs and

6  Defendants concerning their respective rights and duties to real property situated in the

7  subsurface beneath the Railroad's right-of-way.

8  70.    The Railroad contends that it holds sufficient legal right and title to

9  purportedly grant easements to third parties, including the Pipeline, to occupy the

10  subsurface of the right-of-way, and to collect rents from such occupancy.

11  71.    The Pipeline occupies the subsurface of the right-of-way, and derives a

12  commercial benefit from said occupancy, without the consent of Plaintiffs and without

13  payment of rents to Plaintiffs.

14  72.    Plaintiffs are entitled to a declaration that under the 1875 Act, Defendants

15  are not granted sufficient title or interest to permit and/or undertake the construction,

16  maintenance, or operation of a pipeline within the subsurface of the right-of-way, and

17  further that Plaintiffs are the true owners in the subsurface of the right-of-way.

18  73.    Plaintiffs are entitled to a declaration that neither the Railroad nor the

19  Pipeline have prescriptive rights with respect to the subsurface of the right-of-way.

20  74.    A judicial determination of the rights and responsibilities of the parties over

21  the real property in question is necessary and appropriate at this time.

22  WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and

23  28 U.S.C. § 2201, Plaintiffs request that the Court enter its judgment declaring that

24  Defendants have no legal right to exercise dominion and control over, or to use, land

25  owned by Plaintiffs or collect rent or profit from the use of Plaintiffs' land.

26  **SECOND CAUSE OF ACTION**

27  **(TRESPASS)**

28  75.    Plaintiffs reallege paragraphs 1-67.

-12-

AMENDED COMPLAINT

76.     Plaintiffs are fee owners of the real property beneath the Railroad's right-of-way to the center line of the right-of-way, including land within which the pipeline was installed and is operated.

77.     The Railroad, by and through the 1875 Act, acquired a surface easement and right-of-way solely for its railroad purposes.

78.     The Railroad did not, by virtue of the 1875 Act, acquire a fee interest in the subsurface below its surface right-of-way.

79.     Although the Railroad acquired solely a surface easement for its railroad purposes only, the Railroad purported to grant easements to the Pipeline for the construction and operation of a pipeline in the subsurface of the Railroad's right-of-way.

80.     The Defendants intentionally entered upon Plaintiffs' subsurface property.

81.     The Railroad's continuing claim to possess the authority to grant easements in the subsurface underlying its right-of-way, to the Pipeline and to others, is an ongoing invasion of Plaintiffs' fee ownership of the land without authority or permission and amounts to a continuing trespass on Plaintiffs' fee ownership in their land.

82.     The Pipeline constructed and operates the pipeline, and still transports petroleum products through the pipeline beneath the subsurface of the Railroad's right-of-way, which is actually owned by Plaintiffs.

83.     Because the Railroad did not own or acquire Plaintiffs' fee ownership interest in the right-of-way, including Plaintiffs' ownership in the subsurface of the right-of-way, and because the Railroad had no authority to violate Plaintiffs' fee ownership by purportedly granting easements to the Pipeline, the Pipeline's building and maintaining a pipeline as well as the transmission of petroleum products through their pipeline is a wrongful entry and invasion of Plaintiffs' fee ownership interest in the exclusive possession of their property.

84.     The construction, maintenance, and operation of a pipeline to transmit petroleum through the subsurface of the right-of-way was and is an improper and illegal use outside the scope of Railroad's easement, which terminated the Railroad's easement,

1  and thus, the Railroad lacks authority or permission to possess, occupy, or enter the land
2  of Plaintiffs.

3      85.      Plaintiffs did not give permission for the Railroad's or the Pipeline's entry.

4      86.      Neither Defendant Pipeline nor its predecessors have secured any lawful
5  easements or sought condemnation or obtained by any other means a lawful right to enter
6  the land of Plaintiffs to install, maintain, and operate a pipeline.

7      87.      Alternatively, the Railroad and the Pipeline exceeded the scope of
8  Plaintiffs' permission.

9      88.      The Pipeline's invasion of Plaintiffs' interest in the exclusive possession of
10  their subsurface rights in their property is an act of trespass.

11      89.      The Pipeline's transmission of petroleum products through the pipeline is
12  an ongoing invasion of Plaintiffs' fee ownership of the land without authority or
13  permission and amounts to a continuing trespass on Plaintiffs' fee ownership in their
14  land.

15      90.      Defendants' trespass is continuing and could be abated.

16      91.      Additionally or alternatively, Defendants' trespass is permanent, and has
17  resulted in diminution of the value of the Plaintiffs' real property.

18      92.      Due to the Defendants' trespass, Plaintiffs have suffered damages,
19  including the invasion of their exclusive rights to possess and occupy their subsurface
20  property.

21      93.      Plaintiffs have actually been injured.

22      94.      The Railroad's and the Pipeline's conduct were each substantial factors in
23  causing injury to the Plaintiffs.

24      95.      As a direct and proximate result of Defendants' trespasses upon the land of
25  Plaintiffs, Defendants have realized substantial revenue and profits from the commercial
26  occupation and use of land owned by Plaintiffs, but have failed to pay any rents, revenue,
27  or profits to Plaintiffs.

28      96.      Additionally, as a direct and proximate result of Defendants' actions and

1  continuing trespass, Plaintiffs have been damaged by deprivation of the value of their
2  land, of their right to determine possession and use of their land, including whether to
3  accept the risks associated with the maintenance and operation of a high-pressured
4  petroleum pipeline on their land, and by the damage to their land.

5    97.    Through concerted action, Defendants entered into agreements providing
6  for Defendant Pipeline's installation, maintenance, and use of a pipeline on land
7  belonging to Plaintiffs, and further providing for Defendant Pipeline to pay Defendant
8  Railroad rent over a period of years for the purported right to install, maintain, and use a
9  pipeline on land belonging to Plaintiffs.

10    98.    Defendants have acted with malice or have shown a reckless and
11  outrageous indifference to the highly unreasonable risk of injury they have caused
12  Plaintiffs, and have acted with a reckless disregard and conscious indifference to the
13  rights of Plaintiffs.

14    99.    Defendants' trespass is and was malicious, wanton, oppressive, and/or
15  fraudulent in nature.

16    WHEREFORE, Plaintiffs request a judgment against Defendants for damages
17  from Defendants' trespasses and for the diminution in value of their property, and
18  punitive damages in an amount sufficient to deter further intentional or reckless acts by
19  Defendants, in an amount to be proved at trial.

20              **THIRD CAUSE OF ACTION**
21                  **(QUIET TITLE)**

22    100.    Plaintiffs reallege paragraphs 1-67.

23    101.    Plaintiffs are fee title holders of the land under the Railroad's right-of-way.
24  Plaintiffs' fee ownership is burdened only by a limited easement for the use of the surface
25  for railroad purposes only.

26    102.    As the fee title holders of the subsurface, Plaintiffs have the exclusive right
27  to possession of the subsurface of the right-of-way.

28    103.    Defendants have unlawfully occupied and are in possession of the

AMENDED COMPLAINT

1    subsurface beneath the Railroad's right-of-way, without the consent of the Plaintiffs.

2    104.   Defendants have asserted a purported legal claim and title to occupy, use,

3    and possess the subsurface of the right-of-way.

4    105.   The Railroad has asserted a purported legal claim and title to grant

5    easements in the subsurface of the right-of-way and to charge and collect rents from third

6    parties, including the Pipeline, for occupation, use, and possession of the subsurface of

7    the right-of-way.

8    106.   Defendant Pipeline has asserted purported legal claim and right to use the

9    subsurface to transmit petroleum products through an unlawfully-constructed and

10   maintained pipeline located within Plaintiffs' property.

11   107.   Defendants' claimed rights in the subsurface of the right-of-way are

12   adverse to those of Plaintiffs, and threaten Plaintiffs' quiet use and enjoyment of their fee

13   interest in their real property.

14   108.   The claims of Defendants, and each of them, are without merit and

15   Defendants have no right, title, or interest whatsoever in the above-described real

16   property or any part thereof.

17   WHEREFORE, Plaintiffs demand judgment quieting title in the aforementioned

18   subsurface real property solely in their respective names, free and clear of any claimed

19   interest by Defendants, and each of them, as of the date upon which the Defendants first

20   claimed the right to lease and/or to occupy the real property, to be determined at trial, or

21   alternatively, as of November 5, 2014, when the California Court of Appeals issued its

22   opinion holding Defendant Railroad did not have sufficient property interests to collect

23   rent from or permit the Pipeline to use the subsurface beneath its right-of-way.

24   **FOURTH CAUSE OF ACTION**

25   **(UNJUST ENRICHMENT)**

26   109.   Plaintiffs reallege paragraphs 1-67.

27   110.   Plaintiffs are fee title holders of a portion of the Railroad's right-of-way.

28   111.   Plaintiffs' fee ownership of the right-of-way includes the subsurface and

-16-

1  aerial rights of the right-of-way, and Plaintiffs' land is now burdened with a surface
2  railroad easement for railroad purposes only.

3      112.    The Railroad negotiated with the Pipeline for rent payments by the Pipeline
4  for the use of the subsurface.

5      113.    The Railroad realized monetary benefits and rent payments from the
6  Pipeline for those subsurface rights, without payment to the Plaintiffs.

7      114.    The Railroad was aware that it received the benefit of the use of Plaintiffs'
8  subsurface property rights without compensating Plaintiffs.

9      115.    The Railroad does not own any title and does not have permission to use
10  the subsurface or aerial rights above and below the right-of-way on the surface, but has
11  received substantial monetary compensation and benefit without payment to the
12  Plaintiffs, such that the retention of payments by the Railroad made by the Pipeline is
13  unfair, unjust, and inequitable.

14      116.    Since the Railroad has realized enormous monetary benefit for the improper
15  use of Plaintiffs' subsurface rights in their property, the Railroad has been unfairly and
16  unjustly enriched and owes restitution to the Plaintiffs for the use and rent collected by
17  the Railroad for illegal and unauthorized subsurface easements it granted to the Pipeline.

18      117.    Plaintiffs are entitled to damages for the value of all rents and monetary
19  benefits received by the Railroad for all improper and illegal easements granted to the
20  Pipeline since the 1950's.

21      118.    The Pipeline, as successors to the original corporate affiliate of the
22  Railroad's predecessor, constructed a pipeline within Plaintiffs' property without notice
23  to Plaintiffs, and without negotiating or paying for the right to use the subsurface of the
24  right-of-way.

25      119.    Upon information and belief, the Pipeline's predecessor-in-interest would
26  have faced substantial additional cost and delay if it had fairly negotiated with and
27  compensated the owners of the property at issue at the time the pipeline was constructed,
28  and unjustly, unfairly, and inequitably received the benefit of the use of the property.

120. The Pipeline, as corporate affiliates of the Railroad, occupied the subsurface of the Railroad's right-of-way for decades by payment of rents that were less than the fair market value that would have been charged in an arm's-length transaction.

121. By virtue of the wrongful acts herein described, the Pipeline established a considerable market share and dominance of the oil and gas market, with more than 50% of their pipeline in the Western and Southwestern United States passing within the Railroad's right-of-way.

122. The Pipeline realized enormous cost savings and profits derived from operating the pipeline through this territory without payment of just compensation to the property owners, including the Plaintiffs.

123. The Pipeline has enjoyed an unjust and unfair competitive advantage over other pipeline companies who properly paid for and secured the right to build its pipelines.

124. The Pipeline is aware of the benefits it has received from and at the expense of the Plaintiffs.

125. Since the Pipeline has realized enormous monetary benefit for the improper use of Plaintiffs' subsurface rights in their property, the Pipeline has been unfairly and unjustly enriched and owes restitution to the Plaintiffs for the use and rent of Plaintiffs' real property.

126. Plaintiffs are entitled to damages for the value of all monetary benefits received by the Pipeline for their improper and illegal occupation and use of the subsurface of these rights-of-way since the 1950's.

127. Plaintiffs were, by virtue of the Defendants' conduct, deprived of compensation for the use of their lands, by condemnation or by negotiated payment for the easement, rents, or purchase of the subsurface, and were thereby impoverished.

128. Additionally or alternatively, Plaintiffs have suffered a diminution in the value of their real property by virtue of the construction and operation of the pipeline.

129. Additionally or alternatively, Plaintiffs will be required to repair and restore

AMENDED COMPLAINT

the subsurface of their real property after Defendants' wrongful occupation is terminated.

130.   Plaintiffs lack an adequate remedy at law.

131.   Defendants' conduct is and was malicious, wanton, oppressive, and/or fraudulent in nature.

WHEREFORE, Plaintiffs demand recovery of benefits that were unjustly obtained and retained by Defendants, for a constructive trust in favor of Plaintiffs to be placed upon the benefits and proceeds received by Defendants as a result of their violation of the Plaintiffs' rights, for recovery of punitive damages, for Plaintiffs' costs and fees, and for any other and further relief as the Court may deem just and proper.

**FIFTH CAUSE OF ACTION: EJECTMENT AND/OR POSSESSORY ACTION**

132.   Plaintiffs reallege paragraphs 1-67.

133.   This is an action to recover possession of real property located in the State of Arizona.

134.   Plaintiffs are fee title holders of land under the Railroad's right-of-way. Plaintiffs' fee ownership is burdened only by a limited easement for the use of the surface for railroad purposes only.

135.   Pursuant to Ariz. Rev. Stat. § 12-1251, a person having a valid subsisting interest in real property and a right to immediate possession thereof may recover the property by action against any person acting as owner, landlord, or tenant of the property claimed.

136.   The construction, maintenance, and operation of a pipeline to transmit petroleum through the subsurface of the right-of-way was and is an improper and illegal use outside the scope of Railroad's easement, which terminated the Railroad's easement, and thus, the Railroad lacks authority or permission to possess, occupy, or enter the land of Plaintiffs.

137.   Pipeline lacks authority or permission to possess, occupy, or enter the land of Plaintiffs.

AMENDED COMPLAINT

1      138.   Alternatively, Pipeline's use of the subsurface of the right-of-way to

2   convey petroleum products may be severed from the railroad use and terminated.

3      139.   As the fee title holders of the subsurface, Plaintiffs have the exclusive right

4   to possession of their property.

5      140.   Alternatively, Plaintiffs have a legal right and interest in the land under

6   Railroad's right-of-way and have a claim for possession of the subject real property that

7   is superior to that of Defendants.

8      141.   Defendants have unlawfully occupied and are in possession of real property

9   owned by Plaintiffs, and/or in which Plaintiffs have a superior right of possession.

10      142.   Defendants have failed and refused to cease their occupation of the real

11   property.

12      143.   Plaintiffs have sustained damages as a direct and proximate result of

13   Defendants' wrongful occupation of the property.

14      WHEREFORE, Plaintiffs demand judgment for possession of the property and the

15   award of rents, profits, the reasonable cost of repair or restoration of the property to its

16   original condition, the costs of this action, and other damages which arise from the

17   Defendants' unlawful possession of the property.

18      **SIXTH CAUSE OF ACTION: INVERSE CONDEMNATION**

19      144.   Plaintiffs reallege paragraphs 1-67.

20      145.   Plaintiffs are fee title holders of land under the Railroad's right-of-way.

21   Plaintiffs' fee ownership is burdened only by a limited easement for the use of the surface

22   for railroad purposes only.

23      146.   The Defendants have the power of eminent domain granted by Ariz. Rev.

24   Stat. § 12-1111.

25      147.   Railroad did not acquire a fee interest in the subsurface below its surface

26   right-of-way and did not have a sufficient property interest in the subsurface below its

27   right-of-way to convey any property interest whatsoever to Pipeline.

28

AMENDED COMPLAINT

148.    Pipeline, purportedly through an agreement with Railroad, entered upon the land of Plaintiffs and has installed, maintained, and operated thereon its pipeline, without permission or right, in the subsurface below the right-of-way. Defendants substantially participated in the planning, approval, construction, or operation of the pipeline. In other words, Defendants constructed and/or developed or caused and/or allowed to be constructed or developed a public improvement that substantially interfered with Plaintiffs' property rights.

149.    The Defendants utilized Plaintiffs' fee ownership rights in the subsurface of the right-of-way without paying Plaintiffs and without exercising their condemnation rights.

150.    The Defendants' conduct in utilizing Plaintiffs' subsurface rights for their own purposes for the construction and operation of a pipeline amounts to a taking of Plaintiffs' property interest in their subsurface rights.

151.    The taking of Plaintiffs' subsurface rights is for a public purpose as authorized by the Arizona Legislature such that Plaintiffs' subsurface rights can only be taken by the proper exercise of eminent domain powers pursuant to Arizona law and payment to Plaintiffs, but the Defendants have taken Plaintiffs' private property for a public use without just compensation being paid by any of the Defendants having instituted any formal proceedings.

152.    Defendant's unauthorized taking of Plaintiffs' subsurface rights by constructing and operating a pipeline is the substantial cause of damages to Plaintiffs' property.

153.    As a direct and proximate result of the Defendants' taking of Plaintiffs' subsurface rights, Plaintiffs are entitled to damages for the inverse condemnation of their land, compensation for the value of the subsurface rights that have already been taken and sold, and for attorneys' fees and costs in an amount to be proved at trial.

WHEREFORE, Plaintiffs demand damages for the inverse condemnation of their land, compensation for the value of the subsurface rights that have already been taken

AMENDED COMPLAINT

1  and sold, and for attorneys' fees and costs in an amount to be proved at trial.

2  **SEVENTH CAUSE OF ACTION**

3  **(TO RECOVER RENTS OR FOR THE USE OF REAL PROPERTY)**

4  154.  Plaintiffs reallege Paragraphs 1-67.

5  155.  Defendants have held or occupied lands without an agreement with

6  Plaintiffs for the payment of rents.

7  156.  Pursuant to Ariz. Rev. Stat. § 12-1271, Plaintiffs are entitled to recover

8  from Defendants rents, or a fair and reasonable satisfaction for the use and occupation of

9  Plaintiffs' real property.

10  WHEREFORE, Plaintiffs pray for recovery of the fair market value of rents or a

11  fair and reasonable satisfaction for the Defendants' use of Plaintiffs' real property, for

12  their costs and attorneys' fees, and for any other and further relief as the Court may deem

13  just and proper.

14  **EIGHTH CAUSE OF ACTION**

15  **(ACCOUNTING)**

16  157.  Plaintiffs reallege paragraphs 1-67.

17  158.  As set forth above, Defendants have received unlawful benefits from

18  Plaintiffs.

19  159.  Plaintiffs are entitled to an accounting from Defendants of these benefits

20  and profits.

21  160.  As occupants of the dominant estates, Defendants occupy a special legal

22  relationship to Plaintiffs, who are owners of the servient estates.

23  161.  As the occupants of the dominant estates, Defendants owe Plaintiffs, who

24  are owners of the servient estates, a duty to account for benefits that Defendants have

25  obtained from the servient estates.

26  162.  Defendants have wrongfully obtained benefits from the unlawful use of

27  Plaintiffs' property for nearly six decades.

28  163.  Defendants were initially affiliated companies, and the negotiated rent

1   payments were not the result of arm's-length transactions between and amongst them.

2       164.   Defendants have been enriched by the collection of rents, in the Railroad's

3   case, and by the Pipeline's developing a commanding share of the oil and gas market

4   through the use and occupancy of the pipeline.

5       165.   By virtue of their misconduct, Defendants avoided the costs and obligations

6   of legally acquiring the rights to the use of the subject properties.

7       166.   Defendants concealed their conduct (including their profits) from Plaintiffs.

8       167.   The benefits wrongfully obtained by Defendants from Plaintiffs are of such

9   a complicated nature that it would be difficult to ascertain the Plaintiffs' damages through

10  ordinary means.

11      168.   Plaintiffs lack an adequate remedy at law.

12      WHEREFORE, Plaintiffs pray for an accounting by Defendants of benefits and

13  profits that were unfairly and/or unlawfully obtained from Plaintiffs by the Defendants.

14  <u>**DEMAND FOR TRIAL BY JURY**</u>

15      Plaintiffs demand a trial by jury with respect to all claims so triable.

16  <u>**PRAYER FOR RELIEF**</u>

17      WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

18  A. For a declaration that (1) Defendant Union Pacific lacks sufficient legal right

19      or title in the subsurface of its right-of-way to grant easements or to collect

20      rents associated with the occupancy of the subsurface, (2) Defendant Pipeline

21      lacks sufficient legal right or title to occupy the subsurface of the Railroad's

22      right-of-way, and (3) Defendants be barred and forever estopped from having

23      or claiming any right or title to the premises adverse to Plaintiffs;

24  B. For restitution, damages, disgorgement of benefits and/or profits according to

25      proof;

26  C. For punitive damages based on the Second Cause of Action for Trespass and

27      the Fourth Cause of Action for Unjust Enrichment;

28  D. For possession of their real property;

AMENDED COMPLAINT

1      E.  For an order quieting title in the subsurface real property in Plaintiffs' names,

2          free and clear of any claimed interest by the Defendants;

3      F.  For a constructive trust in favor of Plaintiffs to be placed upon the benefits and

4          proceeds received by the Defendants;

5      G.  For an accounting by Defendants of all benefits and profits that were unfairly

6          and/or unlawfully obtained from Plaintiffs by the Defendants;

7      H.  For reasonable attorneys' fees;

8      I.  For pre-judgment interest;

9      J.  For costs of suit; and

10      K.  For an order providing such other and further relief as this Court deems just

11          and proper.

12     Dated: December 4, 2017.

13    /s/ Kathryn Honecker

14    Kathryn Honecker (AZ Bar No. 020849)    John W. Cowden (*pro hac vice forthcoming*)

15    ROSE LAW GROUP PC    Angela M. Higgin (*pro hac vice forthcoming*)s
7144 E Stetson Drive, Suite 300

16    Scottsdale, Arizona 85251    BAKER STERCHI COWDEN & RICE, L.L.C.

17    Phone: (480) 291-0744    2400 Pershing Road, Suite 500
Fax: (480) 505-3925

18    khonecker@roselawgroup.com    Kansas City, MO 64108
Phone: (816) 471-2121

19    Fax: (816) 472-0288

20    cowden@bscr-law.com
higgins@bscr-law.com

21    Norman E. Siegel (*pro hac vice forthcoming*)

22    Barrett J. Vahle (*pro hac vice forthcoming*)

23    Ethan M. Lange (*pro hac vice forthcoming*)
STUEVE SIEGEL HANSON LLP

24    460 Nichols Road, Suite 200 Kansas City,
Missouri 64112 Phone: (816) 714-7100

25    Fax: (816) 714-7101

26    siegel@stuevesiegel.com
vahle@stuevesiegel.com

27    lange@stuevesiegel.com    **ATTORNEYS FOR PLAINTIFFS**

28

AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2017, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which transmitted notice of the filing to all counsel or record.

/s/ Kathryn Honecker
Kathryn Honecker

AMENDED COMPLAINT